```
 1                      UNITED STATES DISTRICT COURT
                        EASTERN DISTRICT OF MICHIGAN
 2                           SOUTHERN DIVISION

 3   GENERAL MOTORS LLC,

 4                  Plaintiff,
     -v-                                 Case No. 22-MC-50034
 5   JOSEPH ASHTON,
                    Defendant,
 6
     SUSANNE IACOBELLI,
 7                  Objector.
     _____/
 8
                             MOTION HEARING
 9
                   BEFORE THE HONORABLE DAVID R. GRAND
10              United States Executive Magistrate Judge
                            Federal Building
11                        200 E. Liberty Street
                          Ann Arbor, Michigan
12                          March 8, 2022

13   APPEARANCES:

14   FOR THE          Adam Michael Wenner     Jeffrey K. Lamb
     PLAINTIFF:       Honigman LLP            Honigman LLP
15                    660 Woodward Avenue     2290 First National
                      Suite 2290              Building
16                    Detroit, MI 48226       Detroit, MI 48226

17                    Hariklia Karis
                      Kirkland & Ellis
18                    200 E. Randolph Drive
                      Suite 6000
19                    Chicago, IL 60601

20   FOR THE          Ben Kumin               Michael A. Nedelman
     DEFENDANT/       Windels Marx            Nedelman Legal Group
21   OBJECTOR:        156 W. 56th Street      PLLC
                      New York, NY 10019      28580 Orchard Lake
22                                            Road
                                              Suite 140
23                                            Farmington Hills, MI
                                              48334
24
              To Obtain a Certified Transcript Contact:
25            Shacara V. Mapp, CSR-9305, RMR, FCRR, CRR
                       www.transcriptorders.com
```

| 1 | TABLE OF CONTENTS |
|---|---|

MATTER                                                              PAGE

Motion Hearing                                                        3

WITNESS

None

EXHIBITS

None

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1   Remote Hearing

2   March 9, 2022

3   3:03 p.m.

4                              *       *       *

5              THE COURT:  This is General Motors, LLC, et al.,

6   against -- versus Joseph Ashton.  It is, in our court, Case

7   Number 22-MC-50034.

8              If we could have appearances, please, starting with

9   General Motors.

10             MS. KARIS:  Good afternoon, Your Honor.  Hariklia

11  Karis, from Kirkland and Ellis, on behalf of General Motors.

12  And Mr. Lamb and Mr. Wenner also represent General Motors, and

13  they're from Honigman.

14             THE COURT:  All right.  Thank you.

15             MR. NEDELMAN:  Good afternoon.

16             MR. KUSMIN:  Good afternoon.

17             MR. NEDELMAN:  Good afternoon, Your Honor.  Michael

18  Nedelman appearing on behalf of Susanne Iacobelli.

19             MR. KUSMIN:  Good afternoon, Your Honor.  Ben Kusmin

20  with Windels Marx Lane and Mittendorf LLP, on behalf of the

21  defendant, Joseph Ashton.

22             THE COURT:  All right.  Thank you.

23             And we are here on, Ms. Iacobelli's, and that is

24  spelled I-a-c-o-b-e-l-l-i, on her motion to quash the

25  subpoenas that were served in connection with the New Jersey

1    Federal Court action.

2           I have reviewed all of the papers.  I've done some

3    independent research of my own, but I'm also happy to hear any

4    additional argument anyone wishes to present.  And we can

5    start with the moving party.

6           Go ahead, Mr. Nedelman.

7           MR. NEDELMAN:  Thank you, Your Honor.  Again, Michael

8    Nedelman on behalf of Susanne Iacobelli.

9           Your Honor, I think this is a very straightforward

10   application of an unambiguous statutory provision involving

11   the spousal privilege that runs in favor of Mr. Iacobelli, and

12   is being observed by Mrs. Iacobelli.

13          I think we have explained in detail, the basis for

14   our motion.  I don't think I can add anything new unless the

15   Court has questions, which I'm certainly happy to answer.  But

16   I don't want to wish -- to waste the Court's time by repeating

17   what's in our moving papers.

18          So with that, I'm happy to answer any questions the

19   Court may have.

20          THE COURT:  All right.  Well, I guess my main

21   question for your side is in terms of the breadth of what

22   you're asking for, you are asking that I disallow any

23   questioning of your client, Mrs. Iacobelli.  And yet, is it

24   not possible that she would have -- let's say I agree with you

25   as to the spousal privilege as to issues that could relate

1    directly to her husband and his potential, either criminal

2    responsibility or civil liability, there could be information

3    that she has as a -- as a percipient witness that relates only

4    to Mr. Ashton.  Could she not?  Isn't that possible?

