# Exhibit 5

# KIRKLAND & ELLIS LLP
AND AFFILIATED PARTNERSHIPS

Casey McGushin
To Call Writer Directly:
+1 312 862 3397
casey.mcgushin@kirkland.com

300 North LaSalle
Chicago, IL 60654
United States

+1 312 862 2000

www.kirkland.com

Facsimile:
+1 312 862 2200

February 16, 2022

**Via Email**

Michael A. Nedelman
NEDELMAN LEGAL GROUP, PLLC
28580 Orchard Lake Road, Suite 140
Farmington Hills, Michigan 48334

Re: *General Motors, LLC, et al. v. Ashton*, Case No. 20-12659

Dear Michael:

I write in response to your letter dated February 9, 2022 as well as to memorialize our discussion about this matter on February 14, 2022.

*First,* with respect to documents withheld by Mr. Iacobelli from production under any applicable privilege, I understand that Mr. Iacobelli has not withheld any documents based on the Fifth Amendment, and that you do not believe he has withheld any documents on spousal immunity grounds either. I also understand from our discussion that no documents from the set exchanged with Mr. DeLorenzo were withheld from production on privilege grounds. However, we note that Mr. Iacobelli explicitly objected to producing documents on Fifth Amendment and spousal privilege grounds so we ask you to promptly and formally withdraw those objections as bases for not producing documents. Please also advise if Mr. Iacobelli will be taking the Fifth Amendment with respect to his upcoming deposition testimony related to the allegations in the complaint in this matter.

*Second,* and relatedly, we discussed GM's view that a privilege log should be provided for documents withheld on the basis of any claimed privilege. We agreed that Mr. Iacobelli does not need to log communications between himself and his retained counsel (which we understand to be you and his criminal counsel), nor does he need to log communications between Mr. Iacobelli's counsel and Mr. Durden's counsel in related civil litigations. GM does not, however, accept that there is any legitimate privilege between Mr. Iacobelli (or his counsel) and FCA (or its counsel) and therefore continues to request production of those documents. We further note that Mr. Iacobelli has made no showing to support such a privilege and that, in the past, FCA has made crystal clear that it is at odds with Mr. Iacobelli's conduct and that they have not acted as "co-

conspirators." (*See, e.g.,* Compl. ¶ 109(g) (FCA stating that "it is a victim of illegal conduct by Al Iacobelli").) Given this clear adversity between Mr. Iacobelli and FCA, these documents should be produced rather than merely logged (which you objected to in any event). *See AMEC Civ., LLC v. DMJM Harris, Inc.*, No. CIV.A. 06-064 FLW, 2008 WL 8171059, at *3 (D.N.J. July 11, 2008) ("If an interest is adverse between the parties rather than common, the common interest privilege does not apply.").

*Third,* with respect to additional sources of responsive documents, you represented on our February 14 call that a "search" was conducted (though not by you or your representatives and you further refused to provide the details of such a search) and that, as a result of this "search," Mr. Iacobelli does not have any non-privileged, responsive communications from his personal email accounts or text messages. You further noted that your search was "made easier" by the search warrant served by the federal government on Mr. Iacobelli but again provided no further illuminating details

Your responses on this topic raise additional questions. Please confirm who conducted the search of Mr. Iacobelli's personal email accounts, what the scope of that search was, and how, if at all, that search relied on prior searches the federal government performed. Please include in your answer what specific devices were searched and whether an effort was made to search cloud-based storage where such emails or text messages may reside. We are skeptical that Mr. Iacobelli has no responsive personal emails, particularly since Mr. DeLorenzo produced such Iacobelli personal emails and they were not produced in Mr. Iacobelli's production. If Mr. Iacobelli cannot produce his copies of the emails with Mr. DeLorenzo please specify the reasons why.

*Fourth,* on our call, we also discussed documents related to Mr. Iacobelli's domestic bank accounts. We discussed GM's view that such records are responsive and within the scope of discovery in the *GM v. Ashton* matter. You disagreed, and we reached an impasse on that matter. Please at least identify all such domestic accounts by financial institution name and branch and we will use that information to serve a separate, targeted subpoena on those institutions, of course subject to an appropriate protective order.

