# Exhibit 8

NEDELMAN LEGAL GROUP, PLLC
ATTORNEYS AT LAW
PROFESSIONAL LIMITED LIABILITY COMPANY

28580 ORCHARD LAKE ROAD, SUITE 140
FARMINGTON HILLS, MICHIGAN 48334

32 SE 2ND AVE., STE 636
DELRAY BEACH, FL 33444

TELEPHONE (248) 855-8888
TELEPHONE: (561) 278-8855

MICHAEL A. NEDELMAN
ALSO ADMITTED IN FL & AZ

E-MAIL mnedelman@nglegal.com

February 20, 2022

Casey McGushin, Esq.
Kirkland & Ellis
300 North LaSalle
Chicago, IL 60654

Via email to: casey.mcgushin@kirkland.com

Re: Alphons Iacobelli/ *General Motors v Ashton*
*Case 20-12659 (USDC NJ)*
Our File No. 1751.009

Dear Casey:

I write in response to your letter dated February 16, 2022. Your letter raises a number of issues and I will endeavor to respond to all of them. To the extent that this response does not fully answer your questions, I am certainly willing to engage in a further meet and confer, to (hopefully) resolve any outstanding issues or answer any remaining questions.

I do not recall, and cannot readily find, any objections based upon the Fifth (and/or Fourteenth) Amendment to the production of documents in response to the Subpoena *duces tecum* on the basis of such privileges. I am mindful that those privileges are not a bar to the production of documents, and any reference to them was intended solely with respect to preserving such privileges in connection with any testimony that may be sought.

I acknowledge your request for a privilege log with respect to communications, if any, between counsel for Mr. Iacobelli and counsel for FCA. As I previously indicated, to the extent that there are documents within that category and potentially responsive to the subpoena *duces tecum* (again, assuming that the requests were in the permissible scope of discovery), they were not withheld solely on the basis of a privilege; as our responses and objections reveal, we have also objected to that category of documents for the reason that the process of reviewing the universe of potentially responsive documents to determine those that may be responsive imposes upon Mr. Iacobelli undue burden and expense; and to the extent that your letter either assumes or asserts that all potentially responsive documents have been withheld solely on the basis of a privilege, it ignores our objections to the scope, burden and expense associated with a more fulsome response and production, and incorrectly sets forth our position. Again, to avoid any misunderstanding, we will not repeat but instead incorporate those responses and objections by

reference. Suffice it to say that it is our position that Mr. Iacobelli is not obligated to incur undue burden and expense in connection with the preparation of a privilege log, unless and until there has been a determination that the documents sought are otherwise discoverable. As of this date, no such determination has been made.

While you indicate that GM does not "accept" the proposition that there is a common interest privilege that would protect from involuntary disclosure the exchanges between counsel for FCA and Mr. Iacobelli (assuming, for purposes of this argument, that the documents sought are otherwise discoverable), we respectfully disagree.[1] Certainly, there may have been (and may still be) disagreements between FCA and Mr. Iacobelli regarding relative fault and responsibility for certain actions taken, but there is to my knowledge no adversity between FCA and Mr. Iacobelli with respect to the defense of underlying the criminal charges, the absolute lack of merit to any of GM's claims, the lack of merit to any of the employee claims asserted in the various other actions, and/or the alleged liability of FCA and/or Mr. Iacobelli with respect to GM's and/or the various FCA employee claims. Your reference to FCA's prior statements notwithstanding, the fact that FCA may have expressed disappointment with Mr. Iacobelli does not *a priori* mean that at that time they lacked a common interest in defending themselves against the criminal charges and/or the meritless claims by GM (or the FCA employees) alleging each of them to be co-conspirators with the other.

