# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN

**GENERAL MOTORS LLC et al.,**      **CASE NO. 2:22-mc-50034-GCS-DRG**

   **Plaintiffs,**          **Hon. George Caram Steeh**
                            **Magistrate Judge David R. Grand**

**v.**

**JOSEPH ASHTON,**          **Related Case No. 20-12659 (RBK-SAK)**
                            **Pending in the United States District Court**
   **Defendant.**           **for the District of New Jersey, Camden**
                            **Vicinage**

                            **Related Case** *General Motors LLC v FCA,*
                            *LLC,* **bearing case no. 19-cv-13429**
                            **(Dismissed)**
                            **United States District Court for the Eastern**
                            **District of Michigan, Southern Division**

_____/

James E. Marina                    Rodman E. Honecker
KIRKLAND & ELLIS LLP               Ben J. Kusmin
Attorneys for Plaintiffs           Windels Marx Lane & Mittendorf, LLP
601 Lexington Avenue               Attorneys for Joseph Ashton
New York, NY 10022                 120 Albany Street Plaza
(212) 446-4800                     New Brunswick, NY 08901
Jmarina@kirkland.com               (732) 846-7600
                                   rhonecker@windelsmarx.com

Hariklia Karis PC                  NEDELMAN LEGAL GROUP PLLC
Jeffrey Willian PC                 By:   Michael A Nedelman (P35433)
Casey McGushin                     Attorneys for Susanne Iacobelli
Attorneys for Plaintiffs           28580 Orchard Lake Road, Suite 140
KIRKLAND & ELLIS LLP               Farmington Hills, MI 48334
300 North LaSalle                  (248) 855-8888
Chicago, IL 60654                  mnedelman@nglegal.com
(312) 862-2000
Hariklia.karis@kirkland.com
Jeffrey.willian@kirland.com
Casey.mcgushin@kirkland.com

## SUPPLEMENTAL BREIF OF SUSANNE IACOBELLI IN SUPPORT OF MOTION TO QUASH SUBPOENA *DUCES TECUM*

175116216.009C

Susanne Iacobelli submits the following Supplemental Brief in support of her Motion to Quash the subpoena *duces tecum* served upon her, and in response to the April 25, 2022 Further Submission by General Motors LLC and General Motors Company (collectively "Plaintiffs"). The Further Submission by Plaintiffs fails to provide any basis for this Court to (as Plaintiffs request) "deny" the Motion to Quash, or to allow Plaintiffs to examine Ms. Iacobelli on those topics to which an objection has been asserted.

Following this Court's March 8, 2022 hearing on Susanne Iacobelli's Motion to Quash, Ms. Iacobelli twice (first on March 24, 2022 and again on April 1, 2022) sought to have Plaintiffs provide to Ms. Iacobelli – as this Court directed - the questions that Plaintiffs sought to ask Ms. Iacobelli at any deposition that may be conducted (see email exchanges attached as Exhibits 14, 15). Plaintiffs belatedly (on April 11, 2022) provided to Ms. Iacobelli a list of twelve "topics" upon which they sought to examine Ms. Iacobelli. On April 14, 2022, Ms. Iacobelli responded to the "topics" (see Exhibit 16). Ms. Iacobelli did not object to three of the categories (topic/bullet nos. 7, 8 and 9), objected to 7 of the categories as impermissibly infringing upon the spousal privilege (topic/bullet point nos. 3, 4, 5, 6, 10, 11 and 12), and raised limited objections to two of the "topics" (topic/bullet point nos. 1 and 2) to the extent that the "topics" would, fairly read, result in an impermissible examination.[1]

---

[1] Ms. Iacobelli's objections have in each case been made without prejudice to, and expressly reserving, all additional objections and defenses that may exist in favor of

In an apparent effort to salvage the opportunity to conduct a wide-ranging examination - despite this Court's direction during the March 8, 2022 hearing and in its March 9, 2022 Minute Entry - Plaintiffs have in their Further Submission not only unnecessarily "combined" certain of the topics from the email they sent setting forth the proposed topics (see Further Submission, at fn. 1), but actually <u>changed</u> several of the "topics." The result, of course, is an argument by Plaintiffs of their entitlement to an examination on several different topics than they initially suggested, perhaps intentionally rendering it difficult for the Court to meaningfully evaluate Ms. Iacobelli's initial responses to several of the topics since those initial responses are to the topics as originally suggested, and not as Plaintiffs now construe them. In addition, Plaintiffs in their Further Submission conflate the arguments with respect to several of the "topics,"[2] in an ill-advised effort to conceal Plaintiffs' lack of entitlement to the requested examination.

---

Ms. Iacobelli to the subpoena *duces tecum*; and were not intended and should not be construed and/or asserted to be a waiver of any such objections and/or defenses, or a waiver of any and all privileges that may exist in favor of Ms. Iacobelli or others including, but not limited to, the attorney-client privilege, the spousal communication privilege, the marital privilege, the "joint defense" and/or "common interest" privilege, and Ms. Iacobelli's privileges under the Fifth and Fourteenth Amendments to the United States Constitution, all of which were expressly preserved and which privileges, to the extent applicable, will be raised at any examination that may be permitted to be conducted.

[2] In addition, Plaintiffs have in their description of the "topics" <u>dropped</u> from the twelve bullet points initially advanced bullet point no. 10, which sought testimony from Ms. Iacobelli regarding "any role she [Susanne Iacobelli] undertook in communicating with DeLorenzo."

