UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| GENERAL MOTORS LLC, GENERAL MOTORS COMPANY, Plaintiffs, against JOSEPH ASHTON, Defendant. | Case No. 2:22-mc-50034-GCS-DRG HONORABLE GEORGE CARAM STEEH MAGISTRATE JUDGE DAVID R. GRAND Related to General Motors LLC v. Ashton, Case No. 2:22-mc-50034 (E.D. Mich.) Arising from *General Motors LLC, et al. v. Ashton*, Case No. 1:20-cv-12659 (D.N.J.) |

GM'S EXPEDITED MOTION TO ENFORCE THE COURT'S
APRIL 28, 2022 ORDER REQUIRING FULL COMPLIANCE WITH
GM'S SUBPOENA TO ALPHONS IACOBELLI

Pursuant to Federal Rule of Civil Procedure 45 and Local Rule 7.1, General

Motors LLC and General Motors Company (collectively, "GM") move to enforce

the Court's April 28, 2022 Order requiring nonparty Alphons Iacobelli ("Iacobelli")

to fully comply with the subpoena GM served on Iacobelli in the action captioned

*General Motors LLC, et al. v. Joseph Ashton*, Case No. 1:20-cv-12659-RBK-KMW

(D.N.J.).  Iacobelli demonstrably did not comply with the Court's specific directives,

and GM requires further assistance to enforce the Court's April 28 Order.

As required by Local Rule 7.1(a), counsel for GM have attempted to confer with Iacobelli regarding the Court's April 28 Order, the nature of this Motion, and its legal basis. Despite numerous exchanges, the parties have not been able to resolve their disputes. Given Iacobelli's months-long delay, GM respectfully requests that the Court consider this motion on an expedited basis.

Dated: July 11, 2022

Respectfully submitted,

**HONIGMAN LLP**
By: */s/ Jeffrey K. Lamb*
Jeffrey K. Lamb (P76738)
Adam M. Wenner (P75309)
Keith D. Underkoffler (P84854)
2290 First National Building
660 Woodward Avenue
Detroit, MI 48226
Telephone: (313) 465-7000
jlamb@honigman.com
awenner@honigman.com
kunderkoffler@honigman.com

**KIRKLAND AND ELLIS LLP**
Hariklia Karis, P.C.
Jeffrey L. Willian, P.C.
300 North LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000
hariklia.karis@kirkland.com
jeffrey.willian@kirkland.com

*Attorneys for General Motors LLC and General Motors Company*

2

## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| GENERAL MOTORS LLC, GENERAL MOTORS COMPANY, <br><br> Plaintiffs, <br><br> against <br><br> JOSEPH ASHTON, <br><br> Defendant. | Case No. 2:22-mc-50034-GCS-DRG <br><br> HONORABLE GEORGE CARAM STEEH <br><br> MAGISTRATE JUDGE DAVID R. GRAND <br><br> Related to General Motors LLC v. Ashton, Case No. 2:22-mc-50034 (E.D. Mich.) <br><br> Arising from *General Motors LLC, et al. v. Ashton*, Case No. 1:20-cv-12659 (D.N.J.) |

## BRIEF IN SUPPORT OF GM'S
## MOTION TO ENFORCE THE COURT'S APRIL 28, 2022 ORDER

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

Concise Statement of the Issues ............................................................... iii

Controlling Authority ............................................................................... iv

Introduction ................................................................................................ 1

Background ................................................................................................. 4

Argument .................................................................................................... 9

I.     Iacobelli's Missing Documents or Ineffective Search ............................ 11

II.    Requested Measures to Remedy Iacobelli's Grossly Deficient Responses to the April 28 Order and Related Subpoena ........................ 20

## <u>CONCISE STATEMENT OF THE ISSUES</u>

Whether the Court should order an ESI vendor to conduct a forensic review of Iacobelli's electronic devices in light of Iacobelli's failure to comply with the Court's April 28 Order requiring full compliance with GM's subpoena.

***GM states: Yes.***

Whether the Court should order the submission of an affidavit of compliance with its April 28 Order including full compliance with GM's subpoena.

***GM states: Yes.***

## CONTROLLING AUTHORITY

### Cases

*Am. Tr. v. Sabino,* 230 F.3d 1357 (6th Cir. 2000)

*In re Ruppert*, 309 F.2d 97 (6th Cir. 1962)

*Liberty Mut. Ins. Co. v. Devere Constr. Co.*, No. 16-CV-10423, 2016 WL 4800796 (E.D. Mich. Sept. 14, 2016)

*Trek, Inc. v. ITR Am., LLC*, No. 2:16-cv-13767-SJM-RSW, 2017 WL 11533311 (E.D. Mich. Nov. 9, 2017), *report and recommendation adopted*, No. 2:16-CV-13767, 2017 WL 11533312 (E.D. Mich. Dec. 4, 2017)

*Venture Funding Ltd. v. United States*, No. CIV. A. 97-CV-75476-, 1999 WL 500993 (E.D. Mich. May 20, 1999)

### Rules

Fed. R. Civ. P. 45

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allison v. Mavic, Inc.*,
  No. 5:13-CV-180-DCR-REW, 2014 WL 12650099 (E.D. Ky.
  Oct. 30, 2014) ......................................................................................................19

*Am. Tr. v. Sabino*,
  230 F.3d 1357 (6th Cir. 2000) ............................................................................10

