# EXHIBIT 5

**STATE OF MICHIGAN**
**IN THE CIRCUIT COURT FOR THE COUNTY OF WAYNE**

**GENERAL MOTORS LLC,**
**GENERAL MOTORS COMPANY,**

**Plaintiffs,**

**v.**

**CASE No. 20-011998-CB**
**Hon. David J. Allen**

**ALPHONS IACOBELLI; FCA US LLC;**
**FIAT CHRYSLER AUTOMOBILES, N.V.,**
**JEROME DURDEN**
**Defendants.** /

HONIGMAN LLP
By: Jeffrey K. Lamb (P76738)
J. Michael Huget (P39150)
Adam M. Wenner (P75309)
Shirin S. Goyal (P82528)
Attorneys for Plaintiff
2290 First National Building
660 Woodward Avenue
Detroit, MI 48226
(313) 465-7000
jlamb@honigman.com
mhuget@honigman.com
awenner@honigman.com
sgoyal@honigman.com

[Pro Hac Vice applications to be filed]
Hariklia Karis PC
Jeffrey Willian PC
Casey McGushin
KIRKLAND & ELLIS LLP
300 North LaSalle
Chicago, IL 60654
(312) 862-2000
Hariklia.karis@kirkland.com
Jeffrey.willian@kirland.com
Casey.mcgushin@kirkland.com

Austin Norris
KIRKLAND & ELLIS LLP
2049 Century Park East
Los Angeles, CA 90067
(213) 680-8400
Austin.norris@kirkland.com

Miasie Allison
KIRKLAND & ELLIS LLP
333 South Hope St
Los Angeles, CA 90071
(213) 680-8400
Maisie.allison@kirkland.com
Attorneys for Plaintiffs/

NEDELMAN LEGAL GROUP PLLC
By: Michael A Nedelman (P35433)
Attorneys for Defendant Alphons Iacobelli
28580 Orchard Lake Road, Suite 140
Farmington Hills, MI 48334
(248) 855-8888
mnedelman@nglegal.com

MILLER, CANFIELD, PADDOCK & STONE, PLC
Thomas W. Cranmer (P25252)
Matthew P. Allen (P57914)
*Counsel for FCA US LLC, FCA NV*
840 West Long Lake Road Suite 150
Troy, Michigan 48098-6358
Tel: (248) 879-2000
cranmer@millercanfield.com
allen@millercanfield.com

SULLIVAN & CROMWELL LLP
Matthew J. Porpora (N.Y. 4402798)
Jacob E. Cohen (N.Y. 4787271)
125 Broad Street
New York, New York 10004-2498
Tel: (212) 558-4000
porporam@sullcrom.com
cohenja@sullcrom.com

Samantha F. Hynes
170 New York Avenue, N.W., Suite 700
Washington, D.C. 20006
Tel: (202) 956-7500
Counsel for FCA US LLC, FCA NV

THE GRACEY LAW FIRM, PLLC
Judith S. Gracey (P39766)
Attorney for Defendant Jerome Durden
2200 Beechmont Street
Keego Harbor, MI 48320
(248) 221-7726
judith@thegraceylawfirm.com

# BRIEF OF ALPHONS IACOBELLI IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL INTERROGATORY ANSWERS



Document received by the MI Wayne 3rd Circuit Court.

Defendant Alphons Iacobelli, through his attorneys, responds as follows in opposition to Plaintiffs' GM May 10, 2022 Motion to Compel Answers to GM's Amended Interrogatories:

**(a) Statement of Facts**

The Motion of Plaintiffs General Motors LLC and General Motors Company (collectively "Plaintiffs") to compel Defendant Alphons Iacobelli to answer Plaintiffs' Amended Interrogatories, and the objections and privileges raised in response thereto, cannot be viewed solely in the context of this case, but must instead be evaluated in the context of Plaintiffs' pursuit of four concurrent, interrelated lawsuits: this state court action; *General Motors LLC v Ashton*[1] (the "*Ashton* Action"); *General Motors, LLC v FCA US LLC, et al.*[2]; and *General Motors, LLC v Williams.*[3] (collectively the "Related Actions"[4]). The Related Actions each attempt to allege a broad conspiracy among Mr. Iacobelli, Mr. Ashton, Mr. Williams, FCA and others (including Susanne Iacobelli, the spouse of Defendant Alphons Iacobelli), in furtherance of an alleged "scheme to bribe former UAW officials to benefit FCA and harm GM." See, *e.g.*, **Exh. 3**, Second Amended Complaint at ¶¶2,3,4,7,8,15-32,56,59-61,66-67, 69(a), 75, 77, 80, 84, 97, 101, 102,103-105,12,124,147-148, 150, 152, 157-161,172-176, 178, 188-189,199-200, and 209-212 (Civil Conspiracy Claim); **Exh. 4**, Plaintiffs' Response to Susanne Iacobelli's Motion to Quash at pages 2, 3[5]; **Exh. 5**, *Ashton* Amended Complaint at ¶¶12,35,54,57-58,60,63,107 and 127;; and **Exh. 6**, Williams First Amended Complaint at

---

1 *General Motors LLC v Ashton*, Case No. 20-12659, United States District Court for the District of New Jersey, Camden Vicinage.

2 Case no. 2:19-cv-13429-PDB-DRG (E.D. Mich.), the "Michigan Federal Court Action." A copy of the proposed First Amended Complaint is attached as **Exhibit 1**.

3 Case no. CVBR 12103181 in Superior Court of the State of California, County of Riverside, the "Williams Action"

4 See *General Motors LLC v Ashton*, Case No. 20-12659, United States District Court for the District of New Jersey, Camden Vicinage, Discovery Confidentiality Order, Doc. No. 61, page ID 955 at fn. 1. A copy of that Order is attached as **Exhibit 2**.

5 **Exhibit 4**, Plaintiffs' January 26, 2022 Response in Opposition to Susanne Iacobelli's Motion to Quash Subpoena *duces tecum*, United States District Court (E.D. Mich.), case no. 2:22-mc-50034-GCS, Doc. No. 10, page ID 246, 248-249.



Document received by the MI Wayne 3rd Circuit Court.

¶¶3,4,7,25,26,37,67-73,76,78,88,92,98,101,111 and 120.[6] The Second Amended Complaint in this Michigan state Court action is based on substantially similar allegations to those made in the proposed Michigan Federal Court Action First Amended Complaint, with respect to which leave to amend was denied.