5                MR. NEDELMAN:  Given the way that General Motors has

6    pled both the complaint against Mr. Ashton, the complaint

7    against Mr. Iacobelli in the Wayne County Circuit Court

8    action, the complaint against Mr. Williams in the California

9    action, and General -- and also, the matter that was dismissed

10   by Judge Borman that is still pending before the Sixth

11   Circuit, General Motors has pled a broad conspiracy that

12   involves, not only allegedly, Mr. Iacobelli, Mr. Ashton,

13   Mr. Williams, but also FCA and, perhaps, unnamed others.

14               There -- there's no testimony in light of the

15   allegations of this broad conspiracy that were not either be

16   for or against Mr. Iacobelli that could be elicited from

17   Mrs. Iacobelli at -- in examination.

18               As a result of that, this Court should quash the

19   subpoena in its entirety because as the Court, and in the

20   Grand Jury matters that we cited in our reply indicated, any

21   testimony by her would -- from a General Motors perspective,

22   would be attributable to her husband and then, in turn, all of

23   -- everyone else as a conspirator.  So no, there is nothing

24   that could be asked of her in connection with this matter that

25   wouldn't be for or against Mr. Iacobelli.

1          And as a consequence, it is appropriate to bar any

2     testimony whatsoever.

3          THE COURT:  And what if -- what if she engaged in

4     conduct that -- in particular conduct that her husband has no

5     idea about and it was something that Mr. Ashton asked her to

6     do independent of her husband?  How could I know prospectively

7     if there's no potential question that could be asked along

8     those lines?

9          MR. NEDELMAN:  Again, Your Honor, given the nature of

10    the conspiracy that is alleged, even if Mrs. Iacobelli had

11    been asked to do something by Mr. Ashton, that would, by

12    reason of the allegations of the conspiracy between Mr. Ashton

13    and Mr. Iacobelli, be either for or against Mr. Iacobelli.

14         So this is not a case in which there could ever be,

15    given the breadth of the allegations and the breadth of the

16    alleged conspiracy, that there could ever be any testimony

17    that could be permitted to be had in light of the spousal

18    privilege that Michigan law creates.

19         THE COURT:  All right.  Do you -- are you backing off

20    of your assertion in your motion that your client does not

21    have any relevant information to proffer, and relying simply

22    on the asserted privilege; or do you still contend that she

23    has no relevant information?

24         MR. NEDELMAN:  I'm hesitating, Your Honor, because I

25    don't want to get into -- into her -- the nature of any

1    testimony that may ultimately be ordered.

2           But the basis for this motion is the spousal

3    privilege and the bar against appearing.  It's brought without

4    prejudice to the balance of whatever other privileges.  And I

5    recognize relevance isn't a basis upon which to not testify,

6    it is a basis to object to the scope of the examination of a

7    third party, so we are not waiving that.  But the basis -- the

8    primary basis for this motion is the spousal privilege and its

9    prohibition against any testimony whatsoever.

10          I will acknowledge, Your Honor, that having done,

11   frankly, as much research as I think can possibly be done on

12   the issue, the closest I've been able to come to barring the

13   appearance are two Michigan criminal cases where the -- the

14   Court found it improper for a prosecutor to even call the

15   spouse as a witness, and found that to be a reversible error

16   after the spouse had indicated that the -- the spousal

17   privilege would be asserted as a bar to testimony.

18          And I recognize it's in a criminal context and in the

19   context of a trial, not in the context of a deposition, but

20   those are the only cases I could find in which the Court found

21   it appropriate to bar the -- even the calling of a person as a

22   witness.  But I think that those lend credibility to our

23   argument, given the breadth of the argument that General

24   Motors has made as to the breadth of this alleged conspiracy.

25   There are no circumstances under which Mr. Iacobelli should be

1    compelled to appear and provide any testimony whatsoever.

2              THE COURT:  All right.  Thank you.

3              Ms. Karis, will you be arguing, or Mr. Lamb?

4              MS. KARIS:  Mr. Lamb will be.

5              MR. LAMB:  Your Honor, I'll just start off.  I just

6    think that there is simply no basis in the law, federal or

7    state, to support Mr. Iacobelli's sweeping assertion of a

8    privilege here.

9              All right.  This -- GM has alleged that Mr. Ashton is

10   a part of a conspiracy, to be sure.  That conspiracy is wide

11   ranging.  And the New Jersey District Court has allowed GM to

12   proceed with discovery related to both claims against

13   Mr. Ashton, and that is precisely in that conspiracy.  And

14   that is precisely what GM is doing here.

15             There is no basis to expand a spousal privilege here,

16   which must be narrowly construed to encompass all of the

17   information that Mrs. Iacobelli may have about her own

18   conduct, her own financial accounts, or financial accounts

19   that she had access to, information she may have overheard,

20   conversations she may have participated in with Mr. Ashton or

21   Mr. Ashton's spouse, or other third parties.

22             And the only way to work through this process is to

23   do precisely what Judge Rosen ordered in the Flagg case that

24   we cited that was related to the Kwame Kilpatrick litigation,

25   which is to allow the deposition to be proceed -- the

1  deposition to proceed, and for General Motors to take -- to

2  ask its questions of Mr. Iacobelli, and for Mr. Nedelman to

3  object to those questions that he believes are fairly covered

4  by the spousal privilege.  At which point, we can have a

5  focused and narrowed dispute over those questions.