*Fifth,* regarding documents exchanged with the U.S. Attorney's Office for the Eastern District of Michigan ("EDMI"), you represented that you have already produced everything to GM that was provided by Mr. Iacobelli to EDMI other than a final set of documents that were recently identified and you are reviewing for confidentiality before production. You also stated that you had in your possession for purposes of responding to GM's subpoena all of the documents that Mr. Iacobelli's criminal counsel has in his possession. However, one point that was not clear is whether you or Mr. Iacobelli's criminal counsel has copies of ***any*** of the documents that were seized by the federal government. I understand from our prior correspondence that you do not have ***all*** such documents in your possession, but it was not clear whether copies of any subset of documents seized by the government remain in Mr. Iacobelli's or his counsel's possession. Please confirm

the extent to which you or Mr. Iacobelli's criminal counsel have copies of all of the seized documents or at least a full inventory of such documents.

Further, as discussed, I understand that you intend to contact EDMI to determine whether the government has any objection to Mr. Iacobelli producing to GM the documents that the government provided to Mr. Iacobelli and that, barring any objection by EDMI, you will produce those documents to GM. We look forward to hearing back on this issue.

*Sixth,* we have also begun to review Mr. Iacobelli's document production and have become increasingly concerned about the scope of this production and the methods used for collecting and reviewing such documents. Please address the following issues based on our review to date:

1. Where is the "script" that should have been attached to December 16, 2013 Iacobelli email to Marchionne. (Bates No. CV012659-006504 (though this is hard to read given that it overlays another Bates Number)).

2. Where is the "outline" referenced in the December 17, 2013 Iacobelli email to Marchionne. (Bates No. CV012659-000508 (again hard to read)).

3. Many of the documents have illegibly copied notes and will need to be viewed by a GM attorney in person, which we would like to undertake next week in Detroit. *E.g.*, CV012659-000515.

4. The handwritten notes from Mr. Iacobelli's journals raise several serious questions. Where are the notes that precede the earliest of these notes dated apparently "12/3/2014"? (Bates No. CV12659-000188). And where are the notes that postdate the last of these notes dated "April 20 2015"? (Bates No. CV 12659-000200).

5. Mr. Iacobelli's handwritten notes further contain handwritten page numbering with circles around the numbers from a "2" (Bates No. CV 12659-000188) to "43" (Bates No. CV 12659-000200). Yet, by our count, 31 of these numbered pages were not produced. Why is that? Also much of the handwriting is illegible due to poor copying and we again request an opportunity to review the originals next week in person, including for all journals in Mr. Iacobelli's possession.

6. Where is the "one page talking document" for the meeting with "Norwood" referenced in the Lightbody email to Iacobelli dated April 28, 2015? (Bates No. CV12659-000358).

7. Where are the "docs without numbers" that Marchionne left with "Dennis" Williams as referenced in June 2, 2015 Marchionne email to Iacobelli?

8. In the NTC production, which we are still reviewing, the Susanne Iacobelli American Express card charges and payments are redacted month after month for charges by two other users.

*See, e.g.*, AMEX 000005-6; 000108, 000143; 000162. They payment by these users are redacted as well. Why were these redactions undertaken, were they done so in the NTC litigation and who are the listed persons using Mrs. Iacobelli's American Express card if not her? We note there are apparently many foreign transactions that have been redacted. *See, e.g.*, AMEX 000998 (among many). Such redactions seem entirely improper.

*Finally*, we remain skeptical that Mr. Iacobelli has to-date produced all documents that he showed and brought with him to the DeLorenzo meetings. As noted, the produced documents do not match Mr. DeLorenzo's sworn recollection of such documents. To allow GM to pursue this issue without Court intervention as of now, please confirm (i) that GM may show Mr. DeLorenzo the produced purported DeLorenzo documents so that he may observe whether there are any missing documents from Mr. Iacobelli's production; and (ii) whether Mr. Iacobelli is willing to provide a sworn declaration that all such documents brought to the DeLorenzo meeting have been produced here and none have been lost, destroyed or not produced (without qualification).

Given our extensive meet-and-confer efforts and the upcoming deadlines in this above-referenced matter, we will need to bring these issues to a resolution shortly with respect to our differences. If you could finally and clearly state in writing your positions on the above issues within 48 hours we would greatly appreciate it. Thank you.

Sincerely,

*/s/ Casey McGushin*

Casey McGushin

cc: James E. Marina, Esq.
Jeffrey L. Willian, Esq.
Hariklia Karis, Esq.