Mr. Iacobelli has produced documents in response to the subpoena *duces tecum*, in addition to timely making appropriate objections. I am unaware of any obligation on the part of Mr. Iacobelli (but will certainly consider any authority you may provide to me) to afford GM the additional information it seeks, including the identity of who conducted the search, how it was conducted, or any of the other information you request in your letter. In this regard, it is unfortunate that the humor intended by my reference to the search warrant making the search easier was lost on GM; it was simply a candid observation that the documents seized by the government obviously could not thereafter be reviewed to determine if any was responsive to the subpoena *duces tecum*, or consequently produced. I will contact Mr. Gardey regarding the US Attorneys' offices' position on the release to GM of those documents that were provided by that office to Mr. Iacobelli and the related notes. Any such permission notwithstanding, the documents subject to the existing protective orders entered by the Court upon Stipulation of Mr. Iacobelli and the United States in

---

[1] Please confirm that GM does not intend its requests to require the production of documents exchanged between those persons who may be counsel for Mr. Iacobelli and those who may be counsel for FCA, if the communications were unrelated to Mr. Iacobelli, FCA and/or any of the "Related Actions." Certainly, GM is not entitled to – and I trust that it does not intend to seek the production of – communications of a purely social or professional nature, and/or related to other professional undertakings of the attorneys, simply because those attorneys also represent Mr. Iacobelli and/or FCA, as the case may be. That agreed limitation would appropriately limit the scope of any inquiry, and appreciably reduce the burden and associated cost of any required production and/or privilege log.

that action entitled *United States v Iacobelli*, bearing case no. 17-20406 in the United States District Court for the Eastern District of Michigan, will not be produced.

Despite your renewed request, Mr. Iacobelli – who I obviously need to remind you is not a party to this case - will not provide information relating to any domestic accounts he may have. In this regard, it is unclear why, if your investigators are as talented as they claim and their procedures as lawful as you apparently believe they are, those same investigators cannot (even though they should not) again spoof Mr. Iacobelli's email, run their "disappearing ink" program, and determine for GM where (if at all) Mr. Iacobelli has domestic accounts. We will, however, object to any subpoena *duces tecum* you may issue to any bank(s) you believe are home to any of Mr. Iacobelli's accounts, and demand that you provide us with notice of the service of any such subpoena(s) in order that appropriate relief may be sought from the Court.

In addition, Mr. Iacobelli does not have any obligation to satisfy GM's "skepticism" (a term used several times in your letter). While I will not address each of the numbered paragraphs in your paragraph "*Sixth*," suffice it to say that Mr. Iacobelli's possession of a "hard copy" of certain emails does not require him to have, or allow you to even presume that he has, any of the attachments that may have accompanied the electronic copy of those emails, and/or other documents referenced in the emails themselves. Certainly, to the extent that you now have the emails, you can request full and complete copies from other parties identified on the emails, if you so desire. Mr. Iacobelli does not have any obligation, in response to the subpoena *duces tecum* to "explain" to GM (assuming there is an "explanation") why the documents produced do not include those that GM wished it included, expected it to include, or believe it "should" include, merely because they are referenced in the documents actually produced.

With respect to paragraph number 8 in paragraph "*Sixth*," please be advised that the redactions to the American Express statements were not made by or on behalf of Mr. Iacobelli. The documents were produced to GM in the form that I was advised they were provided by American Express, in response to the subpoena *duces tecum* issued by the NTC to American Express in that action entitled *UAW-Chrysler Skill Development and Training Program v Iacobelli*, bearing case no. 18-166226-CZ (if I recall correctly, the documents were not provided by AMEX directly to me, but instead by counsel for the NTC following receipt from AMEX). Any concerns you have regarding the redactions should be directed to American Express and/or the NTC.

Finally, Mr. Iacobelli is not obligated and therefore does not consent to the disclosure of any of the documents to Mr. DeLorenzo, or to provision of the requested declaration.

This letter is sent without prejudice to, and expressly reserving, all additional objections and defenses that may exist in favor of Alphons Iacobelli to the subpoena *duces tecum*; and is not intended and shall not be construed and/or asserted to be a waiver of any such objections and/or defenses, or a waiver of any and all privileges that may exist in favor of Alphons Iacobelli or others including, but not limited to, the spousal communication privilege, the spousal privilege, the marital privilege, the "joint defense" and/or "common interest" privilege, and Alphons Iacobelli's

privileges under the Fifth and Fourteenth Amendments to the United States Constitution, all of which being expressly preserved.

I look forward to your response. As always, if you would like to further discuss this matter, please do not hesitate to contact me.

Very truly yours,

NEDELMAN LEGAL GROUP PLLC

Michael A. Nedelman

C : James E. Marina, Esq. (via email to: james.marina@kirkland.com)
L/16220E