Ms. Iacobelli's objections to numerous of the "topics" (as originally suggested, and as construed in Plaintiffs' Further Submission) should be sustained since, in light of Plaintiffs' own allegations, the topics facially encroach upon an impermissible inquiry. In this regard, the propriety of the proposed examination on the proposed "topics," and whether or not the examination would be "for or against" Alphons Iacobelli (Susanne Iacobelli's spouse) must be evaluated in light of this Court's observation that each of the four concurrent, interrelated lawsuits being pursued by Plaintiffs[3] attempt to allege a broad conspiracy among Mr. Iacobelli (Mrs. Iacobelli's husband), Mr. Ashton, Mr. Williams, FCA and others in furtherance of an alleged single "scheme to bribe former UAW officials to benefit FCA and harm GM." Plaintiffs have consistently alleged in this and the Related Actions that as an alleged co-conspirator, Mr. Iacobelli is liable for the alleged acts and conduct of Mr. Ashton, Mr. Williams, FCA and the other alleged co-conspirators. The requested deposition of Mrs. Iacobelli thus cannot be viewed in isolation but must instead be viewed in the context of this and the Related Actions which, although separately brought, are unquestionably interrelated by reason of the overlapping allegations of conspiratorial conduct in

---

[3] This *Ashton* Action; *General Motors, LLC v FCA US LLC, et al.* Case no. 2:19-cv-13429-PDB-DRG (E.D. Mich.); *General Motors, LLC v Iacobelli, et al*, Case no. 20-011998-CB (Wayne County); and *General Motors, LLC v Williams,* Case no. CVBR 12103181 in Superior Court of the State of California, County of Riverside (the last three cases were defined by this *Ashton* Court as "Related Actions").

furtherance of a single alleged scheme – and the testimony sought (except as noted below) is thus either "for or against" Mr. Iacobelli.

Ms. Iacobelli urges this Court to sustain her objections to the proposed topics for the reasons set forth below. For the convenience of the Court, Ms. Iacobelli has set forth Plaintiff's proposed topic (as initially proposed), and the basis for her initial objection; and Plaintiffs' additional argument and/or modification of that topic in their "Further Submission," along with Ms. Iacobelli's supplemental response if any:

|  | **Plaintiffs' Topic** | **Susanne Iacobelli Objection** |
|---|---|---|
| 1. | Work history; any relationship with UAW; etc. | Ms. Iacobelli objected to the topic for the reason that the information described in topic/bullet point 1, to the extent that the proposed examination seeks information relating to any "relationship with UAW, etc" that involves the alleged "scheme." Any such examination would necessarily be "for or against" Mr. Iacobelli and not a permissible topic of examination for the reason that Plaintiffs have alleged that the alleged foreign accounts were part of a "scheme to bribe former UAW officials to benefit FCA and harm GM." Plaintiffs' Response at p. 2. In each of this and the Related Actions, Plaintiffs have alleged that each of Mr. Iacobelli, Mr. Ashton, Mr. Williams, FCA and others conspired, in return for payments by FCA to unidentified foreign bank accounts, to breach alleged duties to one or both of the Plaintiffs; and that each of Messrs. Iacobelli, Ashton and Williams (together with FCA and others) are, as alleged co-conspirators, liable for the alleged acts and omissions of each other. See **Exh. 13**, |

| | | |
|---|---|---|
| 1<br><br>(cont'd) | | *Williams'* First Amended Complaint at, *e.g.*, ¶¶7,88, 92,122.<br><br>In addition, the requested examination would be "for or against" Mr. Iacobelli since:<br><br>(a) GM has asserted in the Michigan State Court Action <u>brought against her husband</u>, Alphons Iacobelli, that Mrs. Iacobelli has "[i]information regarding FCA's payment of money or things of value to UAW or FCA officers or employees, including through foreign bank accounts…" (GMs' February 28, 2022 Amended Initial Disclosures).<br><br>(b) GM alleges that "FCA NV compensated Iacobelli extremely well for his role in the scheme, including providing him with control over millions of dollars held in financial accounts in Switzerland (UBS and Credit Suisse), Italy (Deutsche Bank), Liechtenstein (VP Bank Vaduz) and Singapore (DBS Band) both directly, through family [Susanne Iacobelli], and through a corporate entity he controls [Business Advisory Group]" (GM Second Amended Complaint, at ¶69(a));<br><br>(c) GM strongly implies in this Ashton Action that Mrs. Iacobelli is a co-conspirator in the alleged scheme of which GM complains, and Plaintiffs allege in this *General Motors LLC v Ashton*, bearing case no. 20-12659 (RBK-SAK) in the United States District Court for the District of New Jersey (the *Ashton* New Jersey Action), that "GM has reason to believe that such [foreign] accounts exist at one or more foreign financial institutions in Mrs. Iacobelli's name and that she has played a role in other |

| | | |
|---|---|---|
| 1<br><br>(cont'd) | | accounts in her husband's name and the name of Business Advisory Group (Mr. Iacobelli's personal business)"(GM's January 26, 2022 Response in Opposition to Susanne Iacobelli's Motion to Quash Subpoena *duces tecum*, *General Motors LLC v Ashton*, case no. 2:22-mc-50034 in the United States District Court for the Eastern District of Michigan, ECF No. 10, pageID 256); |

(d) GM admits in the December 3, 2021 email from counsel for GM that "[s]pecifically, GM has alleged [in the Ashton Action] that FCA (acting through agents such as Mr. Iacobelli) directed improper payments to Mr. Ashton and others in a direct effort to harm GM, and that FCA employees (such as Mr. Iacobelli) also maintained such accounts. (See e.g. First Am. Compl. at ¶¶ 12, 54-101.) The subpoenas to Ms. Iacobelli and BAG seek relevant information and documents they may possess about the overall scheme and these dealings by Mr. Iacobelli, including information concerning foreign accounts held in the name of Ms. Iacobelli or BAG for the benefit of Mr. Iacobelli;" and