*Ameriwood Indus., Inc. v. Liberman*,
  No. 4:06CV524-DJS, 2006 WL 3825291 (E.D. Mo. Dec. 27,
  2006), *as amended on clarification*, No. 4:06CV524-DJS, 2007
  WL 685623 (E.D. Mo. Feb. 23, 2007)..................................................................11

*Barrette Outdoor Living, Inc. v. Mich. Resin Representatives*,
  No. 11-13335, 2013 WL 3983230 (E.D. Mich. Aug. 1, 2013) ...........................25

*Champion Foodservice, LLC v. Vista Food Exch., Inc.*,
  No. 1:13-CV-1195, 2016 WL 4468000 (N.D. Ohio Aug. 23, 2016) .................10

*Diamond Consortium, Inc. v. Hammervold*,
  386 F. Supp. 3d 904 (M.D. Tenn. 2019) .............................................................21

*Gen. Ret. Sys. of the City of Detroit v. Alamerica Bank*,
  No. 14-CV-10032, 2016 WL 8243173 (E.D. Mich. Mar. 7, 2016)....................24

*GM v. Iacobelli, et al.*,
  Case No. 20-011998-CB (Wayne Cty Cir Ct), May 20, 2022 .............................7

*Liberty Mut. Ins. Co. v. Devere Constr. Co.*,
  No. 16-CV-10423, 2016 WL 4800796 (E.D. Mich. Sept. 14, 2016).................16

*In re Ruppert*,
  309 F.2d 97 (6th Cir. 1962) ................................................................................19

*Seattle Times Co. v. LeatherCare, Inc.*,
  232 F. Supp. 3d 959 (E.D. Mich. 2017) ..............................................................19

*Snyder Comput. Sys., Inc. v. U.S. Dep't of Transp.*,
    No. 2:12-CV-1140, 2014 WL 12654909 (S.D. Ohio Nov. 6, 2014)..................16

*Trek, Inc. v. ITR Am., LLC*,
    No. 2:16-cv-13767-SJM-RSW, 2017 WL 11533311 (E.D. Mich.
    Nov. 9, 2017) ....................................................................................................10

*United States v. Davis*,
    767 F.2d 1025 (2d Cir. 1985) ............................................................................18

*United States v. Iacobelli*,
    Case No. 17-cr-20406 (E.D. Mich.), ECF No. 58 ............................................5, 6

*United States v. Patrick*,
    No. 95-CV-72816-DT, 1995 WL 687100 (E.D. Mich. Sept. 12,
    1995), *aff'd* 99 F.3d 1140 (6th Cir. 1996) .........................................................24

*Venture Funding Ltd. v. United States*,
    No. CIV. A. 97-CV-75476, 1999 WL 500993 (E.D. Mich. May 20,
    1999) ..................................................................................................................23

*Weber Mfg. Techs., Inc. v. Plasan Carbon Composites, Inc.*,
    No. 14-12488, 2016 WL 8114507 (E.D. Mich. July 26, 2016)..........................24

**Rules**

Fed. R. Civ. P. 26(g) ..................................................................................................9

Rule 11 ....................................................................................................................5, 6

Rule 34 ........................................................................................................................16

Rule 45 ................................................................................................................*passim*

Rule 45(g)....................................................................................................................10

## INTRODUCTION

This motion seeks to enforce the Court's April 28, 2022 Order requiring Alphons Iacobelli to produce all responsive documents to GM's subpoena including conducting a "thorough search" of all "electronic equipment." The April 28 Order struck Iacobelli's wide-ranging and unsupported objections to each and every one of the subpoena's document requests and many of the definitions, and required his counsel to (i) engage (meaningfully) in the document search, and (ii) review and furnish a full production of responsive documents to all requests within 30 days (the deadline of May 28, 2022 has long since passed). Iacobelli's counsel requested no extension of the deadline in the Order and has produced only a smattering of additional documents.

A review of the documents produced to date, recent admissions by Iacobelli's counsel in the related Michigan state court action, and documents recently produced under GM's subpoena to Butzel Long (Iacobelli's criminal counsel) reveal a stunning disregard of this Court's April 28 Order. In late June, Iacobelli's counsel admitted to Judge Popke (ret.) in the Michigan action that GM and Iacobelli's ESI dispute "is really a function of whether or not there's going to be any additional efforts to obtain ESI," suggesting that Iacobelli has yet to engage in any further search of Iacobelli's electronic communication devices. (**Exhibit 1**, 6/21/2022 J. Popke Hr'g Tr. at 21:5-8; *see also id*. at 22:2-8 (Iacobelli's counsel asking whether

there will be any additional ESI discovery into his personal devices).)  While it is unclear what electronic review of Iacobelli's electronic communication devices was done in response to the April 28 Order and by whom, a review of Iacobelli's produced documents bears out the lack of meaningful review: Iacobelli has failed to produce critical documents including, for example, emails with and other documents shown to Peter DeLorenzo, Iacobelli's banking records, personal emails, and documents sufficient to show the electronic communication devices now and previously in Iacobelli's possession.