Plaintiffs have consistently alleged in the Related Actions that as an alleged co-conspirator, Mr. Iacobelli is liable for the alleged acts and conduct of Mr. Ashton, Mr. Williams, FCA and the other alleged co-conspirators; crucial to this case are the repeated allegations by Plaintiffs of wrongdoing and/or conspiratorial involvement of Mrs. Iacobelli. The interrogatories directed to Mr. Iacobelli therefore cannot be viewed in the "silo" of this case but must instead be viewed in the context of this and the balance of the Related Actions which, although separately brought, are unquestionably interrelated by reason of the overlapping allegations of conspiratorial conduct in furtherance of a single scheme in which Plaintiffs allege Mrs. Iacobelli is involved. The sworn answers sought from Mr. Iacobelli are thus either "for or against" Mrs. Iacobelli.

The alleged "scheme" was, according to Plaintiffs' allegations facilitated by the alleged establishment of and "payments through foreign accounts." See **Exh. 1**, Michigan Federal Court Action, proposed First Amended Complaint at ¶¶6,9,35,37,40, 43, 88, 101,176,198, 201(j), 221, 225(c); **Exh. 3**, this State Court Action, Second Amended Complaint at ¶¶67-69; **Exh. 4,** Plaintiffs' Response at pages 2,3; **Exh. 5**, *Ashton* Amended Complaint at ¶¶57-58); and **Exh. 6**, Williams First Amended Complaint at ¶¶85. Against these allegations of a broad conspiracy involving imaginary foreign accounts, Plaintiffs at Response p. 2 (Exh. 4, Doc. 10, page ID 248), in the course of alleging the need for Mrs. Iacobelli's testimony, described her alleged wrongful conduct and/or participation in the alleged "scheme" as follows:

> "GM has reason to believe that multiple foreign financial accounts exist and are held by former FCA employees and former UAW officials, including Mr. Ashton and Alphons

[6] **Exhibit 6**, Williams First Amended Complaint.



Document received by the MI Wayne 3rd Circuit Court.

> Iacobelli (Mrs. Iacobelli's husband), and that these foreign accounts were established in connection with FCA's underlying scheme to bribe former UAW officials to benefit FCA and harm GM."

Plaintiffs further assert that Plaintiffs have "reason to believe that Mrs. Iacobelli herself has foreign financial accounts in her name and directly facilitated other foreign accounts that are controlled by her or her husband," (**Exh. 4**, Plaintiffs' Response at p. 2).

Against these allegations, Plaintiffs propounded to Mr. Iacobelli numerous interrogatories which form the subject matter of this Motion. Mr. Iacobelli timely responded to the interrogatories, asserting where appropriate the spousal privilege that prevented any testimony by him that would be "for or against" his Wife, Susanne Iacobelli, and additionally (although as a practical matter secondarily, since his privileges against self-incrimination embodied in the Fifth and Fourteenth Amendments to the United States Constitution need not be asserted if Mr. Iacobelli's examination is precluded by the application of the spousal privilege). Dissatisfied with the consequences of their own broad allegations of criminal conduct by both Mr. and Mrs. Iacobelli, as well as of additional (in addition to the criminal activity for which Mr. Iacobelli was convicted), Plaintiffs filed the instant Motion. It should be denied.

**(b) <u>The Spousal Privilege Has Been Properly Invoked</u>**

Mr. Iacobelli cannot under Michigan law be compelled to answer the subject Interrogatories, because Alphons Iacobelli is the spouse of Susanne Iacobelli, and Susanne Iacobelli has not consented to his provision of sworn testimony that is either "for or against" her.

**A. <u>The Interrogatories Seek Sworn Testimony and Are Therefore an Examination.</u>**

Plaintiffs claim, without reference to any authority, that the spousal privilege cannot be invoked in response to interrogatories. The interrogatories at issue were propounded pursuant to MCR 2.309(A)(1). In turn, MCR 2.309(B)(1) requires that the Interrogatory answers be provided under oath. While Plaintiffs seek sworn testimony in written answers rather than through an oral



Document received by the MI Wayne 3rd Circuit Court.

examination, the issuance of interrogatories is unquestionably an "examination" and therefore subject to the limitations and proscriptions in MCL 600.2162(1). Plaintiffs' assertion that the protections afforded under MCL 600.2162, as well as the Fifth and Fourteenth Amendments to the United States Constitution, are unavailable because the information is sought via interrogatories is simply wrong.

The privileges at issue – whether the Fifth and Fourteenth Amendment privileges or the spousal privilege - are certainly not dependent upon the method that Plaintiffs have chosen to elicit a binding and admissible answer. In *Huntington Nat'l Bank v Ristich*, 292 Mich App 376 (2011), the Court discussed the appropriateness of raising a Fifth Amendment privilege in response to a Complaint. The Court held that the Fifth Amendment

> also allows a person "'not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings.'" *Id*., quoting *Phillips, 213 Mich App at 400*. A person may invoke the privilege despite the fact that criminal proceedings have not been instituted or even planned. *People v Guy, 121 Mich App 592, 609-610; 329 NW2d 435 (1982)*.
>
> Our Supreme Court has long recognized that "a defendant may not be required in his answer to state facts which would tend to criminate" him. *People ex rel Moll v Danziger, 238 Mich 39, 44; 213 NW 448 (1927)*.

*Id*. At 384. In *People ex rel Moll v Danziger*, 238 Mich 39, 44; 213 NW 448 (1927), the Court addressed the enforcement of a bill of discovery and the availability of privileges in response. The Court plainly and unequivocally held that a defendant had the same right to assert, in response to discovery requests, any Fifth Amendment privilege that would be available in response to an oral examination:

> Hence, there is the well-established doctrine that the constitutional inhibition is directed not merely to the giving of oral testimony, but embraces as well the furnishing of evidence by other means than by word of mouth, the divulging, in short, of any fact which the accused has a right to hold secret."

*Id*. at 42. The Court went on:

> The bills in these cases were filed solely to require defendants to disclose by answer what they could not be required to disclose as witnesses on the stand, and sought to accomplish by indirection what could not be accomplished directly.



Document received by the MI Wayne 3rd Circuit Court.

*Id.* at 44.

Plaintiffs' resort to attempt to analogize the subject interrogatories to the voluntary provision of an Affidavit, and their citation to *State Farm Mut Auto Ins Co v Elite Health Ctrs, Inc*, 399 F Supp 3d 708 (E.D. Mich. 2019), must be rejected. The use of an Affidavit voluntarily given is not an examination.