6        But there is no basis, again, Your Honor, to make

7  this sweeping assertion of spousal privilege in this case.

8  There's no federal common law that supports it, and there's no

9  Michigan case law that supports it.

10        So, Your Honor, I think we're back to where your

11  instinct was at the start of your questioning of Mr. Nedelman,

12  which is the deposition should proceed.  It should proceed on

13  a question-by-question basis.  And if Mr. Nedelman has a good

14  faith objection to a particular question, then he can object,

15  and we can resolve those disagreements on the backside of the

16  deposition.

17        THE COURT:  All right.  Well, that -- I don't know.

18  I think you misread my instinct a little bit.

19        MR. LAMB:  Fair enough.

20        THE COURT:  My -- you know, I really kind of got into

21  this issue.  I have not -- I have not dealt with it before.

22  And I don't know, something about it just struck me as very

23  interesting.

24        And so, you know, I'm not sure why I was asked to

25  move this up a day.  You know, that's fine that that request

1   was made.  I wasn't sure if it was because you have a

2   deposition coming up, and --

3          MR. NEDELMAN:  It was a conflict I had with an

4   evidentiary hearing, Your Honor.

5          THE COURT:  Oh, okay.  All right.

6          So I don't know how much -- I'm in the middle of

7   writing an opinion that's, unfortunately, going to be probably

8   almost -- well, it's extremely lengthy, I should say.  And so

9   it's going to take me some time to get you a written ruling on

10  this.  But I'd like to be kind of pragmatic and share with

11  you, my detailed thoughts on your motion and see if that

12  doesn't allow you to move forward in a way that stops short of

13  maybe me fully resolving this motion right now.

14         And so, Mr. Lamb, getting back to your point, I do

15  think that I would be -- I would not be willing to wholesale

16  block the deposition of Mr. Iacobelli, prospectively, not

17  knowing what the questions are.  I could certain -- but I do

18  have very strong concerns about questions that would invade

19  what I believe is a privilege that she had.

20         And I thought I would go through my analysis with you

21  now, to just really -- really more pragmatically, to aid the

22  parties in moving forward expeditiously rather than me just

23  saying, well, I'm not going to issue a ruling now, you can go

24  forward and do the deposition and then you end up right back

25  here arguing the same questions about, is there a privilege,

1    is there not a privilege, and that.

2          So to me, this is my instinct to give you some help

3    and some guidance and let the matter move forward.  So with

4    that, I guess, I'd like to just kind of run through my

5    analysis.  I'll take any questions.  And I guess, this won't

6    be my formal ruling on the matter.  We'll have to kind of see

7    how things go, and what more formalities are required.

8          But essentially, Federal Rule of Evidence 501

9    provides that in a civil case, state law governs privilege

10   regarding a claim or defense for which state law supplies the

11   rule of decision.

12         And here, the parties agree that the underlying

13   litigation involves state law claims.  And so therefore, state

14   law supplies the rule of decision as to the claims and

15   defenses.

16         I don't believe the parties have briefed whether I

17   should be looking to Michigan State law or New Jersey state

18   law.  Everyone seems to be focusing me on Michigan State law.

19   I assume that's because Mrs. Iacobelli is a resident of the

20   State of Michigan.

21         Is that correct?

22         MR. NEDELMAN:  Yes.  We believe, Your Honor, that

23   Michigan law applies.  I believe that the New Jersey Court has

24   determined that Michigan law will apply to General Motors'

25   claims in the -- in the underlying case.  I believe that we --

1    I'm not sure there's more to add to that at the moment, but I

2    think the parties agree that Michigan law applies to this

3    determination.

4          MR. LAMB:  Your Honor, I think it's a little more

5    nuance than that.  But the New Jersey District Court resolved

6    a question of whether it would consider Michigan's statute of

7    limitations and New Jersey's statute of limitations in

8    connection with a breach of fiduciary duty claim at the

9    12(b)(6) stage.  So there -- that is not a dispositive ruling

10   on what -- what law applies to the decision with respect to

11   that breach of fiduciary duty claim.  And the New Jersey Court

12   had previously ruled in an earlier 12(b)(6) ruling that I

13   think the Court has in its exhibits for this -- this briefing

14   cycle.

15         In that earlier 12(b)(6) ruling, the Court analyzed

16   GM's fraud claims under New Jersey law.

17         So I think the question of what the applicable law is

18   here, is dependent upon which claim we're talking about.  And

19   it may not be the same answer for both of the claims.

20         THE COURT:  So Mrs. Iacobelli is a Michigan resident,

21   correct?

22         MR. NEDELMAN:  Yes, Your Honor.

23         MR. LAMB:  We understand that to be true, yes, Your

24   Honor.

25         THE COURT:  Okay.  So with that, I guess I do think

1    it's appropriate for the Court to evaluate the claim of

2    privilege under the Michigan statute.  And so, I'll limit the

3    analysis accordingly.