(e) GM sought leave to amend its Complaint in *General Motors LLC, et al. v. FCA US LLC, et al*., 2:19-cv-13429-PDB-DRG (E.D. Mich.), Doc 84, Page ID 2989 (alleging "[u]pon information and belief, FCA and FCA NV secretly provided Iacobelli and a family member [Susanne Iacobelli] with millions of dollars through funds currently in accounts in Italy, Liechtenstein, Switzerland and Singapore not only for his central and long-running role in the scheme…") and at Page ID

| 1 (cont'd) | | 3128, to allege at Exh. A, proposed First Amended Complaint ¶226(f) the alleged receipt by Mr. Iacobelli of "substantial amounts form FCA and FCA NV in the form of control over accounts held at financial institutions in Switzerland, Italy, Singapore, and Liechtenstein, in his own name, **the name of a family member** [Susanne Iacobelli], and the name of a business entity he controls [Business Advisory Group]"(emphasis supplied). A limited examination of Ms. Iacobelli's personal <u>work</u> history (i.e., the identification of her employer(s), and period(s) of employment, for example, without inquiry into any "relationship" with the UAW) may be within the permissible scope of an examination. |
|---|---|---|
| | In their Further Submission, Plaintiffs recast topic 1 as seeking "information about Ms. Iacobelli's own professional background, including whether she has or has had any relationship with the UAW." | While a limited examination with respect to Ms. Iacobelli's own professional background may be permissible (i.e., the identification of her employer(s), and period(s) of employment, for example, without inquiry into any "relationship" with the UAW), any examination of Ms. Iacobelli - under the guise of seeking information relating to Ms. Iacobelli's professional background - that would extend to the existence or non-existence any alleged "relationship" between Ms. Iacobelli and the UAW would be prohibited by the spousal privilege, since such examination would - in light of the allegations and/or assertions of Ms. Iacobelli's alleged involvement - necessarily relate to the alleged "scheme" and would therefore be either "for or against" Mr. Iacobelli; if the examination revealed that Ms. Iacobelli did not have any "relationship" with the UAW, such testimony would refute |

| 1 (cont'd) | | Plaintiffs' allegations of her involvement in the "scheme" and would be "for" Mr. Iacobelli; if the examination revealed that Ms. Iacobelli had a "relationship" with the UAW, such testimony would in light of Plaintiffs' allegations be "against" Mr. Iacobelli. |
|---|---|---|
| 2 | Whether she personally knows/has had conversations with any of the key players in the scheme (Ashton, Marchionne, Williams, etc.) | In her response, Ms. Iacobelli did not object to the topic in total, but limited her objection to the extent that it seeks to discover the occurrence of (if any) and/or conversations (if any) with any of those persons Plaintiffs refer to as the "key players in the scheme." Certainly, inquiry into Ms. Iacobelli's direct social conversations, if any, may not be violative of the proscriptions of the spousal privilege (although the efficacy and propriety of that inquiry is questionable). Her knowledge, if any, of conversations between the "key players in the scheme," of which her husband, Alphons Iacobelli, is an alleged participant, would be "for or against" Mr. Iacobelli, for the reason that the absence of Ms. Iacobelli's knowledge of such conversations would refute the allegations of a conspiracy (and thus be "for" Mr. Iacobelli), and knowledge of such conversations might be used as evidence of the alleged conspiracy, and thus "against" Mr. Iacobelli. Any inquiry into Ms. Iacobelli's personal life, unrelated to the claims against Mr. Ashton, are not within the permitted scope of discovery.<br><br>Further, if the sole source of Ms. Iacobelli's knowledge of any communication(s) between the "key players" were communications with Mr. Iacobelli, such testimony would be barred by the independent spousal communication privilege |

| 3 | Foreign countries she has traveled to since 2012 | The information described in topics/bullet points 3, 4, 6, 11 and 12 all refer to alleged "foreign accounts" or "foreign property." Any examination on those "topics," given GMs' allegations in the various Complaints (including the Amended Complaint in *Ashton* and the Second Amended Complaint in Wayne County) would for the reasons set forth below either be "for or against" Mr. Iacobelli, and therefore any inquiry would be prohibited by the spousal privilege.

Plaintiffs have alleged that the alleged foreign accounts were part of a "scheme to bribe former UAW officials to benefit FCA and harm GM." Plaintiffs' Response at p. 2. In each of this and the Related Actions, Plaintiffs have alleged that each of Mr. Iacobelli, Mr. Ashton, Mr. Williams, FCA and others conspired, in return for payments by FCA to unidentified foreign bank accounts, to breach alleged duties to one or both of the Plaintiffs; and that each of Messrs. Iacobelli, Ashton and Williams (together with FCA and others) are, as alleged co-conspirators, liable for the alleged acts and omissions of each other. See **Exh. 13**, *Williams'* First Amended Complaint at, *e.g.*, ¶¶7,88, 92,122.

In addition, the requested examination would be "for or against" Mr. Iacobelli since

(a) GM has asserted in the Michigan State Court Action <u>brought against her husband</u>, Alphons Iacobelli, that Mrs. Iacobelli has "[i]information regarding FCA's payment of money or things of value to UAW or FCA officers or employees, including through foreign |
|---|---|---|
| 4 | Communications direct or indirect that she has had related to foreign countries or accounts | |
| 6 | Her knowledge on foreign accounts including related transactions over which has or had an interest, authority or control | |
| 11 | Any documents or data that has been discarded or deleted she has been involved with directly or indirectly regarding FCA, GM or the UAW including foreign accounts | |
| 12 | Foreign property in which she has an interest | |