This apparent indifference to the Court's April 28 Order is confirmed by documents produced by Butzel Long in early July 2022 in response to a subpoena served by GM.  (Subpoena attached as **Exhibit 13**.)  That subpoena resulted in Butzel Long producing a Cooperation Agreement, a Proffer Agreement, correspondence where Butzel Long was returning documents to the government after GM's November 10, 2021 subpoena had been served on Iacobelli, and remarkably, declarations of Mr. and Mrs. Iacobelli relating to the existence of any foreign accounts.[1]  Every single one of these important documents—which directly

---

[1]  Without waiving its right of future challenge, GM understands that Iacobelli at least views the Cooperation Agreement, Proffer Agreement, and Iacobelli Declarations as confidential and GM has therefore not attached these documents to this motion.  GM will generally describe these important documents. However, to the extent the Court would like to review them, GM will promptly file these documents under seal with the Court.

undermine Iacobelli's taking of the Fifth Amendment in the Michigan action and in the Ashton action—should have been produced by Iacobelli in response to this Court's April 28 Order.  None were, though the documents were readily available in the hands of Iacobelli's counsel (Butzel Long).

Given these series of discovery failures, Iacobelli has proven that he cannot be trusted to meet his extensive and serious discovery obligations.  What's more, it seems anomalous from the start that a convicted felon who engaged in duplicitous criminal acts, who is not a lawyer, and who is pleading the Fifth Amendment for the very acts at the heart of the subpoena, was entrusted to unilaterally collect, review, and produce documents.  That makes no sense.  Under these circumstances, the risk of spoliation is real (past, present, and future)—and GM asks that the Court to promptly order interim remedies outlined herein.

As an interim measure, GM asks the Court to order Iacobelli to immediately turn over all of his electronic communication devices (whether in current use or not) to a third-party (Consilio LLC), who will image the devices and undertake a series of procedures.  In response to spoliation issues with respect to Ashton's phone, the New Jersey court agreed that Consilio should undertake similar forensic work on Ashton's phone.  Consilio's work here would include issuing a report that addresses when the devices were put into service, deletions, usage, web searches, and texting apps. Once the report is commissioned, all documents that hit on prescribed search

3

terms (attached as **Exhibit 14**) should be produced without counsel review (subject

to a privilege screen and right of claw-back).  GM also requests that Consilio be

given access to Iacobelli's email accounts where emails are stored (iCloud or

elsewhere) to undertake the same word search and related reporting on deletions and

other email activity.  Finally, GM requests an affidavit from Iacobelli addressing:

(1) the past and current usage of all electronic communication devices since June

2015, when Iacobelli knew he was under investigation for corrupting the labor

process; (2) the whereabouts of all documents that Iacobelli sent to or brought with

him to meetings with Peter DeLorenzo; and (3) Iacobelli's knowledge of other

electronic data that has not been preserved since his departure from FCA in June

2015 and all steps taken to comply with the Court's April 28 Order.  Iacobelli's

counsel should be bound to take appropriate steps to ensure that Iacobelli comply

with the orders of this Court as well.

   Only through such a third-party enabled discovery process will GM be able to

receive the documents called for by the subpoena or at least receive some clues about

what happened to existing and responsive documents that have not been produced.

## BACKGROUND

   As Iacobelli has admitted in his Plea Agreement, from "2008 until [he] retired

in June 2015, [Iacobelli] was the FCA Vice President for Employee Relations.  As

the FCA Vice President for Employee Relations, Alphons Iacobelli was FCA's lead

4

representative for labor relations and had lead responsibility for managing FCA's relationship with the UAW.   Alphons Iacobelli was the senior FCA official responsible for negotiating with the UAW and for administering the collective bargaining agreements between FCA and the UAW, including the resolution of disputes and grievances that arose under the collective bargaining agreements between FCA and the UAW."  (**Exhibit 2**, *United States v. Iacobelli,* Case No. 17-cr-20406 (E.D. Mich.), ECF No. 58, Iacobelli Rule 11 Plea Agreement, at 5.)

Iacobelli further stipulated that "[b]etween in or before January 2009 and continuing through in or after June 2015, [Iacobelli] knowingly and voluntarily joined a conspiracy in which FCA and FCA executives and FCA employees agreed to pay and deliver, and willfully paid and delivered, money and things of value to officers and employees of the UAW.  As part of that conspiracy, Alphons Iacobelli and other FCA executives and FCA employees acting in the interest of employer FCA used the bank accounts and credit card accounts of the NTC to benefit officers and employees of the UAW, knowing that those individuals were not permitted to receive the money and other things of value."  *Id.*[2]

---

[2]   Notably, Iacobelli previously engaged in duplicitous conduct with requested documents to evade detection of his criminal activity.  For example, in response to a request from the UAW for records relating to illegal payments, Iacobelli stated: "We are providing nothing. Just what we reviewed for the binder…in about a month . . . maybe. . . . We're gonna have fun with these evil people."

As summarized by the government, Iacobelli on behalf of FCA, sought to "corrupt and warp" the bargaining process with the UAW (the common union with bargaining power between FCA and GM).  (**Exhibit 3**, Case No. 17-cr-20406, ECF No. 132, Sentencing Memorandum of the U.S., at 1.)  In particular, through the millions of dollars in payments and items of value paid to UAW and its officials, FCA and Iacobelli "sought to obtain benefits, concessions and advantages in the negotiation and administration of collective bargaining agreements."  *Id*.  Iacobelli "stood at the center of this dishonorable and nefarious relationship between FCA and the UAW."  *Id*. at 2.