**B. The Spousal Privilege Bars Mr. Iacobelli's Sworn Responses to the Interrogatories**

Under MCL 600.2162(1):

> In a civil action . . . a husband shall not be examined as a witness for or against his wife without her consent or a wife for or against her husband without his consent, except as provided in subsection (3):

MCL 600.2162(1)(emphasis added). The statutory spousal privilege codified at MCL 600.2162(1) is clear and unambiguous, and prohibits in a civil action the examination as a witness of a wife for or against her husband without his consent.

There are no other exceptions to MCL 600.2162(1) other than those enumerated in MCL 600.2162(3), which are inapplicable to this case; *see also People v Fisher*, 442 Mich. 560, 567; 503 NW2d 50 (1993) (noting that MCL 600.2162 is controlled by the statutory language, and not by the common law); *People v. Hamacher*, 160 Mich. App. 759, 761-62; 408 NW2d 549 (1987) (noting that the only exceptions are "those exceptions enumerated in the statute"). MCL 600.2162(1) is the codification of the common law "spousal privilege" which is a separate and distinct privilege from the "communication privilege." *Hamacher*, *supra* at 761-62. The spousal privilege, as codified in MCL 600.2162 "precludes all testimony regardless of whether the events at issue occurred before or during the marriage." *People v DeWitt*, 173 Mich. App. 261, 266; 433 NW2d 325 (1989) (emphasis added).

When interpreting a statute, the Court must follow the established rules of statutory construction. As the Michigan Supreme Court has most recently reiterated:



Document received by the MI Wayne 3rd Circuit Court.

> … the foremost [rule] … is to discern and give effect to the intent of the Legislature. To do so, we begin by examining the most reliable evidence of that intent, the language of the statute itself. If the language of a statute is clear and unambiguous, the statute must be enforced as written and no further judicial construction is permitted. Effect should be given to every phrase, clause, and word in the statute and, whenever possible, no word should be treated as surplusage or rendered nugatory. Only when an ambiguity exists in the language of the statute is it proper for a court to go beyond the statutory text to ascertain legislative intent.

*Whitman v City of Burton*, 493 Mich. 303, 311-312; 831 NW 2d 223 (2013)(footnotes omitted).

Although in bringing this action Plaintiffs did not join Susanne Iacobelli as a defendant, there is no genuine dispute that the testimony sought from Alphons Iacobelli is, or must reasonably be construed to be intended to be, either for or against Susanne Iacobelli since:

(a) GM has asserted in this matter that Mrs. Iacobelli has "[i]information regarding FCA's payment of money or things of value to UAW or FCA officers or employees, including through foreign bank accounts…" (**Exh. 7**, GMs' February 28, 2022 Amended Initial Disclosures, at page 15);

(b) GM alleges that "FCA NV compensated Iacobelli extremely well for his role in the scheme, including providing him with control over millions of dollars held in financial accounts in Switzerland (UBS and Credit Suisse), Italy (Deutsche Bank), Liechtenstein (VP Bank Vaduz) and Singapore (DBS Band) both directly, through family [Susanne Iacobelli], and through a corporate entity he controls [Business Advisory Group]" (**Exh. 3**, GM Second Amended Complaint, at ¶69(a));

(c) GM alleges that "Mrs. Iacobelli herself has foreign financial accounts in her name and directly facilitated other foreign accounts that are controlled by her or her husband.")"(**Exh. 4**, GM's January 26, 2022 Response in Opposition to Susanne Iacobelli's Motion to Quash Subpoena *duces tecum*, *General Motors LLC v Ashton*, case no. 2:22-mc-50034 in the United States District Court for the Eastern District of Michigan, ECF No. 10, page ID 248)

(d) GM implies that Mrs. Iacobelli is a co-conspirator in the alleged scheme of which GM complains, and alleges in *General Motors LLC v Ashton*, bearing case no. 20-12659 (RBK-SAK) in the United States District Court for the District of New Jersey (the *Ashton* New Jersey Action), that "GM has reason to believe that such [foreign] accounts exist at one or more foreign financial institutions in **Mrs. Iacobelli's** name and that she has played a role in other accounts in her husband's name and the name of Business Advisory Group (Mr. Iacobelli's personal business)"(**Exh. 4,** GM's January 26, 2022 Response in Opposition to Susanne Iacobelli's Motion to Quash Subpoena *duces tecum*, *General Motors LLC v Ashton*, case no. 2:22-mc-50034 in the United States District Court for the Eastern District of Michigan, ECF No. 10, page ID 256);

(e) GM admits in the December 3, 2021 email from counsel for GM (**Exh. 8**) that "[s]pecifically, GM has alleged [in the Ashton Action] that FCA (acting through agents such as Mr. Iacobelli) directed improper payments to Mr. Ashton and others in a direct effort to harm GM, and that FCA employees (such as Mr. Iacobelli) also maintained such accounts. (See e.g. **Exh. 5**, First Am. Compl. at ¶¶ 12, 54-101.) The subpoenas to Ms. Iacobelli and BAG seek relevant information and documents they may possess about the



Document received by the MI Wayne 3rd Circuit Court.

overall scheme and these dealings by Mr. Iacobelli, including information concerning foreign accounts held in the name of **Ms. Iacobelli** or BAG for the benefit of Mr. Iacobelli;" and

(f) GM sought leave to amend its Complaint in *General Motors LLC, et al. v. FCA US LLC, et al*., 2:19-cv-13429-PDB-DRG (E.D. Mich.), Doc 84, Page ID 2989 (alleging "[u]pon information and belief, FCA and FCA NV secretly provided Iacobelli and a family member [Susanne Iacobelli] with millions of dollars through funds currently in accounts in Italy, Liechtenstein, Switzerland and Singapore not only for his central and long-running role in the scheme…") and at Page ID 3128, to allege at **Exh. A**, proposed First Amended Complaint ¶226(f) the alleged receipt by Mr. Iacobelli of "substantial amounts form FCA and FCA NV in the form of control over accounts held at financial institutions in Switzerland, Italy, Singapore, and Liechtenstein, in his own name, **the name of a family member** [Susanne Iacobelli], and the name of a business entity he controls [Business Advisory Group]"(emphasis supplied).