4         So as you all know, Black Letter Law, Michigan law

5    and statutory interpretation is the same as other federal law

6    and requires the Court to examine the plain language of the

7    statute.  And a statute is clear and unambiguous on its

8    face -- any statute that is clear and unambiguous on its face

9    needs no interpretation by the Court.

10        And in People versus McGraw, the Court is instructed

11   to avoid a construction that would render part of a statute

12   surplusage or nugatory.

13        And at the same time, the Court's instructed that

14   testimonial exclusionary rules and privileges contravene a

15   fundamental principle that the public has a right to every

16   man's evidence.  And as such, it must be strictly construed.

17        So there is -- obviously, that is at the forefront of

18   the Court's thought process, is that I -- you know, very

19   narrowly construe the statute.

20        And Mr. Nedelman, you began today by saying this is a

21   kind of unambiguous statute.  And I -- I guess I disagree.  I

22   think that the statute is ambiguous in its usage of the word

23   "witness."  And the statute specifically says, this is MCL

24   600.2162(1):  In a civil action or administrative proceeding,

25   a husband shall not be examined as a witness for or against

1    his wife without her consent or a wife for or against her

2    husband without his consent.

3              And the issue, as I see it, is whether the use of

4    that word "witness" and "testimony" is referring to an

5    individual who is a party to the action.  In GM's response

6    brief, essentially, in my opinion, it admits that there's this

7    ambiguity because GM says, quote, "instead, the use of the

8    word "witness," in quotes, strongly supports a reading that at

9    most, Mrs. Iacobelli could assert a privilege if called or

10   examined as a witness in an action to which Mr. Iacobelli is a

11   party."

12             And so, there is this kind of inherent issue here in

13   terms of the statute of what is meant by a witness.  And I

14   went to Black's Law Dictionary which defines witness as,

15   quote, "One who gives testimony under oath or affirmation...

16             1.  In person;

17             2.  By oral or written deposition; or

18             3.  By affidavit."

19             It goes on to say, the term, witness, in its strict

20   legal sense means one who give evidence in a cause before a

21   court.  And in its general sense, includes all persons from

22   whose lips, testimony is extracted to be used in any judicial

23   proceeding, and so includes deponents and affiants.

24             And so, as I read that term "witness" in the statute,

25   I am not thinking it has got to be, you know, a trial,

1    necessarily, in which a defendant is a party.  Or, I'm sorry,
2    in which a husband, in this case, is a party.  But I'm looking
3    again, just at kind of the words in the statute.  Again,
4    putting in all of that additional background in terms of what
5    the term "witness" is.  And it doesn't say it has to be at a
6    trial.  It doesn't say that the husband or wife must be a
7    party.

8           And if you look at the remainder of the statute, and
9    this goes back to the point I made where I cited the case
10   about giving effect for all aspects of the statute, paragraph
11   3(f) of the same statute says, quote, "in a case in which the
12   husband or wife is a party to the record and assumes action or
13   proceeding..."  And it goes on to have some verbiage which is
14   really immaterial here.  But the material part is that it
15   shows that the Congress here, or the Legislature, I should
16   say, in Michigan, they could have said in paragraph one, in
17   subsection one, it could have said, in a civil action or
18   administrative proceeding in which the husband or wife is a
19   party.  It doesn't say that.

20          And so, from my, you know, perspective, that means
21   that the -- GM's argument that this subsection one privilege
22   applies only where the, in this case, husband, is a party to
23   the action is just not accurate.

24          And I also consider the -- well, before I get there,
25   one of the main cases cited by GM, this Knepp, K-n-e-p-p,

1    versus United Stone.  That case was just very distinguishable

2    because in that case, there was a civil action brought by

3    Ms. Knepp against her employer, and she complained that she

4    was sexually harassed.  And the plaintiff in that case then,

5    attempted to take the deposition of the wife of her harasser.

6    And so the harasser wasn't -- not only was he not a party, but

7    he also wasn't even necessarily facing any potential -- there

8    was no indication, at least, that he was facing any potential

9    liability or criminal responsibility or anything like that.

10   But that wasn't even the Court's mode of analysis.  The Court

11   rejected the privilege claim there because it said -- in that

12   case, I think they were relying on a common law privilege

13   whereas here, I'm analyzing the Michigan statute.

14          And the Court said, oh, the adverse spousal privilege

15   is a common law privilege that prevents an individual from

16   testifying against his or her spouse in a criminal proceeding.

17          Defendant has not cited any federal cases that

18   actually applied it to a civil proceeding.  And we have been

19   unable to find any on our own.  We believe the adverse spousal

20   privilege is not applicable to a civil proceeding.

21          And here, of course, this very statute I'm asked to

22   analyze specifically states that the privilege applies, quote,

23   "in a civil action or administrative proceeding."

24          And so, I just -- I see that case as very in opposite

25   and not supportive of the defense, of GM's position, I should

1     say.

2             So now, getting -- so that's going to be my ruling in

3     terms of, that the privilege applies.  The harder question as

4     I see it is where I got to initially of, that doesn't mean

5     that Mrs. Iacobelli has no relevant discoverable information

6     that would not implicate her husband in terms of her testimony

7     being for or against her husband.  I just don't know until I

8     hear those questions.