| | | |
|---|---|---|
| | | bank accounts…" (GMs' February 28, 2022 Amended Initial Disclosures). |
| | | (b) GM alleges that "FCA NV compensated Iacobelli extremely well for his role in the scheme, including providing him with control over millions of dollars held in financial accounts in Switzerland (UBS and Credit Suisse), Italy (Deutsche Bank), Liechtenstein (VP Bank Vaduz) and Singapore (DBS Band) both directly, through family [Susanne Iacobelli], and through a corporate entity he controls [Business Advisory Group]" (GM Second Amended Complaint, at ¶69(a)); |
| | | (c) GM strongly implies in this Ashton Action that Mrs. Iacobelli is a co-conspirator in the alleged scheme of which GM complains, and Plaintiffs allege in this *General Motors LLC v Ashton*, bearing case no. 20-12659 (RBK-SAK) in the United States District Court for the District of New Jersey (the *Ashton* New Jersey Action), that "GM has reason to believe that such [foreign] accounts exist at one or more foreign financial institutions in Mrs. Iacobelli's name and that she has played a role in other accounts in her husband's name and the name of Business Advisory Group (Mr. Iacobelli's personal business)"(GM's January 26, 2022 Response in Opposition to Susanne Iacobelli's Motion to Quash Subpoena *duces tecum*, *General Motors LLC v Ashton*, case no. 2:22-mc-50034 in the United States District Court for the Eastern District of Michigan, ECF No. 10, pageID 256); |
| | | (d) GM admits in the December 3, 2021 email from counsel for GM that "[s]pecifically, GM has alleged [in the |

Ashton Action] that FCA (acting through agents such as Mr. Iacobelli) directed improper payments to Mr. Ashton and others in a direct effort to harm GM, and that FCA employees (such as Mr. Iacobelli) also maintained such accounts. (See e.g. First Am. Compl. at ¶¶ 12, 54-101.) The subpoenas to Ms. Iacobelli and BAG seek relevant information and documents they may possess about the overall scheme and these dealings by Mr. Iacobelli, including information concerning foreign accounts held in the name of Ms. Iacobelli or BAG for the benefit of Mr. Iacobelli;" and

(e) GM sought leave to amend its Complaint in *General Motors LLC, et al. v. FCA US LLC, et al.*, 2:19-cv-13429-PDB-DRG (E.D. Mich.), Doc 84, Page ID 2989 (alleging "[u]pon information and belief, FCA and FCA NV secretly provided Iacobelli and a family member [Susanne Iacobelli] with millions of dollars through funds currently in accounts in Italy, Liechtenstein, Switzerland and Singapore not only for his central and long-running role in the scheme…") and at Page ID 3128, to allege at Exh. A, proposed First Amended Complaint ¶226(f) the alleged receipt by Mr. Iacobelli of "substantial amounts form FCA and FCA NV in the form of control over accounts held at financial institutions in Switzerland, Italy, Singapore, and Liechtenstein, in his own name, **the name of a family member** [Susanne Iacobelli], and the name of a business entity he controls [Business Advisory Group]"(emphasis supplied).

|  |  | Against these allegations, Ms. Iacobelli's testimony concerning the alleged accounts would either be for her husband (if she has no knowledge regarding any alleged foreign accounts including related transactions over which has or had an interest, authority or control), or against her husband if she has any such knowledge (since Plaintiffs would invariably argue that such knowledge supports their allegations of the existence and purpose of those alleged accounts).

Similarly, Ms. Iacobelli's testimony concerning foreign travel would either be for her husband (if she did not have any foreign travel), or against her husband (if she did have foreign travel, that might be argued to be in furtherance of the scheme in which Mr. Iacobelli (and at times Ms. Iacobelli) is alleged to be a co-conspirator).

Perhaps as importantly, whether or not Ms. Iacobelli has firsthand knowledge independent of any communication(s) with her husband is not the correct focus of the inquiry. The test for determining the applicability of the spousal testimonial privilege is whether or not the testimony would be "for or against" her husband, and is not dependent upon the <u>source</u> of that knowledge. |
|  | Plaintiffs assert at Further Submission page 7, that "GM is entitled to inquire, at the very least, as to whether Ms. Iacobelli maintains foreign accounts in her own name and about her own foreign travel, | Plaintiffs cannot be serious. Plaintiffs' further "clarification" does not vitiate the basis for Ms. Iacobelli's objection but, instead, <u>highlights the applicability of the spousal privilege as a bar to the examination</u>. The entirety of Plaintiffs' claim of entitlement to examine Ms. Iacobelli in the first instance is her alleged knowledge of foreign accounts, |

| | | |
|---|---|---|
| | which are again distinct sources of information on which Ms. Iacobelli may have specific firsthand knowledge independent of any connection to Mr. Iacobelli. | and alleged travel related to those alleged foreign accounts, that were – as Plaintiffs allege – in furtherance of an unlawful scheme that Mr. Iacobelli is alleged to be a co-conspirator. If the testimony sought is unrelated to the alleged foreign accounts upon which Plaintiffs rely in bringing their numerous claims, there is no reason to even attempt to examine Ms. Iacobelli. |
| 5 | Purchases on *her* credit cards in the documents that have been produced | The information described in topic/bullet point 5, to the extent it seeks to examine Ms. Iacobelli regarding those purchases made using the AMEX credit card account in her name (as reflected in the AMEX statements produced by AMEX in the NTC litigation, that Plaintiffs reference as the basis for the inquiry), since Plaintiffs allege them to be part of the alleged "scheme" of which GM claims Mr. Iacobelli is a part, would similarly be "for or against" Mr. Iacobelli and impermissible. |
| | In its Further Submission, Plaintiffs recast the topic as being limited to "Ms. Iacobelli's *own* purchases on her *own* credit cards as reflected in documents produced in discovery in the Ashton Action." | The credit card statements referenced by Plaintiffs in their Further Submission as having been "been produced in discovery in the Ashton Action" are the AMEX statements initially produced by AMEX in the Iacobelli/NTC litigation, and in turn produced by Mr. Iacobelli in this *Ashton* Action. That recasting of the request, in a transparent effort to make it appear that the inquiry is unrelated to the alleged "scheme," does not make the inquiry any more permissible. |
| 7 | Document discovery -- does she keep notes; what email account does she use; what sort of devices does she use | No objection raised |