Iacobelli professed to fully cooperate with the government in return for a more lenient sentence and broad immunity from future prosecution.  A Cooperation Agreement (first produced by Butzel Long on July 5, 2022) coupled with Iacobelli's Rule 11 Plea Agreement provides that Iacobelli will not be further prosecuted for any crimes associated with his and FCA's scheme to bribe the UAW—and any other crimes that Iacobelli admits to—as long as Iacobelli cooperates completely with the government and volunteers all possible evidence of crimes related to the scheme. (*See* **Exhibit 2**, Rule 11 Plea Agreement at 18–19 ("The government agrees to bring no additional criminal charges against defendant Alphons Iacobelli arising out of his

---

(**Exhibit 4,** Case No. 17-cr-20406 (E.D. Mich.), ECF No. 4, First Superseding Indictment, at 19 (internal quotation marks omitted)).

involvement in the offenses charged in the First Superseding Indictment, or for additional criminal conduct disclosed under the terms of the December 15, 2017 cooperation agreement . . . .").

Before this Court, Iacobelli also conceded (for the first time) that "shortly after termination" from FCA in June 2015, he engaged criminal counsel to represent him in connection with his "service" on the NTC board and his "conduct while employed by FCA." (ECF No. 26 (PageID 1283), Brief of Alphons Iacobelli Re: Common Interest Privilege.) In other words, in 2015, when he was soliciting GM for employment as a high-level executive who would owe GM fiduciary duties, Iacobelli had retained criminal counsel to address his central role in the long-running bribery scheme to buy labor advantages for FCA from the UAW (that by definition harmed rival GM). None of this was disclosed to GM by Iacobelli, FCA or others with knowledge of the investigation.

Despite receiving broad immunity from the government for his admitted criminal acts, Iacobelli is very broadly invoking the Fifth Amendment in the Michigan state court action (and will no doubt attempt to do so when he testifies in this matter pursuant to GM's subpoena). (*See* **Exhibit 5**, *GM v. Iacobelli, et al.*, Case No. 20-011998-CB (Wayne Cty. Cir. Ct.), 5/20/2022 Br. Of Iacobelli in Opp. To Pls.' Mot. To Compel Interrogatory Answers.) Iacobelli could and should have only invoked the Fifth if he misled the government in his cooperation, which was

7

required to be "complete" and through which he was to disclose all known potential crimes involving the FCA/UAW conspiracy. In the Michigan state court action GM challenged Iacobelli's overbroad invocation of the Fifth, and Judge Popke (ret.) signaled that Iacobelli has not yet demonstrated that such invocation is proper in light of the broad immunity from prosecution provided in his Plea Agreement.[3] Notably for purposes of this motion, Iacobelli has expressly ***not*** invoked the Fifth Amendment in connection with his production of documents. (**Exhibit 6**, 12/31/2021 Letter from M. Nedelman.)

On April 28, 2022, this Court temporarily declined to accept GM's request that Iacobelli's prior failings and obstructionist objections merited a third-party forensic review of Iacobelli's electronic devices. (**Exhibit 7**, 4/28/2022 Hr'g Tr. at 28:3-7 (The Court: "I'm really not inclined to require that the search be done by some third party and that Mr. Iacobelli turn over all of his electronic devices. I mean, I think certainly that could be warranted depending on . . . what else is produced or not produced."), 32:1-4 (The Court: "And so certainly if that becomes an issue where . . . there is still this issue of GM believing and being able to show that more is warranted, I would be happy to consider it at that time.").) The Court gave Iacobelli

---

[3] Judge Popke (ret.) has set a hearing for July 19, 2022, to hear *in camera* Iacobelli's basis for broadly invoking the Fifth Amendment despite have received broad immunity from prosecution under his Plea Agreement and Cooperation Agreement.

another chance to fully comply with the subpoena as overseen by counsel. As discussed below, it has become clear that Iacobelli has not taken seriously this Court's April 28 Order. There is a real risk that evidence spoliation has occurred and may occur further absent prompt action by this Court.

Prior to filing this motion, GM's counsel sent several emails and a detailed letter attempting to meet and confer and outlining the above concerns.[4] GM even invited specific responses regarding why certain documents have not been produced. Iacobelli has repeatedly refused to respond with any specifics other than to claim he does not believe there are any deficiencies. (*See, e.g.*, **Exhibit 8**, 6/21/2022 and 6/6/2022 Emails from M. Nedelman.) Yet, at the time Iacobelli's counsel claimed there were no known document production deficiencies in response to the April 28 Order, at least Iacobelli's counsel at Butzel Long possessed and knew about important responsive documents that Iacobelli had not produced.

## ARGUMENT

Civil discovery depends on the good faith of counsel and civil litigants to fully and fairly comply with all discovery obligations. Fed. R. Civ. P. 26(g) advisory committee's note (1983 Amendment) ("If primary responsibility for conducting discovery is to continue to rest with the litigants, they must be obliged to act

---

[4]   *See* **Exhibit 9**, 6/21/2022 Letter from J. Willian. As of this filing, Iacobelli's counsel has not responded to GM's letter.

responsibly and avoid abuse."); *Champion Foodservice, LLC v. Vista Food Exch., Inc.,* No. 1:13-CV-1195, 2016 WL 4468000, at *1 (N.D. Ohio Aug. 23, 2016) ("Our system of justice, aimed at resolving cases on the merits, hinges on the good-faith and honest participation of all parties in the discovery process as required by the Federal Rules.").