Based upon the above, Plaintiffs' assertion that "[b]ecause Mrs. Iacobelli does not have an interest in this proceeding or any of the related actions brought by GM, answering interrogatories in this action cannot be meaningfully "for or against" her," as an alleged basis for the inapplicability of the spousal privilege, must be rejected. Plaintiffs' wishes to the contrary notwithstanding, the statutory proscription on Mr. Iacobelli being examined as a witness for or against his Wife is not limited to and this Court cannot, as Plaintiffs request, re-write the statute to limit its application only where "the testifying witness's spouse is a party to the pending litigation." The statute contains no such qualification, and the policy underlying the unambiguous terms of the statute – the preservation of marital harmony – would be completely vitiated if the testimony of Mr. Iacobelli was permitted in this, one of many cases in which Plaintiffs have alleged wrongdoing by Mrs. Iacobelli. Even under their construction of the statute, Plaintiffs must admit that Mr. Iacobelli's testimony would be barred if Mrs. Iacobelli was a named party in this or any of the Related Actions; the testimony cannot be elicited in this Action simply because Mrs. Iacobelli is not named as a party, since she is in this case clearly identified as an alleged co-conspirator in the alleged wrongful conduct, and is either a named party and/or identified as a co-conspirator in the balance of the Related Actions.[7]

---

[7] While instructive (but admittedly not controlling), the fact that Mrs. Iacobelli is not a party to this or any of the other Related Actions is not material. Magistrate Judge Grand, in his partial ruling upon the Motion of Susanne Iacobelli to quash the subpoena duces tecum directed to her in the



Document received by the MI Wayne 3rd Circuit Court.

Realizing that the plain text of MCL 600.2162(1) prohibits Mr. Iacobelli from being examined in this civil action as a witness "for or against" Mrs. Iacobelli, Plaintiffs instead create a straw man argument, ignoring the Michigan statutory spousal privilege and arguing instead the unavailability of the federal adverse spousal testimonial privilege – a privilege that is inapplicable since it exists only under federal common law and is applicable only in federal criminal proceedings. *See, e.g., US v Premises Known as 281 Syosset Woodbury Road,* 71 F. 3d 1067, 1070 (2nd Cir. 1995); *Knepp v United Stone Veneer, LLC,* Civil Action no. 4:06-cv-1018, 2007 WL 2597936 (MD Pa Set 5, 2007). Indeed, there is a material difference between the federal adverse spousal testimonial privilege. While the federal adverse spousal testimonial privilege can be waived by the testifying spouse, the Michigan statutory spousal privilege cannot.

The spousal privilege applicable to this case is the spousal privilege afforded under state (Michigan) statutory, not federal common, law. Mrs. Iacobelli enjoys the benefit of, and this Court must respect and cannot effect a waiver of, the statutory spousal privilege applicable to civil actions and codified at MCL 600.2162(1). The federal, common law criminal adverse spousal testimonial privilege discussed in each of the three cases cited by Plaintiffs GM at Motion page 7, is simply inapplicable.

Even if the narrower federal adverse spousal testimony privilege were applicable to this case, it would serve prevent to prevent Mr. Iacobelli's provision of sworn answers to the subject interrogatories. In *In re Grand Jury Matter*, 673 F. 2d 688 (3d Cir. 1982), the Court permitted invocation of the narrower adverse spousal testimony privilege as a bar to a wife's testimony in a criminal case against a third party, holding:

> "the Government openly seeks one spouse's testimony concerning the activity of a third party, who is alleged to have engaged in a common criminal scheme with a

---

Ashton Action, concluded that "the spousal privilege" codified in M.C.L. 600.2162(1) applied to questions to be put to Ms. Iacobelli that would constitute testimony "for or against" her husband, notwithstanding that he is not a party to the underlying action." See **Exh. 9**.



Document received by the MI Wayne 3rd Circuit Court.

> husband and his wife, and the Government thereby hopes also to reach the nonwitness spouse, the testimony sought is sufficiently adverse to the interests of the absent spouse to permit invocation of the privilege against adverse spousal testimony." *Id*. at 692.

*See also In re Grand Jury Subpoena to C.D*., 22 F. Supp. 2d. 507, 508 (D. Md. 1998) (allowing the testifying-spouse's invocation of the spousal privilege, despite the government asserting that it was not seeking information against her husband but instead seeking information about her alleged dealings with other suspects under investigation. The Court concluded that invocation of the protection of the spousal privilege was appropriate since evidence that she may provide implicating other members of the criminal conspiracy would be imputed to her husband as a co-conspirator (*citing Pinkerton v. United States*, 328 U.S. 640, 647-48(1946)).

The rationale of the Courts in *In re Grand Jury Matter* and *In re Grand Jury Subpoena to C.D*, even though addressing the narrower federal adverse spousal testimony privilege, is equally applicable here. Certainly, if the government is not entitled to elicit adverse spousal testimony in a criminal case against a third party applying the narrower adverse spousal testimony privilege, Plaintiffs are not entitled to the testimony of Mr. Iacobelli in this civil action that similarly seeks to implicate Mrs. Iacobelli, and which is inextricably intertwined with the allegations in the Related Actions – each of which make broad allegations of illegal conduct by Mrs. Iacobelli. Plaintiffs have averred and therefore cannot reasonably deny that the purpose of the testimony sought to be elicited from Mr. Iacobelli is to establish the existence of alleged foreign accounts allegedly in Mrs. Iacobelli's name and/or her alleged participation in "directly" facilitating "other foreign accounts that are controlled by her or her husband" (**Exh. 4,** Plaintiffs' Response at p. 2), all in furtherance of Plaintiffs' efforts to prove the existence of an alleged unlawful bribery scheme in which they claim – in this action and each of the Related Actions – that Mr. Iacobelli is an integral part of such alleged conspiracy, aided by Mrs. Iacobelli. The interrelatedness of this Action and the balance of the Related Actions is well-evidenced by the Discovery Confidentiality Order entered in the *Ashton* Action, which



Document received by the MI Wayne 3rd Circuit Court.

expressly contemplates and permits use of Confidential Materials (as defined in the Discovery Confidentiality Order) obtained in the *Ashton* Action to be used in Plaintiffs' prosecution of the Related Actions, including this action against Mr. Iacobelli. Mr. Iacobelli's testimony concerning the alleged actions of Mr. Ashton and the alleged foreign accounts is clearly intended by Plaintiffs to establish the alleged conspiracy that Plaintiffs allege includes Mrs. Iacobelli, and would therefore necessarily be for or against Mrs. Iacobelli. The effect upon Mrs. Iacobelli of Mr. Iacobelli's sworn interrogatory answers regarding Mrs. Iacobelli's alleged conduct, conduct that might be imputed to Mr. Iacobelli as an alleged co-conspirator or Mrs. Iacobelli herself – whether ultimately <u>for or against</u> Mrs. Iacobelli - is therefore not in the least bit speculative and consideration of that effect not the least bit premature.