9             I do think -- I do agree with Mr. Nedelman that the

10    type of allegations that are being made against, in terms of a

11    conspiracy, and Mr. Iacobelli's involvement in the conspiracy,

12    it could easily result in there being very few, if any

13    questions, that could be asked of Mrs. Iacobelli that did not

14    invade the privilege.  But there could be some that -- I just

15    don't share Mr. Nedelman's position that it's so broadly

16    worded that there's no possible questions that could be asked

17    of her that would not invade the privilege.  You know, I just

18    can't -- I'm just not prepared to say that.

19            And so, the last thing I wanted to leave you with,

20    therefore, was, I guess, my sense about, to give maybe some

21    direction in terms of what types of questions could be asked

22    that might not invade this privilege.  And for that, I would

23    just ask you to think about the purpose of this privilege.

24            The People versus Armentero, this is 148 Mich. App.

25    120, said that the purpose of the spousal privilege is, quote,

1    "preservation of marital harmony."

2           And the spousal privilege in Michigan is focused on

3    -- on that relationship and not creating, I don't know,

4    disharmony in a marriage.  And I think any time you ask a

5    spouse to testify in a way that is directly adversarial to her

6    spouse's, whether it's financial interests or potential

7    criminal responsibility, I just think it could very easily

8    invade that privilege and that marital harmony.

9           I did want to point out that -- something that I

10   think is interesting.  And I think you need to contemplate and

11   perhaps, make a record of this or use this to drive your

12   questioning, is that in the Trammel decision, which was a U.S.

13   Supreme Court case in 1980, the Court said, quote, "The

14   existing rule should be modified so that the witness-spouse

15   alone has a privilege to refuse to testify adversely; the

16   witness may be neither compelled to testify nor foreclosed

17   from testifying."  And that this furthers the important

18   interest in marital harmony.

19          And essentially, the Court said that it wasn't so

20   sure there was a marital harmony question when the only reason

21   the one spouse isn't testifying is because the other spouse is

22   not -- is withholding consent.  And so I just kind of put that

23   out there.

24          I guess it seems to me like the witness here, Mrs.

25   Iacobelli, is asserting the privilege of her own volition.

1    But because I think a lot of my ruling is going, ultimately,

2    in terms of what questions are and are not allowed is going to

3    be based on this question of invading the marital harmony, I

4    think it makes sense for you all to at least think about that.

5           And so, in terms of, you know, moving forward, I

6    guess what I think ought to happen is, you take this

7    deposition.  I hold this ruling, I guess, largely, ultimately

8    in abeyance although I, you know, have given you essentially

9    my ruling as to the actual applicability of the privilege, at

10   least in general.  And I've given you some direction about

11   questions.  I think questions that the -- GM reasonably

12   expects to elicit testimony for or against Mr. Iacobelli in

13   any other kind of proceeding would be off base under my ruling

14   about applicability of the privilege.  But again, I just don't

15   know what those questions are, and I don't know what other

16   questions counsel might be able to ask that would not be,

17   quote, "for or against" Mr. Iacobelli.

18          And so, hopefully, I've given you some ability to

19   move forward through this deposition more expeditiously and

20   efficiently, and really limit any additional kinds of

21   decisions that I might need to make with respect to the

22   matter.

23          Anybody have any questions on any of that?

24          MR. LAMB:  Well, Your Honor, I -- this is Jeff Lamb

25   for General Motors.  You know, I just foresee a scenario

 1     where, based on the assertions Mr. Nedelman's made here, every

 2     question we ask, he's going to say that in some tangential way

 3     could touch on some -- something that could be adverse to

 4     Mr. Iacobelli in some other proceeding, and we just end up

 5     with a deposition transcript that's a series of objections and

 6     directions not to testify.  And then, we're basically back

 7     here and, you know, all we have are the questions that we were

 8     going to ask, to show for it.  So I think I would ask for a

 9     little more guidance.

10          For example, one of the issues that -- that's clear

11     from the General Motors pleading is that General Motors

12     believes Mrs. Iacobelli has accounts in her name, she has

13     access to accounts personally, and that she was involved in

14     these, you know, these foreign accounts that were used to

15     funnel elicit payments.  We should be able to ask her about

16     that without regard to its potential impact on Mr. Iacobelli

17     because that goes to her involvement.

18          Is that correct, under your -- your reading of the

19     spousal privilege?  Or is that something that we need to

20     litigate again on the backside of asking the questions?

21          THE COURT:  Mr. Nedelman, any response?

22          MR. NEDELMAN:  Yes.  The response is actually

23     somewhat easier on our end.  And it's made easy by what we

24     attached as exhibit -- among other exhibits, Exhibit 8 to our

25     motion, which was a letter from counsel for General Motors on

1    -- on Mr. Lamb's specific issue, where General Motors states

2    that they seek information include -- quoted, "including

3    information concerning foreign accounts held in the name of

4    Mrs. Iacobelli or BAG," which stood for Business Advisory

5    Group, "for the benefit of Mr. Iacobelli."

6         That, combined with the discovery order that was

7    issued in -- in the underlying Ashton case in which the

8    parties to that case agreed that the discovery in the Ashton

9    case would be used, or could be used in all of the related

10   cases including the Wayne County Circuit Court case against

11   Mr. Iacobelli, would -- would clearly make inquiries into

12   these alleged foreign accounts off limits under the spousal

13   privilege.