| 8 | Messaging apps and methods of electronic communication she has used since 2012. | No objection raised |
|---|---|---|
| 9 | Her communication devices since 2012. | No objection raised |
| 10 | Any role she undertook in communicating with DeLorenzo. | The information described in topic/bullet point 10, regarding any alleged "role" of Ms. Iacobelli in communicating with Mr. DeLorenzo, would similarly be "for or against" Mr. Iacobelli, given the manner in which GM has sought to use the alleged recollection of Mr. DeLorenzo against Mr. Iacobelli. |
| | In its Further Submission, Plaintiffs do not address this topic. | |

For the reasons set forth above and in her underlying Motion and supporting Brief, Susanne Iacobelli prays that this Court quash Plaintiffs' Subpoena *duces tecum*, and deny Plaintiffs the right to conduct any examination on those topics to which Ms. Iacobelli has objected, without in each case prejudice to raising during such examination such other objections, including the assertion of applicable privileges, that are appropriate under the circumstances.

> Respectfully submitted,
> NEDELMAN LEGAL GROUP PLLC
> /s/ Michael A. Nedelman
> Michael A. Nedelman (P35433)
> Attorneys for Susanne Iacobelli
> 28580 Orchard Lake Road, Suite 140
> Farmington Hills, Michigan 48334
> (248) 855-8888

Dated: May 2, 2022      mnedelman@nglegal.com

## <u>INDEX OF ADDITIONAL EXHIBITS</u>:

14. Email dated March 24, 2022
15. Email dated April 1, 2022
16. Ms. Iacobelli's April 14, 2022 responses to Plaintiffs' "topics"

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN

**GENERAL MOTORS LLC et al.,**          **CASE NO. 2:22-mc-50034-GCS-DRG**

      **Plaintiffs,**          **Hon. George Caram Steeh**
                                **Magistrate Judge David R. Grand**

**v.**

**JOSEPH ASHTON,**          **Related Case No. 20-12659 (RBK-SAK)**
                                  **Pending in the United States District Court**
      **Defendant.**          **for the District of New Jersey, Camden**
                                  **Vicinage**

                                  **Related Case** *General Motors LLC v FCA,*
                                  *LLC,* **bearing case no. 19-cv-13429**
                                  **(Dismissed)**
                                  **United States District Court for the Eastern**
                                  **District of Michigan, Southern Division**

_____/

## CERTIFICATE OF SERVICE

     I HEREBY CERTIFY that a true and correct copy of the foregoing was furnished via the e-filing portal to all counsel of record.

I declare that the above statement is true to the best of my knowledge, information and belief on this 2ND day of May, 2022.

                            /s/  Michelle K. Watler
                            Michelle K. Watler

**Michael Nedelman**

| | |
|---|---|
| **From:** | Michael Nedelman |
| **Sent:** | Thursday, March 24, 2022 10:48 AM |
| **To:** | Karis, Hariklia |
| **Subject:** | Iacobelli/ GM v Ashton - S. Iacobelli déposition |

Carrie-

Thank you for providing the transcript. After my review of the transcript, the Court's minute entry, and my notes, it appears – based on our conversation - that we may disagree on the appropriate next steps. The Court clearly expects that we meet and confer "to determine whether, in light of the Court's rulings, disputes remain about the specific questions, if any, that can be asked of Mrs. Iacobelli." In order for there to be a meaningful meet and confer, in order to determine whether, in light of the Court's rulings, disputes remain about the specific questions, if any, that can be asked of Mrs. Iacobelli, we must first be apprised of the specific questions that GM wants to ask. Without knowing those questions, it is impossible to determine if we can agree that those questions are not violative of the spousal privilege (and perhaps give you a heads up on any other applicable privilege that may be asserted). If we disagree regarding the propriety of any specific question(s), I believe that the Court expects us to brief the issue in advance of any deposition. In this regard, Judge Grand made it clear (at least in my view) that he didn't want a deposition to be conducted without this prior discussion and briefing if necessary, to avoid the deposition proceeding and having question after question objected-to based upon the spousal privilege (understanding, that there may not be any way to avoid that process with regard to other applicable privileges that may be asserted as a bar to the testimony sought to be elicited).

In our conversation Monday, you indicated that you were not yet prepared to provide to me a list of potential questions. Please do so at your earliest convenience, so that I can evaluate them and determine if they are objectionable.

Finally, with respect to a tentative date for Ms. Iacobelli's deposition, I am as I previously advised scheduled to be in trial the week of April 11, 2022, and actually have 2 trials set the week of April 18, 2022 – with commitments to be in Oklahoma after April 19, 2022 if the trials do not proceed. I indicated that if the matters settle or do not proceed as scheduled, there is a possibility that I could be available on April 19, 2022 – assuming, of course, that Ms. Iacobelli is available and we have by that date resolved any dispute(s) regarding the questions that may be asked. I should have a better idea of my availability by COB Friday (there is a case management conference in one matter this afternoon, and a summary judgment hearing in the other on Friday). I will keep you apprised.

I look forward to receipt of GM's proposed questions, so that we can thereafter engage in the meet and confer contemplated by the Court.


Michael A. Nedelman
Nedelman Legal Group PLLC

28580 Orchard Lake Rd. , Suite 140
Farmington Hills, MI 48334

32 SE 2nd Avenue, Ste. 636
Delray Beach, FL 33444

Phone: 248.855.8888 x117
Direct: 248.538.4543
Florida Main: 561.278.8855

**EXHIBIT 14**

Mobile: 248.561.4662
email: mnedelman@nglegal.com

This transmission may be protected from involuntary disclosure pursuant to the attorney client privilege and/or attorney work product doctrine. Any unauthorized disclosure and/or dissemination is expressly prohibited. The contact information set forth above is not intended and shall not be construed or asserted to be a signature or that the sender has subscribed to the content of the transmission.