When the civil discovery process breaks down despite a court order, the court may hold a nonparty in contempt and order sanctions to address such shortcomings under the Federal Rules of Civil Procedure and the court's inherent powers.  Rule 45(g) provides that the court "may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it." Additionally, a "federal court has the inherent power to impose sanctions against a party or non-party who has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Am. Tr. v. Sabino,* 230 F.3d 1357, *1 (6th Cir. 2000).

"In situations where a party can show improper conduct on the part of the responding party, a forensic examination may be appropriate." *See Trek, Inc. v. ITR Am., LLC*, No. 2:16-cv-13767-SJM-RSW, 2017 WL 11533311, at *9 (E.D. Mich. Nov. 9, 2017), *report and recommendation adopted*, No. 2:16-CV-13767, 2017 WL 11533312 (E.D. Mich. Dec. 4, 2017). Particularly where, as here, a party's confidential information is at stake, courts have ordered that an independent ESI vendor conduct a review of electronic devices subject to discovery. *See Champion*

10

*Foodservice, LLC*, 2016 WL 4468000, at *4 (referring to order to conduct on-site discovery of party's ESI by a forensic expert); *Ameriwood Indus., Inc. v. Liberman*, No. 4:06CV524-DJS, 2006 WL 3825291, at *4 (E.D. Mo. Dec. 27, 2006), *as amended on clarification*, No. 4:06CV524-DJS, 2007 WL 685623 (E.D. Mo. Feb. 23, 2007) (explaining that "discrepancies or inconsistencies in the responding party's discovery responses may justify a party's request to allow an expert to create and examine a mirror image of a hard drive.").

Here, as discussed, there is clear evidence that Iacobelli has failed to fully comply with the Rule 45 subpoena and not engaged in good faith with respect to this Court's April 28 Order.

## I.   IACOBELLI'S MISSING DOCUMENTS OR INEFFECTIVE SEARCH

**No ESI review of Iacobelli's electronic devices and iCloud storage**: On June 21, 2022, Iacobelli's counsel admitted before Judge Popke (ret.) that (despite this Court's April 28 Order) he had not undertaken further review of Iacobelli's communication devices. (*See* **Exhibit 1** at 21:9-22:20.)   Indeed, Iacobelli has expressly conditioned any ESI review in the Michigan action on GM's payment for those efforts.  (*See id*. at 13:18-14:10.)

Such ESI review in response to document requests or a subpoena is commonplace and necessary—especially here, where it would have been (and was), improper to allow Iacobelli to personally conduct this review in the first instance.

11

Iacobelli's failure to conduct a formal ESI review is especially concerning after the Court admonished counsel for not participating in document production. (*See* **Exhibit 7** at 26:4-10 (explaining that the "case law provides that counsel has some level of obligation of reasonably assuring a reasonably complete search as opposed to just simply turning over whatever the client provides with no further oversight into the process that was used to collect them"), 27:11-14 (The Court: ". . . I think it is appropriate to get [Mr. Nedelman's] recognition that it takes more as counsel than just accepting whatever your client gives you, and you know you need to ask questions."); 31:15-20 (The Court: "I think the appropriate thing to do is to now, in light of the hearing, ensure that the searches are done, and Mr. Nedelman, that's your obligation as an attorney and counsel of record to ensure that a ***thorough search*** is done and reasonable search is done by -- I should say -- of your client's electronic equipment.") (emphasis added).) Yet, Iacobelli's counsel is claiming to Judge Popke (ret.) that in order for there to be a thorough search of Mr. Iacobelli's electronic devices, GM must pay for that search.

In addition to the lack of ESI review, several categories of documents remain missing.

**DeLorenzo documents (Request No. 16)**: Peter DeLorenzo submitted a detailed affidavit that describes two meetings (early August 2018) and related email exchanges with Iacobelli where Iacobelli described what he believed was the

12

"biggest corporate corruption case in US business history" and during which Iacobelli showed documents to DeLorenzo and indicated that he possessed additional documents. (ECF No. 17-4, Affidavit of Peter DeLorenzo at 2 (PageID.806), attached hereto as **Exhibit 10**.) In particular, Iacobelli stated that he had drafted an "outline" for a book about the FCA/UAW bribery scheme, shared documents described by DeLorenzo in detail (*e.g.*, "lengthy memos (several pages long and single-spaced) and contained information about payments and responsibility for payments"), and exchanged emails with DeLorenzo which included incriminating statements. At the April 28 hearing, the Court noted the "significant particularity" of DeLorenzo's description of these documents. (**Exhibit 7** at 14:16-24.) Incredibly, and despite the particularized descriptions, Iacobelli and his counsel have still failed to produce any of these documents (including the emails between Iacobelli and DeLorenzo).

Iacobelli counsel has vaguely suggested that the missing documents can be explained by the government's apparent seizure of Iacobelli documents from his home. (*Id*. at 13:8-15 (Mr. Nedelman: ". . . a great deal of perhaps what they are looking for and were hoping to find had been seized by the United States in the execution of a search warrant for Mr. Iacobelli's home and had not been returned to him . . . . Mr. Iacobelli, because he was the subject of a -- his house was the subject of a search warrant, doesn't have a lot.").) But as to the DeLorenzo documents at

13

least, and most likely others, such a suggestion appears inaccurate and misleading. As GM recently learned through Butzel Long's early July production, Iacobelli signed a proffer agreement in **2015** and a Cooperation Agreement in **December 2017**. While Iacobelli has not disclosed the date that the government visited his house and seized documents, it is highly unlikely that this would have occurred ***after*** the December 2017 Cooperation Agreement was signed. The DeLorenzo meetings and email exchanges occurred in **August 2018**, long after Iacobelli was fully cooperating with the federal government under a formalized agreement (that should have been produced to GM long ago).