Against these allegations and averments of the broad conspiracy, Plaintiffs do not and in good faith could not, deny that the sworn interrogatory answers sought from Alphons Iacobelli will either be for or against his wife, Susanne Iacobelli, since Plaintiffs have alleged that the alleged foreign accounts – including those allegedly in her name and/or those she allegedly controlled and/or facilitated - were part of a "scheme to bribe former UAW officials to benefit FCA and harm GM." **Exh. 4**. Plaintiffs' Response (in the *Ashton* Acton) at p. 2. In each of this and the Related Actions, Plaintiffs have alleged that each of Mr. Iacobelli, Mr. Ashton, Mr. Williams, FCA and others conspired, in return for payments by FCA to unidentified foreign bank accounts, to breach alleged duties to one or both of the Plaintiffs; and that each of Messrs. Iacobelli, Ashton and Williams (together with FCA and others) are, as alleged co-conspirators, liable for the alleged acts and omissions of each other. See **Exh. 6**, *Williams'* First Amended Complaint at, *e.g.*, ¶¶7,88, 92,122. Plaintiffs themselves, in light of the broad brush with which they have painted the putative "conspiracy," have set forth the very basis upon which any reasonable reader would conclude that the answers to the discovery directed to Mr. Iacobelli would either be "for or against" his Wife.



Document received by the MI Wayne 3rd Circuit Court.

**C. The Fifth and Fourteenth Amendment Privileges Have Been Properly Invoked.**

Mr. Iacobelli has not, Plaintiffs' assertions to the contrary notwithstanding, made a "blanket" assertion of privilege. Mr. Iacobelli has, as required, replied to each individual interrogatory, asserting the applicable Fifth Amendment and/or Fourteenth Amendment privilege (in addition to the spousal privilege) – in a manner no different than he would be required to do in a deposition upon oral examination.

Disposition of the instant Motion is governed by the principles set forth in *Hoffman v. United States*, 341 U.S. 479, 71 S. Ct. 814, 95 L. Ed. 1118 (1951). In *Hoffman*, the Supreme Court held:

> The *Fifth Amendment* declares in part that "No person . . . shall be compelled in any criminal case to be a witness against himself." This guarantee against testimonial compulsion, like other provisions of the *Bill of Rights*, "was added to the original Constitution in the conviction that too high a price may be paid even for the unhampered enforcement of the criminal law and that, in its attainment, other social objects of a free society should not be sacrificed." *Feldman v. United States, 322 U.S. 487, 489 (1944)*.This provision of the Amendment must be accorded **liberal construction** in favor of the right it was intended to secure. *Counselman v. Hitchcock, 142 U.S. 547, 562 (1892)*; *Arndstein v. McCarthy, 254 U.S. 71, 72-73 (1920)*.
>
> The privilege afforded not only extends to answers that would in themselves support a conviction under a federal criminal statute but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant for a federal crime.

*Id*. at 485-486 (emphasis supplied). The scope of the privilege is broad:

> The *fifth amendment* privilege not only protects the individual against being involuntarily called as a witness against himself in a criminal prosecution but also privileges him not to answer questions put to him in any other proceeding, civil or criminal, formal or informal, **where the answers might incriminate him in future criminal proceedings**. *Lefkowitz v. Turley, 414 U.S. 70, 38 L. Ed. 2d 274, 94 S. Ct. 316 (1973). See also Lefkowitz v. Cunningham, 431 U.S. 801, 805, 53 L. Ed. 2d 1, 97 S. Ct. 2132 (1977)*; *Arndstein, supra.*

*In re Morganroth,* 718 F. 2d. 161, 164-165 (6th Cir. 1983) (emphasis supplied).

As the Sixth Circuit recently reaffirmed in *Convertino v United States DOJ*, 795 F. 3d 587(6th Cir. 2015), the privilege against self-incrimination is

> "zealously safeguarded as "an important constitutional liberty." *Hoffman v. United*



Document received by the MI Wayne 3rd Circuit Court.

> *States, 341 U.S. 479, 490, 71 S. Ct. 814, 95 L. Ed. 1118 (1951)*, that was "hard-earned by our forefathers," *Quinn v. United States, 349 U.S. 155, 161, 75 S. Ct. 668, 99 L. Ed. 964 (1955)*, the privilege protects "the right of a person to remain silent unless he chooses to speak in the unfettered exercise of his own will, and to suffer no penalty . . . for such silence," *Malloy v. Hogan, 378 U.S. 1,8, 84 S. Ct. 1489, 12 L. Ed. 2d 653 (1964)*."

*Id*. at 592.

A valid assertion of the fifth amendment privilege exists where a witness has reasonable cause to apprehend a real danger of incrimination. *Hoffman*, 341 U.S. 479 at 486. As the *Morganroth* Court explained:

> A witness risks a real danger of prosecution if an answer to a question, on its face, calls for the admission of a crime or requires that the witness supply evidence of a necessary element of a crime **or furnishes a link in the chain of evidence** needed to prosecute. In *Hoffman*, the Supreme Court held that a real danger of prosecution also exists where questions, which appear on their face to call only for innocent answers, are dangerous in light of other facts already developed. In such a situation a witness bears no further burden of establishing a reasonable cause to fear prosecution beyond asserting the privilege and identifying the nature of the criminal charge or supplying sufficient facts so that a particular criminal charge can reasonably be identified by the court.

*Morganroth*, 718 F. 2d at 167 (emphasis supplied).

An "explanation" by a witness of why the Fifth Amendment is implicated is not, as the Plaintiffs appear to assert, a prerequisite to invocation of the privilege or the Court's obligation to respect that invocation; nor should the Court resort to requesting or compelling the submission of supplementary materials, whether *in camera* or not, if the witness's invocation of his rights under the Fifth Amendment satisfies the *Hoffman* standards. *Convertino v United States DOJ*, 795 F. 3d 587, 595-596 (6th Cir. 2015).