14        I mean, they -- they've drawn this very broad

15   scenario, where everything that they claim that Mrs. Iacobelli

16   may have knowledge of is in this furtherance of this alleged

17   conspiracy of which they claim Mr. Iacobelli is a participant.

18   I understand, Your Honor, that, you know, if they asked her if

19   she's married to Alphons Iacobelli, that couldn't be subject

20   to spousal privilege.  So yes, there could be a question.

21        But the crux of the examination given the -- the

22   admissions by General Motors as to what the purpose of her

23   examination is, leads to the inescapable conclusion that the

24   testimony is only for the purpose of furthering their

25   allegations about this conspiracy, of which they claim

1    Mr. Iacobelli is -- is a conspirator.

2           So while I recognize Mr. Lamb's concern, it's -- it's

3    -- I'll acknowledge that if they ask about alleged foreign

4    accounts, we're going to assert the spousal privilege among

5    others, so --

6           MR. LAMB:  And Your Honor, that's -- I'm sorry.  I

7    don't mean to cut off Mr. Nedelman, but that's where the

8    privilege must go too far.  Because just for one example, if

9    Mrs. Iacobelli has those foreign accounts as GM suspects they

10   do, and it confirms that foreign accounts related to FCA

11   existed at certain financial institutions and that

12   Mrs. Iacobelli had access to them or control over them in some

13   way, it's absolutely probative of whether other members of the

14   conspiracy like Mr. Ashton had access to similar consent --

15   accounts.

16          THE COURT:  It could be.  I don't disagree with you.

17   I'm sure it is probative of the claims and defenses in the

18   case, but that's not the question.

19          The question on the privilege issue is:  Does the

20   question invade the privilege?

21          And the -- that's the whole point of a privilege is

22   we're not just looking at -- and that's why I said I do -- I

23   do believe it needs to be construed narrowly because of the

24   mere fact that it necessarily takes away from the questioning

25   party's ability to get relevant evidence.  But -- and that's

1  like a -- that's the waiting process of -- that the Court has
2  to do, and as part of their calculus.
3       And I still think it's hard for me, at least on the
4  record before me, to prospectively say what questions are and
5  are not off base. So I don't -- I don't disagree with both
6  counsel that it seems like questions about these bank records
7  are going to be -- or bank accounts are going to be the topic
8  that maybe is most emblematic of this issue. And maybe what I
9  need from you all then is a supplemental brief of that narrow
10 -- you know, that kind of narrow issue. You know, these are
11 the questions we would seek to ask. And then, Mr. Nedelman
12 can provide, you know, a very specific directed analysis as to
13 why the privilege protects his client from having to answer
14 those questions.
15       You know, at least then, at this point, we've gotten
16 passed the initial question of, you know, is there a privilege
17 that applies or not, and we're focusing in on what you really
18 want. I just feel like presently, there's -- I can't make
19 that call.
20       MR. NEDELMAN: If -- if I understand Your Honor,
21 correctly, you -- you think -- and I understand the approach.
22 You think to treat this as if it were a Fifth Amendment issue.
23 Which, I viewed this somewhat differently. But I'm cognizant
24 that in the Fifth Amendment context, a deponent appears and
25 asserts on a question-by-question basis. And then, the Court

 1    has a record upon which to evaluate the propriety of the

 2    assertion of the privilege.

 3         And so -- so that I make sure I under -- is that kind

 4    of the overall perspective that the Court is coming from?

 5         THE COURT:  I guess I would say generally.  You know,

 6    I'm not looking at -- I'm just looking at it, as I said,

 7    pragmatically.  I want to be able to give you a clear ruling

 8    on what is and what is not allowable.  I don't want you to

 9    waste time and go and sit down and pick a deposition and just

10    get answer after answer with spousal privilege, you know, and

11    then you're back in front of me anyway.

12         But as I said, I viewed most all of the briefing, you

13    know, the more general issue of, does this privilege -- can

14    she even assert the privilege?  And -- and I really, frankly,

15    spend my time trying to figure out that -- you know, that

16    question.  And this question of, okay, well, what about this

17    specific area of questioning?  I recognize that was raised,

18    and I'm not -- I'm not criticizing anybody here.  I'm just

19    saying, I think I would benefit from a more focused briefing

20    on those specific questions that GM wishes to ask, and why

21    your side is impending that those would invade the privilege

22    that I have found, you know, exist.

23         And so, whether you want to call that, you know, the

24    Fifth Amendment framework or just a supplemental brief on --

25    on this privilege issue, I -- I just would, I think, want some

 1   more information before I would make any rulings as to what

 2   specific questions could or could not be asked.