**From:** Karis, Hariklia <hkaris@kirkland.com>
**Sent:** Tuesday, March 22, 2022 9:24 PM
**To:** Michael Nedelman <mnedelman@nglegal.com>
**Subject:** RE: Transcript

I am reattaching the transcript.

Were you able to confirm April 19 with Mrs. Iacobelli?

Carrie

**Hariklia ("Carrie") Karis, P.C.**

**KIRKLAND & ELLIS LLP**
300 North LaSalle, Chicago, IL 60654
**T** +1 312 862 2330  **M** +1 847 525 6908
**F** +1 312 862 2200

hkaris@kirkland.com

**From:** Michael Nedelman <mnedelman@nglegal.com>
**Sent:** Tuesday, March 22, 2022 5:24 PM
**To:** Karis, Hariklia <hkaris@kirkland.com>
**Subject:** RE: Transcript

Carrie-
The copy of the transcript you provided will not open; the error message indicates that it was not properly encoded when uploaded. Please correct and re-send. Thank you.

Michael A. Nedelman
Nedelman Legal Group PLLC

28580 Orchard Lake Rd. , Suite 140
Farmington Hills, MI 48334

32 SE 2nd Avenue, Ste. 636
Delray Beach, FL 33444

Phone: 248.855.8888 x117
Direct: 248.538.4543
Florida Main: 561.278.8855
Mobile: 248.561.4662
email: mnedelman@nglegal.com

**EXHIBIT 14**

This transmission may be protected from involuntary disclosure pursuant to the attorney client privilege and/or attorney work product doctrine. Any unauthorized disclosure and/or dissemination is expressly prohibited. The contact information set forth above is not intended and shall not be construed or asserted to be a signature or that the sender has subscribed to the content of the transmission.

**From:** Karis, Hariklia <hkaris@kirkland.com>
**Sent:** Tuesday, March 22, 2022 11:20 AM
**To:** Michael Nedelman <mnedelman@nglegal.com>
**Subject:** Transcript

Michael,

I'm attaching the transcript from the hearing. I think it's pretty clear the court expects the dep to proceed and you to provide us a date. Please let us know your position.

Happy to discuss today. Let me know what time works and whether April 19 is a firm date.

Hariklia ("Carrie") Karis
KIRKLAND & ELLIS LLP
300 N. LaSalle St. Chicago, IL 60654
(312)862-2330 office
(847)525-6908 cell

Sent from my iPhone

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

**EXHIBIT 14**

**Michael Nedelman**

| | |
|---|---|
| **From:** | Michael Nedelman |
| **Sent:** | Friday, April 1, 2022 5:15 PM |
| **To:** | Karis, Hariklia |
| **Subject:** | Iacobelli/ GM v Ashton - S. Iacobelli déposition |

Carrie -

I'm following up on the note below.

I again request that you promptly advise me of the specific questions that GM wants to ask of Mrs. Iacobelli, in order that we can, if necessary,  meet and confer "to determine whether, in light of the Court's rulings, disputes remain about the specific questions, if any, that can be asked of Mrs. Iacobelli;" and if we still disagree regarding the propriety of any specific question(s), that we agree upon a briefing schedule on the issue(s), so they may be resolved by the Court in advance of any deposition.

Given the failure and/or refusal to date of GM to advise of the specific questions that GM wants to ask, and the resultant delay in our consideration of those questions, the anticipated "meet and confer" and the establishment of a briefing schedule if necessary, it is clear that there is no realistic possibility of the deposition examination of Mrs. Iacobelli proceeding on April 19, 2022, even if I were able to rearrange my schedule to make myself available that afternoon for such examination. Please be advised that following the 19th, I will be unavailable until the date of Mrs. Iacobelli's scheduled surgery – which I understand will leave her unavailable for any required deposition for several weeks thereafter (I am attempting to ascertain how long she will be unavailable). While that delay is unavoidable, it will provide us with the opportunity to identify and brief any disputes that may exist after GM provides to us the questions that it seeks to ask.

I look forward to your response.

Michael A. Nedelman
Nedelman Legal Group PLLC

28580 Orchard Lake Rd. , Suite 140
Farmington Hills, MI 48334

32 SE 2nd Avenue, Ste. 636
Delray Beach, FL 33444

Phone: 248.855.8888 x117
Direct: 248.538.4543
Florida Main: 561.278.8855
Mobile: 248.561.4662
email: mnedelman@nglegal.com

This transmission may be protected from involuntary disclosure pursuant to the attorney client privilege and/or attorney work product doctrine. Any unauthorized disclosure and/or dissemination is expressly prohibited. The contact information set forth above is not intended and shall not be construed or asserted to be a signature or that the sender has subscribed to the content of the transmission.