*A fortiori*, the DeLorenzo documents and emails with DeLorenzo that existed in 2018 have ***either been destroyed or not produced*** in violation of the Rule 45 subpoena and the April 28 Order. GM has a right to know the locations of these documents and whether they are recoverable.

**Iacobelli personal emails**: Iacobelli opened and maintained dozens of personal email addresses, such as:

- alphonsiacobelli369@gmx.com
- alphonsiacobelli693@hotmail.com
- al.iacobelli@hotmail.com
- alphonsiacobelli4186@hotmail.com
- alphonsiacobelli5726@ecoutlook.com

14

Several of these addresses, according to GreyList Trace Ltd.,[5] were in direct and bilateral communication with certain foreign banks.  (*See* **Exhibit 11**, ECF No. 17-3, Second Am. Compl. ¶¶ 70-74 (PageID.730-731), No. 20-011998-CB (Cir. Ct. Wayne Cty.) (alleging that GreyList found banking connections between Alphons Iacobelli and several foreign financial institutions). One such Iacobelli email— al.iacobelli@wowway.com—was used by Iacobelli not only to email Peter DeLorenzo, but also was likely used to contact several foreign financial institutions. The Court noted on April 28 that the lack of emails in Iacobelli's production is "concerning."  (**Exhibit 7** at 31:7-8.)  Yet, Iacobelli has not produced a single email from his many personal email accounts, which again is consistent with the lack of ESI searching, spoliation, or the sheer refusal to produce responsive documents. None of these explanations are mutually exclusive.

**Domestic bank records (Request No. 7)**: The subpoena required Iacobelli to produce all domestic bank records from January 2009 to present.  The Court determined on April 28 that such records are "all relevant because they will speak to

---

[5]  GreyList Trace is a UK-based investigative service that uses proprietary technology to determine whether a specific email address has an existing relationship with a financial institution. *See* GreyList Trace Limited, https://www.greylisttrace.com/mission.htm (last visited July 11, 2022). GreyList Trace is used by a wide array of professionals and governments throughout the world. *Id*.

this overall alleged scheme. And it's—I want be clear, it's a very specific form of scheme, . . . ." (*Id*. at 30:1-4.)  Iacobelli's counsel agreed: "Your Honor, I do understand your view of the relevance. And I'll accept it for purposes of moving forward." (*Id.* at 22:8-14.)  The law requires Iacobelli to seek documents from the banks themselves, which are within his control.[6] *Id.* at 30:9-11 (explaining that "the only way to deal with [the bank records], really get to that, is through the source documents of Mr. Iacobelli".)  "[D]ocuments are deemed to be within the 'control' of a party if it has the legal right to obtain the documents on demand." *Liberty Mut. Ins. Co. v. Devere Constr. Co.*, No. 16-CV-10423, 2016 WL 4800796, at *4 (E.D. Mich. Sept. 14, 2016) (internal quotation marks and citations omitted); *see Snyder Comput. Sys., Inc. v. U.S. Dep't of Transp.*, No. 2:12-CV-1140, 2014 WL 12654909, at *2 (S.D. Ohio Nov. 6, 2014) ("Thus, to meet its discovery obligations, Wildfire is required to produce all documents it has in its physical custody and all documents it has the legal right to obtain, such as the banking records that are in the banks' physical possession.").

Instead, Iacobelli only produced records related to accounts at American

---

[6]  Under Fed. R. Civ. P. 45, Iacobelli is required to produce responsive, non-privileged documents within his "possession, custody, or control."  "The non-party witness is subject to the same scope of discovery under this rule as that person would be as a party to whom a request is addressed pursuant to Rule 34." Fed. R. Civ. P. 45 advisory committee's note (1991 Amendment).

Express, Chase, Bankers' Bank, and Comerica.  What's more, there are indications that Iacobelli held accounts at other financial institutions (domestic and foreign) but only Iacobelli knows which ones he used since January 2009. He thus must be ordered to not only disclose these institutions but also contact them in a transparent way for all book and records relating to his accounts at such banks.

**Foreign bank records (Request Nos. 4-5, 6, 8)**:   Iacobelli has taken contradictory positions on the existence of foreign accounts: GM recently learned of declarations from Iacobelli and his wife to the government relating to GM's foreign account allegations; yet, Iacobelli is asserting the Fifth Amendment in response to testifying about the existence of such accounts. (*See* **Exhibit 5** at 11-18.) Importantly, for purposes of this motion, Iacobelli  has not taken the Fifth with respect to producing documents. (*See* **Exhibit 6**, 12/31/2021 Letter from M. Nedelman.)   Thus, even if Iacobelli does not have foreign bank account records printed and at his house, he must seek and obtain such documents from the banks themselves.  *See* Fed. R. Civ. P. 45 advisory committee's note (1991 Amendment) ("the person subject to the subpoena is required to produce materials in that person's control whether or not the materials are located within the district or within the territory within which the subpoena can be served.").   The act of producing such bank records is not a testimonial act subject to the Fifth Amendment (had Iacobelli chosen to invoke it regarding the production of documents, and he did not).  *See*

17

*United States v. Davis*, 767 F.2d 1025, 1039–40 (2d Cir. 1985) (stating that ordering a defendant to direct the bank to produce incriminating documents did not violate the Fifth Amendment because the "bank records were prepared by the bank and contained no testimonial communications by [defendant]"). Iacobelli should be ordered to seek all financial records from the any financial institution, advisory or investment firm where he held an account in his name, or in the name of any trust or business entity in which he had an interest back to 2009. Iacobelli's efforts to obtain such documents should be transparent, reduced to writing, and produced in this case.