As the *Convertino* Court made clear, prior to seeking additional information, the Court must first carefully consider all of the circumstances and determine if, based on those circumstances, it is *perfectly clear* the witness is clearly mistaken in holding a reasonable apprehension of a danger of incrimination, and that the answers cannot possibly have a tendency to incriminate. *Hoffman*, 341 U.S. at 488. Only if after careful consideration of the circumstances the Court concludes that it is *perfectly*



Document received by the MI Wayne 3rd Circuit Court.

*clear* that the witness is mistaken in holding a reasonable apprehension of a danger of incrimination, and that the answers cannot possibly have a tendency to incriminate, is it appropriate for the witness to then be afforded the opportunity to present non-testimonial evidence and if necessary personal statements to establish a foundation for the assertion of the privilege. *Convertino v United States DOJ*, 795 F. 3d 587, 595-96 (6th Cir. 2015). Sufficient evidence "is presented by a witness if a court can, by the use of reasonable inference or judicial imagination, conceive a sound basis for a reasonable fear of prosecution." *In re Morganroth,* 718 F. 2d. 161, 169 (6th Cir. 1983). In determining whether the witness really apprehends danger in answering a question, the judge cannot permit himself to be skeptical. *Emspak v United States*, 349 U.S. 190, 198 n. 18, 75 S. Ct. 687, 99 L. Ed. 997 (1955).

The circumstances of this case firmly establish a foundation for the assertion by Mr. Iacobelli of his Fifth and Fourteenth Amendment privileges. Mr. Iacobelli does not in these circumstances, as the Plaintiffs' apparent argument to the contrary seems to suggest, bear the burden of proving, in the usual sense, the risk of incrimination. As the Supreme Court held in *Hoffman v. United States*, 341 U.S. 479, 71 S. Ct. 814, 95 L. Ed. 1118 (1951)

> However, if the witness, upon interposing his claim, were required to prove the hazard in the sense in which a claim is usually required to be established in court, **he would be compelled to surrender the very protection which the privilege is designed to guarantee**. To sustain the privilege, it need only be evident from the implications of the question, in the setting in which it is asked, that a responsive answer to the question or an explanation of why it cannot be answered might be dangerous because injurious disclosure could result.

Id. at 486-487 (emphasis supplied). The Sixth Circuit similarly declined to impose such a burden, stating in *Morganroth* that "[w]e do not hold … that a witness has the burden of proof on this issue." *Morganroth*, 718 F. 2d 161 at 169. Any burden of establishing a foundation for the assertion of the privilege exists only where "there is nothing suggestive of incrimination about the setting…" *Id*. In this case, the foundation for assertion of the privilege is, as more fully described below, beyond reasonable dispute.

In addition, Mr. Iacobelli need not prove the probability of prosecution. As the *Convertino*



Document received by the MI Wayne 3rd Circuit Court.

Court held:

> The validity of an asserted *Fifth Amendment* privilege, however, turns not on the probability or likelihood of prosecution, but rather on the possibility of prosecution. *In re Folding Carton Antitrust Lit., 609 F. 2d 867, 872 (7th Cir. 1979)* (collecting cases).

795 F. 3d. at 594.

Finally, whatever sympathy Plaintiffs seeks to elicit from the Court regarding any alleged impediment that Mr. Iacobelli's invocation of his constitutional rights creates in relation to Plaintiffs' pursuit of their meritless claims, must be completely disregarded; the effect upon Plaintiffs of Mr. Iacobelli's refusal to answer inquiries into the alleged scheme is legally irrelevant. As the Supreme Court has repeatedly held:

> The immediate and potential evils of compulsory self-disclosure transcend any difficulties that the exercise of the privilege may impose on society in the detection and prosecution of crime.

*Hoffman*, 341 U.S. 479 at 490, *quoting United States v White*, 322 U.S. 694, 698 (1944).

If Plaintiffs have any doubt as to why Mr. Iacobelli has a reasonable fear of prosecution and in good faith has invoked his constitutional right against self-incrimination, Plaintiffs (and in turn this Court) need not look any further than the allegations in the Second Amended Complaint in this case, and the allegations in the balance of the Related Actions:

(a) Plaintiffs have alleged in this case that Mr. Iacobelli engaged in a "scheme to bribe former UAW officials to benefit FCA and harm GM." See, *e.g.*, **Exh. 3**, Second Amended Complaint at ¶¶2,3,4,7,8,15-32,56,59-61,66-67, 69(a), 75, 77, 80, 84, 97, 101, 102,103-105,12,124,147-148, 150, 152, 157-161,172-176, 178, 188-189,199-200, and 209-212 (Civil Conspiracy Claim);

(b) Plaintiffs have alleged in the related *Ashton* Federal Court Action Amended Complaint, criminal bribery involving Alphons Iacobelli, and a "scheme" that allegedly involves both Mr. Ashton and Mr. Iacobelli, among others. The *Ashton* Amended Complaint, fairly read, identifies Mr. Iacobelli as an alleged co-conspirator with Mr. Ashton in certain of the alleged wrongful conduct and alleges:
   - (i) at Amended Complaint ¶12, that Mr. Iacobelli is a "significant non-party;"
   - (ii) at Amended Complaint ¶ 35, that "[t]he indictment detailed a years-long pattern of illicit payments to and **bribery** of union officials by Iacobelli on behalf of FCA and FCA NV."
   - (iii)at Amended Complaint ¶54 that GM only recently "discovered Ashton's role in advancing FCA and FCA NV's bribery scheme to harm GM and force it to merge with FCA NV" [which scheme allegedly included Mr. Iacobelli];



Document received by the MI Wayne 3rd Circuit Court.

(iv) at Amended Complaint ¶¶ 57-58, the existence of foreign bank accounts "actively concealed" by the "co-conspirators," by which reference Plaintiffs clearly intend to include Mr. Iacobelli, since in the subpoenas *duces tecum* to Mr. Iacobelli and Mrs. Iacobelli Plaintiffs seek information related not just to the alleged foreign accounts mentioned in the *Ashton* Amended Complaint ¶¶57-58, but the alleged foreign bank accounts described in the Second Amended Complaint filed in the Michigan State Court Action against Mr. Iacobelli, and previously mentioned in the proposed Second Amended Complaint with respect to which leave to file was denied in the (dismissed) Michigan Federal Court Action against Mr. Iacobelli, among others;

(v) at Amended Complaint ¶60, that "… upon information, belief and clear inference, other FCA and UAW office is connected to the Ashton-FCA conspiracy as described herein [which as described, included Mr. Iacobelli] received FCA/FCA NV bribes through foreign accounts;"