 3          MS. KARIS:  Your Honor, is it okay for me to speak,

 4   recognizing some judges only one participant per side?

 5          THE COURT:  Yes.

 6          MS. KARIS:  But with the Court's permission, I

 7   understand the approach the Court is suggesting.  In fact,

 8   it's consistent with the approach that the Court in the case

 9   that we cited in our brief, In re Subpoena Rehberger, ordered,

10   where the spouse of the plaintiff was called to testify by

11   Honeywell, and they moved to quash the subpoena, claiming that

12   anything she said was going to be used for or against her

13   husband.  And therefore, under this Michigan statute, that it

14   violated the privilege.  And the Court concluded that it would

15   not block the subpoena and grant the motion in its entirety,

16   but that it was appropriate to go forward with the

17   question-by-question basis.

18          And so I completely understand what the Court is

19   saying there, and, it is consistent.

20          THE COURT:  But I'm also -- I'm also really trying to

21   fair out questions that I believe are going to be, you know, a

22   waste of time.

23          MS. KARIS:  Understood.

24          THE COURT:  And so I feel like, if your side knows in

25   good faith, that the questions you wish to ask, necessarily

1   would invade this privilege, necessarily would call on the --

2   Mrs. Iacobelli to provide testimony that you know you could

3   use against her husband, that that's where I think the

4   privilege applies.  And so, I'm giving you advance notice of

5   that.  You know, not to -- just really to help you move

6   efficiently through the process as opposed to, I'm not

7   prospectively ruling on any particular question.  I'm just

8   trying to get you to think about, you know, again, my -- my

9   analysis of what is and is not allowable, and then use that to

10  guide, hopefully, an efficient deposition process.

11          MS. KARIS:  And -- and that's how I've understood the

12  Court's instruction as well.  You've given us the parameters

13  of how you perceive privilege to apply regardless that he's

14  not a party, Mr. Iacobelli is not a party to this case.  As

15  the Court is interpreting the Michigan statute, that still

16  allows her to assert the spousal privilege, which we

17  understand.

18          On the question-by-question issue, I would say, for

19  example -- and it's hard to predict, of course, dependance on

20  what answers we get to certain questions.

21          For example, what is her relationship, if any, with

22  Joseph Ashton?  What was her relationship with some of the

23  participants that are named in the complaint, separate and

24  apart from any implication with Mr. Iacobelli?  So the answers

25  to those questions, of course, would lead to follow-up

 1    questions.

 2            On the financial side, we should be able to ask what

 3    accounts she holds separate and apart -- foreign accounts,

 4    separate and apart from anything that her husband is directing

 5    or facilitating.  Because to the extent Mrs. Iacobelli has

 6    foreign accounts, separate and apart from Mr. Iacobelli, and

 7    that those are related in some way to Mr. Ashton, or not

 8    perhaps.  They might be at the same financial institution,

 9    they may not.  But that's the purpose of discovery, for us to

10    get a better understanding of the underlying facts where we

11    understand it's not where she's implicating her husband.  But

12    we have identified that we believe she has accounts.

13            And so I don't -- to be clear, we don't agree, we

14    don't think the Court is saying that we can't ask her about

15    her own financial situation.  If it's, what accounts do you

16    have with Mr. Iacobelli where money was given to you by FCA or

17    anybody else, I understand the Court's ruling, that's out of

18    bounce.  But she is her own person.  She is not a party to

19    this case.  She's not a party to the case involving

20    Mr. Iacobelli, but we do believe she has some role here.  And

21    a role that could be instrumental in the case against

22    Mr. Iacobelli.  I'm sorry, against Mr. Ashton, excuse me,

23    where Mr. Iacobelli is not a party.

24            And that's where I think the fact that he is not a

25    party remains a critical fact.  Not only because of the

```
 1   construction of the statute, but because there are questions
 2   related to him and others in the complaint.
 3            I think we understand you, but I wanted to -- to say
 4   that from the benefit of what we've pled, it's not strictly
 5   limited to Mr. Iacobelli, BAG.
 6            MR. KUSMIN:  Your Honor, may I be heard?
 7            THE COURT:  All right.  Thank you.
 8            Yes, you can go ahead, Mr. Kusmin.
 9            MR. KUSMIN:  Thank you, Your Honor.
10            On behalf of Mr. Ashton, I didn't intend to speak
11   today, but I think it needs to be said that, the only
12   conceivable usefulness of Mrs. Iacobelli's testimony to GM,
13   the only conceivable relevance is as it pertains to
14   Mr. Iacobelli, as it pertains to the possible usage of
15   offshore accounts which, in turn, according to GM would
16   suggest the truthfulness of this bribery conspiracy
17   perpetrated by Fiat Chrysler.
18            To the extent that she doesn't -- the extent that she
19   can't testify about her husband or about offshore accounts
20   that could be linked to her husband, she's just a random
21   citizen with no relation to this case whatsoever.  And there's
22   no conceivable usefulness for her testimony in this case, even
23   in the Iacobelli case, much less the Ashton case, which is --
24   which is the case that we're actually talking about.  There's
25   no conceivable question.  There is no conceivable testimony
```

1    she could give that doesn't somehow buttress GM's theory of

2    these offshore accounts and of this bribery conspiracy.