**EXHIBIT 15**

**From:** Michael Nedelman
**Sent:** Thursday, March 24, 2022 10:48 AM
**To:** Karis, Hariklia <hkaris@kirkland.com>
**Subject:** Iacobelli/ GM v Ashton - S. Iacobelli déposition

Carrie-

Thank you for providing the transcript. After my review of the transcript, the Court's minute entry, and my notes, it appears – based on our conversation - that we may disagree on the appropriate next steps. The Court clearly expects that we meet and confer "to determine whether, in light of the Court's rulings, disputes remain about the specific questions, if any, that can be asked of Mrs. Iacobelli." In order for there to be a meaningful meet and confer, in order to determine whether, in light of the Court's rulings, disputes remain about the specific questions, if any, that can be asked of Mrs. Iacobelli, we must first be apprised of the specific questions that GM wants to ask. Without knowing those questions, it is impossible to determine if we can agree that those questions are not violative of the spousal privilege (and perhaps give you a heads up on any other applicable privilege that may be asserted). If we disagree regarding the propriety of any specific question(s), I believe that the Court expects us to brief the issue in advance of any deposition. In this regard, Judge Grand made it clear (at least in my view) that he didn't want a deposition to be conducted without this prior discussion and briefing if necessary, to avoid the deposition proceeding and having question after question objected-to based upon the spousal privilege (understanding, that there may not be any way to avoid that process with regard to other applicable privileges that may be asserted as a bar to the testimony sought to be elicited).

In our conversation Monday, you indicated that you were not yet prepared to provide to me a list of potential questions. Please do so at your earliest convenience, so that I can evaluate them and determine if they are objectionable.

Finally, with respect to a tentative date for Ms. Iacobelli's deposition, I am as I previously advised scheduled to be in trial the week of April 11, 2022, and actually have 2 trials set the week of April 18, 2022 – with commitments to be in Oklahoma after April 19, 2022 if the trials do not proceed. I indicated that if the matters settle or do not proceed as scheduled, there is a possibility that I could be available on April 19, 2022 – assuming, of course, that Ms. Iacobelli is available and we have by that date resolved any dispute(s) regarding the questions that may be asked. I should have a better idea of my availability by COB Friday (there is a case management conference in one matter this afternoon, and a summary judgment hearing in the other on Friday). I will keep you apprised.

I look forward to receipt of GM's proposed questions, so that we can thereafter engage in the meet and confer contemplated by the Court.


Michael A. Nedelman
Nedelman Legal Group PLLC

28580 Orchard Lake Rd. , Suite 140
Farmington Hills, MI 48334

32 SE 2nd Avenue, Ste. 636
Delray Beach, FL 33444

Phone: 248.855.8888 x117
Direct: 248.538.4543
Florida Main: 561.278.8855
Mobile: 248.561.4662
email: mnedelman@nglegal.com

This transmission may be protected from involuntary disclosure pursuant to the attorney client privilege and/or

**EXHIBIT 15**

attorney work product doctrine. Any unauthorized disclosure and/or dissemination is expressly prohibited. The contact information set forth above is not intended and shall not be construed or asserted to be a signature or that the sender has subscribed to the content of the transmission.

---

**From:** Karis, Hariklia <hkaris@kirkland.com>
**Sent:** Tuesday, March 22, 2022 9:24 PM
**To:** Michael Nedelman <mnedelman@nglegal.com>
**Subject:** RE: Transcript

I am reattaching the transcript.

Were you able to confirm April 19 with Mrs. Iacobelli?

Carrie

**Hariklia ("Carrie") Karis, P.C.**

**KIRKLAND & ELLIS LLP**
300 North LaSalle, Chicago, IL 60654
**T** +1 312 862 2330  **M** +1 847 525 6908
**F** +1 312 862 2200

hkaris@kirkland.com

**From:** Michael Nedelman <mnedelman@nglegal.com>
**Sent:** Tuesday, March 22, 2022 5:24 PM
**To:** Karis, Hariklia <hkaris@kirkland.com>
**Subject:** RE: Transcript

Carrie-
The copy of the transcript you provided will not open; the error message indicates that it was not properly encoded when uploaded. Please correct and re-send. Thank you.

Michael A. Nedelman
Nedelman Legal Group PLLC

28580 Orchard Lake Rd. , Suite 140
Farmington Hills, MI 48334

32 SE 2nd Avenue, Ste. 636
Delray Beach, FL 33444

Phone: 248.855.8888 x117
Direct: 248.538.4543
Florida Main: 561.278.8855
Mobile: 248.561.4662
email: mnedelman@nglegal.com

This transmission may be protected from involuntary disclosure pursuant to the attorney client privilege and/or attorney work product doctrine. Any unauthorized disclosure and/or dissemination is expressly prohibited. The contact information set forth above is not intended and shall not be construed or asserted to be a signature or that the sender has subscribed to the content of the transmission.

**EXHIBIT 15**

**From:** Karis, Hariklia <hkaris@kirkland.com>
**Sent:** Tuesday, March 22, 2022 11:20 AM
**To:** Michael Nedelman <mnedelman@nglegal.com>
**Subject:** Transcript

Michael,

I'm attaching the transcript from the hearing. I think it's pretty clear the court expects the dep to proceed and you to provide us a date. Please let us know your position.

Happy to discuss today. Let me know what time works and whether April 19 is a firm date.


Hariklia ("Carrie") Karis
KIRKLAND & ELLIS LLP
300 N. LaSalle St. Chicago, IL 60654
(312)862-2330 office
(847)525-6908 cell

Sent from my iPhone

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.


The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

**EXHIBIT 15**

## Michael Nedelman

| | |
|---|---|
| **From:** | Michael Nedelman |
| **Sent:** | Thursday, April 14, 2022 9:49 AM |
| **To:** | Karis, Hariklia |
| **Cc:** | Willian, Jeffrey L.; Pagonis, Stacey G.; McGushin, Casey; Lamb, Jeffrey K.; Wenner, Adam M. |
| **Subject:** | RE: Suzanne Iacobelli's Deposition |

Carrie-

Thank you for your note below. While I believe that your note fails to satisfy Magistrate Judge Grand's instructions that GM provide to Ms. Iacobelli the specific <u>questions</u> that GM wishes to ask - not as you suggest "some examples of topics that GM proposes are appropriate" areas of inquiry - it is clear even from the "topics" that there remains a substantial disagreement regarding the propriety of GMs' proposed examination. By way of example and not limitation:

1. The information described in bullet point 1, to the extent that it seeks information relating to any "relationship with UAW, etc" that involves the alleged "scheme" would be "for or against" Mr. Iacobelli, and not a permissible topic of inquiry;

2. The information described in bullet point 2, to the extent that it seeks to discover the occurrence of (if any) and/or conversations with (if any) any of those persons you refer to as the "key players," would be "for or against" Mr. Iacobelli and not a permissible topic of inquiry;

3. The information described in bullet points 3, 4, 6, 11 and 12 of your note all refer to alleged "foreign accounts" or "foreign property." Any examination on those "topics," given GMs' allegations in the various Complaints (including the Amended Complaint in Ashton and the Second Amended Complaint in Wayne County) would either be "for or against" Mr. Iacobelli, and therefore not permitted;

4. The information described in bullet point 5, to the extent it seeks to examine Ms. Iacobelli regarding those purchases made using the AMEX credit card account in her name (as reflected in the AMEX statements produced by AMEX in the NTC litigation, that you reference as the basis for the inquiry), since you allege them to be part of the alleged "scheme" of which GM claims Mr. Iacobelli is a part, would similarly be "for or against" Mr. Iacobelli and impermissible; and

5. The information described in bullet point 10, regarding any alleged "role" of Ms. Iacobelli in communicating with Mr. DeLorenzo, would similarly be "for or against" Mr. Iacobelli, given the manner in which GM has sought to use the alleged recollection of Mr. DeLorenzo against Mr. Iacobelli.

In light of the continuing disagreement between us, I believe it is appropriate that (in accordance with Magistrate Judge Grand's direction) we agree upon (or at least attempt to agree upon) a briefing schedule in this matter and propose same to Magistrate Judge Grand. In light of my schedule, I would suggest that I be afforded until May 2, 2022  file my initial brief; you can have as long as you want for a response; and that I be afforded one week from the filing of your response to file a reply. Please advise if this schedule works for you, or if you propose an alternative; if we can reach agreement, we can submit it to the Court and hopefully obviate the need for the telephonic hearing next week (which I would appreciate, since I will be on the road - literally driving to Tulsa - at the time set for the hearing on the 21st).

We can address a date for Ms. Iacobelli's examination, if any, following the Court's ruling on the propriety of your specific questions (or topics, if the Court permits the description to remain at that general a level), taking into account both my and Ms. Iacobelli's availability.

**EXHIBIT 16**

I look forward to your response.


Michael A. Nedelman
Nedelman Legal Group PLLC

28580 Orchard Lake Rd. , Suite 140
Farmington Hills, MI 48334

32 SE 2nd Avenue, Ste. 636
Delray Beach, FL 33444

Phone: 248.855.8888 x117
Direct: 248.538.4543
Florida Main: 561.278.8855
Mobile: 248.561.4662
email: mnedelman@nglegal.com

This transmission may be protected from involuntary disclosure pursuant to the attorney client privilege and/or attorney work product doctrine. Any unauthorized disclosure and/or dissemination is expressly prohibited. The contact information set forth above is not intended and shall not be construed or asserted to be a signature or that the sender has subscribed to the content of the transmission.

**From:** Karis, Hariklia <hkaris@kirkland.com>
**Sent:** Monday, April 11, 2022 4:50 PM
**To:** Michael Nedelman <mnedelman@nglegal.com>
**Cc:** Willian, Jeffrey L. <jwillian@kirkland.com>; Pagonis, Stacey G. <stacey.pagonis@kirkland.com>; McGushin, Casey <casey.mcgushin@kirkland.com>; Lamb, Jeffrey K. <JLamb@honigman.com>; Wenner, Adam M. <AWenner@honigman.com>
**Subject:** Suzanne Iacobelli's Deposition

Michael,

While we don't agree that the Court required GM to disclose the topics for Suzanne Iacobelli's deposition, in the interest of cooperation and to move this process forward, below are some examples of topics that GM proposes are appropriate for the deposition and do not implicate spousal privilege.

**Topics**
- Work history; any relationship with UAW; etc.
- Whether she personally knows/has had conversations with any of the key players in the scheme (Ashton, Marchionne, Williams, etc.).
- Foreign countries she has traveled to since 2012
- Communications direct or indirect that she has had related to foreign countries or accounts
- Purchases on **her** credit cards in the documents that have been produced.
- Her knowledge on foreign accounts including related transactions over which has or had an interest, authority or control.
- Document discovery -- does she keep notes; what email account does she use; what sort of devices does she use.
- Messaging apps and methods of electronic communication she has used since 2012.
- Her communication devices since 2012.
- Any role she undertook in communicating with DeLorenzo.

**EXHIBIT 16**

- Any documents or data that has been discarded or deleted  she has been involved with directly or indirectly regarding FCA, GM or the UAW including foreign accounts
- Foreign property in which she has an interest

When you and I spoke, you hadn't even spoken with your client to determine her availability and insisted that your schedule didn't allow for a deposition prior to the next hearing on April 20.  What date have you now confirmed for the deposition?  As I mentioned, resolving our issues with the topics shouldn't delay at least getting a date on the calendar. Please provide a date promptly.

Carrie

**Hariklia ("Carrie") Karis, P.C.**

**KIRKLAND & ELLIS LLP**
300 North LaSalle, Chicago, IL 60654
**T** +1 312 862 2330  **M** +1 847 525 6908
**F** +1 312 862 2200

hkaris@kirkland.com

The information contained in this communication is confidential, may be attorney-client privileged, may constitute inside information, and is intended only for the use of the addressee. It is the property of Kirkland & Ellis LLP or Kirkland & Ellis International LLP. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify us immediately by return email or by email to postmaster@kirkland.com, and destroy this communication and all copies thereof, including all attachments.

**EXHIBIT 16**