**Electronic communication devices (Request No. 21)**: The subpoena requires Iacobelli to produce documents sufficient to show the electronic communication devices in his custody or control. This is a critical request as it encompasses (among others) printouts from those devices showing their make, model, and the year they were put into service. This would allow GM to assess (among other things) the existence of other electronic communication devices that have been spoliated. For example, does Iacobelli still have the same communications devices that he was using while directing the FCA/UAW conspiracy—or has he since disposed of those devices and when? No such documents were produced, which, of course, could have easily have been done if a proper response was provided to GM's subpoena.

**Safe deposit box (Request No. 9)**: Iacobelli was required to produce evidence

of safe deposit box usage.  No such documents were provided.

**Government investigation material (Request Nos. 12-14)**: These requests seek all material regarding the government's investigation of FCA and the UAW, including communications with the government and documents exchanged between the two.  By law, Iacobelli was required to obtain documents responsive to GM's subpoena that were in the custody of his counsel, including Iacobelli's criminal counsel at Butzel Long.  *See In re Ruppert*, 309 F.2d 97, 98 (6th Cir. 1962) ("It is a well settled principle that if the client may be compelled to produce documents in his possession then the attorney may be compelled to produce the same documents when they are in his custody.  If this were not so, then the client could always evade his duty to produce by placing the documents with his attorney.") (citation omitted); *Seattle Times Co. v. LeatherCare, Inc.*, 232 F. Supp. 3d 959, 960 (E.D. Mich. 2017) (requiring nonparty to produce "all responsive non-privileged documents in the possession of" law firm); *Allison v. Mavic, Inc.*, No. 5:13-CV-180-DCR-REW, 2014 WL 12650099, at *4 (E.D. Ky. Oct. 30, 2014).  However, as GM recently learned (and after Iacobelli claimed to have complied with the April 28 Order), critical documents in the control of Iacobelli's counsel had not been provided. Iacobelli's counsel likewise assured that all responsive documents had been produced based on his knowledge. All communications with the government must be provided to

19

comply with the April 28 Order.[7]

**Business Advisory Group, passport, USB drives (Request Nos. 22, 24-25)**:

No such documents have been produced.  Iacobelli used USB drives to download

highly-sensitive GM documents while he worked for GM.  (**Exhibit 11**, ECF No.

17-3, Second Am. Compl. ¶ 158 (PageID.761).)  Either these drives were discarded

or they were not produced.  Iacobelli also possesses a passport, and likely at least

one expired passport, but they were not produced.  Additionally, no documents

regarding his personal business—the Business Advisory Group—have been

produced to date, even though this business is listed by Iacobelli on his LinkedIn

profile and was involved in the underlying UAW bribery scheme.  (**Exhibit 12**, A.

Iacobelli LinkedIn Profile.)

## II.   REQUESTED MEASURES TO REMEDY IACOBELLI'S GROSSLY DEFICIENT RESPONSES TO THE APRIL 28 ORDER AND RELATED SUBPOENA

Under these circumstances, which include multiple failures to comply with a

Rule 45 subpoena, the failure to comply with a specific court order that allowed for

---

[7] Butzel Long has produced letter correspondence indicating that documents were returned to the government on December 21, 2021—after the Rule 45 subpoena had been served and provided to Butzel as well.  When questioned about what material was returned to the government while it was subject to the Rule 45 subpoena, Butzel has claimed it has no recollection of what was returned and did not keep records including a log of the returned material. (*See* **Exhibit 15**, 7/7/2022 Letter from D. Miller.)

a second chance at Rule 45 compliance, and the likely prospect of evidence spoliation, further discovery remedies are necessary as an interim effort to address harm flowing from such indifferent conduct. Both the Federal Rules of Civil Procedure and the inherent powers of the court allow for a finding of contempt and sanctions against a nonparty who fails to comply with a subpoena or an order related to it. *See Diamond Consortium, Inc. v. Hammervold,* 386 F. Supp. 3d 904, 915 (M.D. Tenn. 2019).

However, for now, GM is seeking only an order to remedy Iacobelli's incomplete document production (but reserves the right to request additional sanctions if more discovery gamesmanship or spoliation come to light). As a first step, GM asks the Court to order the engagement of an ESI consultant, Consilio (GM will pay for this cost). Consilio will conduct a third party review of all Iacobelli's electronic communication devices that he currently possesses (not just devices that are in current use but all such devices); the devices shall be turned over to Consilio (with necessary passwords) within two business days of this order (which GM hopes will promptly issue in light of proven discovery risks); Consilio shall promptly and fully image each device and return them to Iacobelli within 48 hours; Consilio will issue a report to counsel for Iacobelli, GM, and this Court which details the date the device was put into service, the number of emails (per email address) that exist on the device, the identity of all texting apps on the device, the number of texts on the

21

device including under the various apps, the number of times the internet was accessed on the devices, the number of phone calls made and received on the device including a listing of all phone numbers, all contacts listed on the device, and the number of potential deletions on the device for emails, texts, internet searches, and phone calls and the existence of any software used for deletions.