(vi) at Amended Complaint ¶63, that "[t]he central purpose of the bribery scheme Marchionne, FCA, and FCANV enacted was to harm GM in an effort to induce it to merge with FCA to achieve synergies and a higher return on capital" (which "bribery scheme" Plaintiffs allege in the Michigan Actions included Alphons Iacobelli);

(vii) at Amended Complaint ¶107, that "…Ashton and the other conspirators [which as described, included Mr. Iacobelli] also adopted extraordinary measures to conceal FCA's bribery scheme. As described herein and as admitted in the criminal plea agreements, the co-conspirators took numerous active steps to evade suspicion and prevent inquiry into their illegal scheme, including through misstatements, false testimony, tax fraud, and other contrivances designed to suppress evidence of wrongdoing," including allegedly holding "millions of dollars in illicit funds in foreign bank accounts in countries suchas Switzerland, Luxembourg, Liechtenstein, Panama, the Cayman Islands, and others" (at subparagraph (a)) and describing, at subparagraphs (b) through (e) and (g), the alleged misconduct of Mr. Iacobelli as an alleged co-conspirator; and

(viii) at Amended Complaint ¶127, reiterating the allegation of an alleged "criminal scheme to corrupt the bargaining process to benefit FCA and harm GM" (which alleged scheme Plaintiffs allege in the Michigan Actions included the active participation of Alphons Iacobelli).

(ix) In addition, counsel for Plaintiffs has in writing confirmed - in response to the initial objections made by Susanne Iacobelli, Business Advisory Group and Alphons Iacobelli to the subpoenas *duces tecum* served upon them in the *Ashton* Action - that:

"Specifically, GM has alleged [in the Ashton Action] that FCA (acting through agents such as Mr. Iacobelli) directed improper payments to Mr. Ashton and others in a direct effort to harm GM, and that FCA employees (such as Mr. Iacobelli) also maintained such accounts. (See e.g. First Am. Compl. at ¶¶ 12, 54-101.) The subpoenas to Ms. Iacobelli and BAG seek relevant information and documents they may possess about the overall scheme and these dealings by Mr. Iacobelli, including information concerning foreign accounts held in the name of Ms. Iacobelli or BAG for the benefit of Mr. Iacobelli."

***



Document received by the MI Wayne 3rd Circuit Court.

> "Given the overlap in factual allegations underlying GM's state law claims against Mr. Ashton and the federal and state law claims asserted against FCA and Mr. Iacobelli, it should come as no surprise that the information GM seeks in discovery in the New Jersey Action covers some of the same issues that would be the subject of discovery in the Michigan Actions."

See **Exhibit 8.**. By letter dated December 5, 2021, counsel for Plaintiffs reiterated that "[a]lthough GM's claims against Joe Ashton are based in state law, the factual underpinnings for those claims include the FCA-UAW bribery scheme" (citing to Ashton First Amended Complaint ¶¶ 58, 54-61, 114 and 121, which are alleged to include Mr. Iacobelli).

(c) Plaintiffs have alleged in the related *Williams* criminal bribery "scheme" that allegedly involves both Mr. Williams and Mr. Iacobelli, among others. Williams First Amended Complaint at ¶¶3,4,7,25,26,37,67-73,76,78,88,92,98,101,111 and 120.

(d) Plaintiffs have alleged in the (dismissed, but an appeal by Plaintiffs is pending) RICO claim in the United States District Court for the Eastern District of Michigan that Mr. Iacobelli was engaged in **money laundering** in violation of 18 U.S.C. §1956 (**Exh. 1,** proposed First Amended Complaint, at ¶ 226(f) and that the defendants, including Mr. Iacobelli, were liable under the RICO statute for engaging in "racketeering activity," as well as conspiring with persons who were in furtherance of the alleged scheme committing **wire fraud** in violation of 18 U.S.C. §1341 and/or **mail fraud** in violation of 18 U.S.C. §1343.

Under these circumstances, the *Hoffman* standard is more than satisfied. Mr. Iacobelli bears no further burden of establishing a reasonable cause to fear prosecution, and Mr. Iacobelli's assertion of his Fifth Amendment privilege must be sustained without further inquiry. Mr. Iacobelli cannot under the circumstances be constitutionally required to further support his invocation of his Fifth and Fourteenth Amendment privileges or be required to attest to how the testimony he constitutionally refuses to provide might be used against him. Mr. Iacobelli has a constitutional right to refrain from providing any testimony that may provide any "link in the chain" leading to prosecution, and that constitutional protection cannot be eroded by requiring Mr. Iacobelli, particularly in light of the allegations already made by the Plaintiffs, to provide any testimony inconsistent with the exercise of that constitutional right.

Although Mr. Iacobelli does not believe that any additional showing is necessary to sustain his invocation of his Fifth Amendment privilege if, however, after a careful review of the



Document received by the MI Wayne 3rd Circuit Court.

circumstances and after use of reasonable inference or judicial imagination[8], the Court concludes that in light of the circumstances and the facts already developed, a particular criminal charge cannot reasonably be identified by the Court and that under the *Hoffman* standard Mr. Iacobelli has not established reasonable cause to fear prosecution and invoke the privilege, Mr. Iacobelli requests the opportunity to provide to the Court, *in camera* and in such manner as the Court deems appropriate, such additional and/or supplemental information, including an *in camera* explanation from counsel as to why Mr. Iacobelli invoked his Fifth and Fourteenth Amendment privileges in response to any particular question(s), [9] and why Mr. Iacobelli's invocation of his Fifth and Fourteenth Amendment privileges was not only appropriate and warranted, but satisfies the *Hoffman* test. As the *Convertino* Court held:

> "Of course, where no basis for invoking *Fifth Amendment* privilege can be postulated in light of the setting and context of the case, a witness should be given the opportunity to support a claim of privilege through appropriately protected submissions or proceedings.

*Convertino,* 795 F. 3d at 595*, citing United States v. Grable*, 98 F.3d 251, 257 (6th Cir. 1996). Certainly, Mr. Iacobelli need not and cannot be required to provide an affidavit[10] or publicly disclose facts that may not be publicly known and which may provide a "link in the chain" of evidence needed to prosecute Mr. Iacobelli for the alleged violation of any laws - whether already identified or may in

---

[8] This Court must not abuse its authority by needlessly requesting this information, however, but must sustain the privilege where they can "by the use of reasonable inference or judicial imagination, conceive a sound basis" for the claim. *Convertino v United States DOJ*, 795 F. 3d 587, 595-96 (6th Cir. 2015), *citing Morganroth,* 718 F.2d at 169.