3         Given Your Honor's ruling on -- on the privilege, I

4    think it would be appropriate to grant the motion to quash in

5    its entirety.  And I say that because these hearings, the

6    deposition itself, the further briefing, and coming back

7    before Your Honor to go step by step, presents a significant

8    burden to my client, Mr. Ashton.  And it's not justified by

9    any conceivable relevance of the testimony that is left for GM

10   to extract.

11        THE COURT:  All right.  Well, as I said, I do think

12   it is very likely that it -- that they -- that, at least, the

13   vast majority of what I understood General Motors to be

14   desiring to ask Mrs. Iacobelli about, is off limits.  I'm just

15   not willing to say that I concluded that a hundred percent of

16   what GM might ask is off limits.  And so, again, I'm hoping --

17   I'm doing all this work to try to avoid a lot of extra work,

18   and giving General Motors as clear of an indication as I can,

19   and direction as I can about what is and what is off limits.

20   But I'm just not willing, prospectively, to say that there's

21   nothing possible that GM could ask that would not invade the

22   privilege.  I just don't know.

23        And so, you know, that's where good faith with the

24   attorneys comes into play and -- and, you know, it doesn't

25   mean there still could not be legitimate arguments about these

1    questions.

2          But GM, in its response brief does -- I'm sorry, I'm

3    just trying to do a word search here, quickly -- does talk

4    about not just Ms. Iacobelli's personal knowledge of the

5    claims -- let's see.  But it says, the point is GM has the

6    right to determine whether Mrs. Iacobelli has independent

7    knowledge of such accounts apart from communications with her

8    spouse.  And so, only she could answer that.  I don't know.

9          And maybe some of these questions would result in her

10   pleading the fifth if they only implicate her and not her

11   husband.  I don't know.  Maybe it won't, though.  Maybe --

12   maybe she'll have testimony that neither implicates the Fifth

13   Amendment or the privilege.  You know, I just don't know.

14         And so I mean, I share, Mr. Kusmin, your concern and

15   your desire to be efficient and not be back before me and not

16   take a wasteful deposition, but I'm pretty firm in my ruling

17   that I'm not going to prospectively tell General Motors that

18   there's no possible questions that could be asked.  And I just

19   hope that everyone kind of takes the direction that I have

20   given and uses that, as I said, to partake in this deposition.

21   And if not, that can't take place, I'll be happy to take

22   supplemental briefs on, you know, a much more narrow focused

23   question of, you know, which specific questions are and are

24   not off base.  Hopefully, it would only be a few.  Those can

25   be brief, and I'll make a decision.  And, you know, we'll go

1    from there.  All right?

2         All right.  I'm just going to really hold this in,

3    you know, abeyance at this point.  When is her -- when do you

4    expect to be able to take her deposition, such that we can

5    maybe have a -- you know, plan a follow-up status conference

6    just to see, is there anything else you need from me?

7         MS. KARIS:  I'm happy to address this.  We need to

8    work with Mr. Nedelman on getting a date.  There is some

9    outstanding document issues that we're trying to work through.

10   So the parties will work together to identify the soonest date

11   that makes the most sense and is most efficient.  I know

12   Mr. Nedelman has been out of town and just has some conflicts,

13   so we want to make sure we're accommodating.

14        MR. NEDELMAN:  I think Ms. Karis has stated it

15   accurate, Your Honor.  We'll work together.  I've got a

16   particularly horrific next numerous weeks, but we will

17   endeavor to -- to find a convenient date and bring it back

18   before Your Honor in an appropriate fashion.

19        THE COURT:  All right.  Well, I'll make some sort of

20   document for you that just briefly summarizes this hearing and

21   the -- my expectation in terms of, that you'll get back to the

22   Court when you are prepared to hold the status conference

23   following, either the deposition, or if you could key up

24   everything in advance, that might be okay, too, between each

25   other.  If you could -- if GM can say, look, these are the

```
 1    questions we want to ask and, are these agreeable or not.  And
 2    if you could agree in advance, you could do the supplemental
 3    briefing in advance of the deposition.  I'll kind of leave
 4    that up to you how you think would be the most efficient for
 5    that.  But I'll make that document for you, and I'll just look
 6    forward to hearing from you, okay?
 7             MR. NEDELMAN:  Very well, Your Honor.
 8             THE COURT:  Okay.  All right.
 9             Thank you all, everybody.  Take care.  Be well.
10        (The proceeding was adjourned at 3:52 p.m.)
11                        *     *     *
12                C E R T I F I C A T E
13      I certify that the foregoing is a correct transcription of
14    the record of proceedings in the above-entitled matter.
15
16    S/ Shacara V. Mapp                      03/09/2022
17    Shacara V. Mapp,                        Date
18    CSR-9305, RMR, FCRR, CRR
19    Official Court Reporter
20
21
22
23
24
25
```