Consilio will further process all emails, internet searches, and texts through a word search screen (attached as **Exhibit 14**) and all such data or documents that hit on such a word shall be produced to GM counsel and Iacobelli counsel simultaneously (except documents that hit on a privilege screen based on Iacobelli counsel names and certain limited words may be first reviewed by Iacobelli's counsel and logged and not produced if counsel has a good faith belief that such communication is subject to a privilege). Iacobelli will also have a right of claw back (within 30 days of document production by Consilio), subject to court challenge, for any document so produced that Iacobelli deems privileged, not relevant, or unlikely to lead to the discovery of relevant information. All produced documents will be treated as confidential for 30 days at a minimum subject to a further right of Iacobelli to so designate such material.

Iacobelli must further provide an affidavit to this Court and GM that addresses the following topics: the location and identity of all communication devices (including different makes and models of phones and computers since discarded)

22

since June 2015 and when such devices were in use, the location of the DeLorenzo documents including emails with DeLorenzo as described herein, the date the government seized documents from Iacobelli, confirmation that all documents and communications with the government in the possession of his counsel have been produced, the location of USB drives taken or used while employed by GM, the email providers and iClouds used for all of his various email accounts (specifically identified and used since June 2015), efforts to secure banking documents as required by law, the location and existence of his past and current passports, efforts to obtain all responsive financial institution documents called for by subpoena, the location of any safe deposit boxes and, to the extent not covered previously, any efforts to secure responsive documents from counsel.  Iacobelli shall further be required to specify all potentially responsive documents that existed since June 2015 that no longer exist and what happened to such document(s).

Counsel should be required to submit an affidavit as well attesting to his belief about the thoroughness of the gathering and production of responsive documents and whether, based on counsel's investigation and reasonable inquiry of Iacobelli and other potential repositories of responsive documents, that counsel has no reason to believe that anything said in the Iacobelli affidavit is inaccurate or misleading.

Requiring such affidavits in support of production is common when a violation of a court discovery order or a likelihood of spoliation has been

23

demonstrated. *See, e.g.*, *Venture Funding Ltd. v. United States*, No. CIV. A. 97-CV-75476-, 1999 WL 500993, at *4 (E.D. Mich. May 20, 1999) (holding that "plaintiff [must either] produce the ordered discovery or give suitable declarations that the ordered discovery does not exist"); *Gen. Ret. Sys. of the City of Detroit v. Alamerica Bank*, No. 14-CV-10032, 2016 WL 8243173, at *1 (E.D. Mich. Mar. 7, 2016) (noting court order for defendants to submit "sworn declarations or affidavits detailing why the documents are unavailable, how the documents became unavailable, and when the documents became unavailable"); *Weber Mfg. Techs., Inc. v. Plasan Carbon Composites, Inc.*, No. 14-12488, 2016 WL 8114507, at *6 (E.D. Mich. July 26, 2016) (noting court order for defendant to "produce a declaration detailing what attempts were made to locate responsive supplemental documents and indicating whether it believes that a sufficiently diligent search was made based on the tools and resources available for the same, and whether its discovery responses were supplemented to the best of its ability to do so.") (internal quotation marks omitted).

GM anticipates that Iacobelli will attempt to invoke the Fifth Amendment in refusing to provide such a court-ordered affidavit. If that occurs, this Court not only has the power to determine if the invocation is proper, but it can further draw an adverse inference from this refusal to provide such an affidavit of compliance.[8]  *Cf.*

---

[8]  Given that this affidavit would generally only contain information on the identity

*Barrette Outdoor Living, Inc. v. Mich. Resin Representatives*, No. 11-13335, 2013 WL 3983230, at \*2 (E.D. Mich. Aug. 1, 2013) ("While an adverse inference is a harsh sanction, it is warranted in light of [the party's] willful violation of this Court's prior order.").

Dated:  July 11, 2022

Respectfully submitted,
**HONIGMAN LLP**
By: */s/ Jeffrey K. Lamb*

Jeffrey K. Lamb (P76738)
Adam M. Wenner (P75309)
Keith D. Underkoffler (P84854)
2290 First National Building
660 Woodward Avenue
Detroit, MI 48226
Telephone: (313) 465-7000
jlamb@honigman.com
awenner@honigman.com
kunderkoffler@honigman.com

**KIRKLAND & ELLIS LLP**
Hariklia Karis, P.C.
Jeffrey L. Willian, P.C.
300 North LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000
hkaris@kirkland.com
jwillian@kirkland.com

*Attorneys for General Motors LLC and General Motors Company*

---

and location of responsive documents, the Fifth Amendment privilege should not be applicable. *See United States v. Patrick*, No. 95-CV-72816-DT, 1995 WL 687100, at \*4 (E.D. Mich. Sept. 12, 1995), *aff'd* 99 F.3d 1140 (6th Cir. 1996) (holding that a claimant must "show[] that substantial hazards of self-incrimination are present due to the information sought).

25

## CERTIFICATE OF SERVICE

I hereby certify that on July 11, 2022 I caused the foregoing document to be

electronically filed with the Clerk of the Court using the ECF filing system, which

will send notification of such filing to all counsel of record.

By: */s/ Jeffrey K. Lamb*
Jeffrey K. Lamb (P76738)
2290 First National Building
660 Woodward Avenue
Detroit, MI 48226
Telephone: (313) 465-7000
jlamb@honigman.com

44505441.3