[9] Counsel for Mr. Iacobelli would also be prepared to address the issue of "subject matter waiver," which buttresses Mr. Iacobelli's assertion of his Fifth Amendment privilege in response to questions that may on their face or viewed in isolation appear "harmless," but which questions are anything but harmless when a later claim of subject matter waiver is made in this or any subsequent proceeding.

[10] It is unclear if provision of an affidavit would itself constitute a waiver of the privilege. The *Convertino* Court declined to reach the issue since the issue had been abandoned by Convertino, having failed to earlier raise it. *Convertino*, 795 F. 3d 587 at 596.



Document received by the MI Wayne 3rd Circuit Court.

the future be identified by law enforcement - but which in any event pose a risk to Mr. Iacobelli of prosecution.

Thus, any required "nexus" between the questions asked and the invocation by Mr. Iacobelli of his Fifth and Fourteenth Amendment privileges against self-incrimination are evidenced by even a cursory review of the various Complaints and the interrogatories themselves. Each of the interrogatories is directed at factual allegations by Plaintiff in support of their myriad of claims that Mr. Iacobelli engaged in - to quote Plaintiffs from just this Motion itself – a "sprawling bribery scheme to corrupt labor relations and harm GM." Plaintiffs' Motion at p. 2. Indeed, the scope of the alleged wrongdoing alleged by Plaintiffs in this and the balance of the Related Actions far exceeds the scope of the criminal charges for which Mr. Iacobelli was convicted. Any reasonable person would, in light of these allegations and assertions, have a reasonable fear of prosecution and, absent the malpractice of his counsel, assert his Fifth and Fourteenth Amendment right against self-incrimination. In light of Plaintiffs' allegations, and Plaintiffs' implicit representation that the allegations are well-grounded in fact and law, Mr. Iacobelli necessarily deemed it appropriate to assert his right to refrain from any responses that might tend to incriminate him.[11]

**D. <u>Mr. Iacobelli's Plea Does Not Bar Assertion of the Privilege Against Self-Incrimination</u>**

While Mr. Iacobelli pled guilty to a violation of the Labor Management Relations Act by joining a conspiracy to pay and deliver payments and things of value to officers and employees of the UAW (and subscribing to a false personal tax return), the scope of the plea was narrow and did not encompass the criminal conduct alleged by Plaintiffs in this action and the Related Actions. No mention is made in the plea agreement, or even in the underlying charges, of "bribery," which is an independent offense that requires a "quid pro quo." No mention is made in the plea agreement, or in

[11] Mr. Iacobelli awaits Plaintiffs' argument that there is no "true" risk of prosecution and Mr. Iacobelli should, for whatever reason is proffered, simply "ignore" Plaintiffs' allegations of bribery, tax fraud, wire fraud, mail fraud and money laundering.



Document received by the MI Wayne 3rd Circuit Court.

the underlying charges, of any conduct intended "to harm GM." No mention is made in the plea agreement, or even in the underlying charges, of any "foreign accounts," or tax fraud in connection with those alleged "foreign accounts," or mail fraud, wire fraud or money laundering either independently of and/or in connection with the alleged foreign accounts. Plaintiffs' allegations, however, go well-beyond the narrow criminal conduct for which Mr. Iacobelli was indicted and to which he pled guilty.[12]

Mr. Iacobelli is obviously bound to the admissions made in his plea agreement. The binding effect of those admissions does not, however, act as a bar to Mr. Iacobelli's invocation of his Fifth and Fourteenth Amendment privileges against self-incrimination in response to questions that go beyond the express terms of the plea agreement, and Plaintiffs provide no authority to the contrary. Plaintiffs' reliance upon *Continental Baking Co. v Sacchetta*, 1992 U.S. Dist. LEXIS 17946 (N.D. Ill.), an unreported 1992 decision of the United States District Court for the Northern District of Illinois, as authority for the proposition that Mr. Iacobelli's plea agreement permits (or requires) Mr. Iacobelli's sworn answers to interrogatories directed at alleged misconduct that is not even alluded to in the plea agreement, is misplaced. In this regard, the *Continental Baking* Court's statement that "an individual is no longer entitled to claim the Fifth Amendment privilege with respect to matters that are the subject of a plea agreement" is itself devoid of any citation to authority or support for that proposition, and has not been cited as controlling authority in the thirty years since it was errantly espoused.

**3. Conclusion.**

Mr. Iacobelli's invocation of his Fifth and Fourteenth Amendment privilege was proper under *Hoffman* and its progeny. The context of this discovery demonstrates a precise and perhaps even acute

[12] Indeed, the United States noted that "the grand jury did not charge Iacobelli with fraud or theft or embezzlement." See October 1, 2018 Response [of the United States] to the UAW-Chrysler Skill Development and Training Program's Motion for Recognition of Crime Victim Status and for Restitution, filed in case 2:18-mc-51223-PDB, ECF No. 11, Page ID 126.



Document received by the MI Wayne 3rd Circuit Court.

risk of prosecution. Under these circumstances, either reasonable inference or at a minimum very little judicial imagination is required to conclude that Mr. Iacobelli has reasonable cause to fear that answering the questions posed would pose a risk of incrimination. Mr. Iacobelli's invocation of his Fifth and Fourteenth Amendment privileges must be affirmed.

**Wherefore,** for the reasons set forth above, Alphons Iacobelli prays that this Court enter its Order denying Plaintiffs' Motion to Compel Answers to Interrogatories; and awarding in favor of Mr. Iacobelli and against Plaintiffs such other relief as may be just and equitable under the circumstances.

Respectfully submitted,
NEDELMAN LEGAL GROUP PLLC
By: /s/ Michael A. Nedelman
Michael A Nedelman (P35433)
Counsel for Defendant Alphons Iacobelli
28580 Orchard Lake Road, Suite 140
Farmington Hills, MI 48334
(248) 855-8888
mnedelman@nglegal.com

Dated: May 20, 2022



Document received by the MI Wayne 3rd Circuit Court.

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that I caused a true and correct copy of Alphons Iacobelli's Opposition to Motion to Compel Answers to Interrogatories to be furnished via the Court's E-filing system to all counsel of record on May 20, 2022

By /s/ Michelle K Watler
Michelle K. Watler

Document received by the MI Wayne 3rd Circuit Court.