# EXHIBIT 9

KIRKLAND & ELLIS LLP
AND AFFILIATED PARTNERSHIPS

Jeffrey L. Willian, P.C.
To Call Writer Directly:
+1 312 862 2257
jeffrey.willian@kirkland.com

300 North LaSalle
Chicago, IL 60654
United States

+1 312 862 2000

www.kirkland.com

Facsimile:
+1 312 862 2200

June 21, 2022

**Via Email**

Michael A. Nedelman, Esq.
Nedelman Legal Group, PLLC
28580 Orchard Lake Road, Suite 140
Farmington Hills, MI 48334

Re: *General Motors LLC, et al. v. Joseph Ashton*
Case No. 1:20-cv-12659-RBK-KMW

Dear Mr. Nedelman:

As indicated in a prior email, this letter serves as an attempt to meet-and-confer with respect to a discovery sanctions motion that GM feels compelled to bring against Mr. Iacobelli absent prompt and full compliance with the subpoena served upon him on November 10, 2021, in the above-referenced *Ashton* case. Based on our review of the produced documents and statements that you recently made during discovery in the Wayne County litigation, it is apparent that Mr. Iacobelli has not complied with Judge Grand's April 28, 2022 order. That order struck all objections as to each and every document request and required Mr. Iacobelli to produce documents in response to each document request on or before May 28, 2022. Judge Grand further required counsel to take steps to ensure a full and compliant production of documents by Mr. Iacobelli. While we previously notified you of our belief that Mr. Iacobelli has not complied with Judge Grand's order, you did not agree with us.

The deficiencies in Mr. Iacobelli's document production are as follows:[1]

1. Request Nos. 4, 5, 6, and 8 seek foreign bank account records and communications over which Mr. Iacobelli is now asserting a Fifth Amendment privilege against self-incrimination. (*See, e.g.*, Supplemental Brief of Alphons Iacobelli in Opposition to Plaintiffs' Motion to Compel Interrogatory Answers, Case No. 20-011998-CB (Wayne Cty.).) However, the Fifth Amendment does not relieve Mr. Iacobelli of his duty to collect and produce documents, including but not limited to his foreign bank account records. *See State Farm Mut. Auto. Ins. Co. v. CPT Med.*

[1] The subpoena date range calls for documents dated between January 2009 and the present.

*Servs., P.C.*, 375 F. Supp. 2d 141, 156 (E.D.N.Y. 2005) (ordering production of financial records relevant to establishing whether defendants profited from their unlawful scheme). *See also United States v. Davis*, 767 F.2d 1025, 1039–40 (2d Cir. 1985) ("In the instant case, the District Court ordered [Defendant] to direct the Bank—a third party—to produce the incriminating documents. Since the only communication which [Defendant] himself was compelled to make was the direction to the bank, that direction is the only possible source of a Fifth Amendment violation," which was excluded from evidence.).

Mr. Iacobelli's assertion of the Fifth Amendment indicates that he has responsive financial records in his custody or control—either directly or through the bank(s)—and the Fifth Amendment provides no basis for him to refuse to produce documents here. *See State Farm Mut. Auto. Ins. Co. v. Pointe Physical Therapy, LLC*, No. 14-11700, 2015 WL 12806499, at *6 (E.D. Mich. Sept. 11, 2015) (noting that any Fifth Amendment concerns about document production may be addressed through the "relatively standard limitation . . . that the requesting party cannot use information obtained in discovery outside the scope of the present lawsuit"). Mr. Iacobelli must therefore produce the foreign account records currently in his possession and, to the extent any are not in his possession, he must seek and produce whatever additional records exist from the financial institutions themselves.

2. Based on a review of relevant records, it is apparent that Mr. Iacobelli has not produced all documents in response to Request No. 7, which seeks records sufficient to identify all domestic financial accounts. While some financial records have been produced to date, we understand Mr. Iacobelli has used other financial institutions during the relevant time period, which begins in 2009.

3. Mr. Iacobelli has failed to produce documents in response to Request No. 9, which seeks documents reflecting Mr. Iacobelli's control over any safe deposit box.

4. Request Nos. 12-14 seek all documents in Mr. Iacobelli's possession regarding the government investigation into, among others, FCA and the UAW. Since Mr. Iacobelli was knowingly involved in a conspiracy with those parties to provide items of value to the UAW, any documents that he possesses (either directly or that are in the possession of his counsel) that relate to the government investigation (*e.g.,* documents Mr. Iacobelli provided to the government or documents that the government provided to Mr. Iacobelli, including FBI 302 reports) must be produced. No such documents were produced, and it is inconceivable that they do not exist. We will seek an affidavit (and/or written representation) from counsel on Mr. Iacobelli's compliance with these requests if no further documents are produced.

5. Request No. 16 seeks documents and communications between Mr. Iacobelli and Mr. DeLorenzo. We know email communications exist (given that Iacobelli emails are attached

to the DeLorenzo affidavit) and, yet, they have not been produced. The fact that Mr. DeLorenzo produced some of his emails with Mr. Iacobelli does not excuse Mr. Iacobelli from producing the requested documents. GM has a right to know if Mr. Iacobelli is capable of producing this highly relevant evidence or whether that evidence has been spoliated (or Mr. Iacobelli is simply refusing to produce it despite the Court's order).

6. Request No. 17 seeks the "outline" that Mr. Iacobelli created as referenced in the DeLorenzo affidavit. This outline (that Mr. Iacobelli represented existed in 2018) supposedly sets forth the basis for the largest corporate fraud in the history of the United States, yet it has not been produced. Again, please let us know whether this evidence no longer exists, was taken and not returned by the government in its investigation, or whether Mr. Iacobelli is simply refusing to produce it.

7. Request No. 21 seeks documents sufficient to show all electronic communication devices that Mr. Iacobelli used since he left FCA in 2015. No such documents have been produced though they surely exist as Mr. Iacobelli has used, at minimum, a computer and cell phone since that time. It appears that you, as counsel for Mr. Iacobelli, have not made any effort to identify these electronic devices.

8. Request No. 22 seeks documents sufficient to show the business purpose of the Business Advisory Group and other details. No such documents have been produced.

9. Request No. 24 seeks a copy of Mr. Iacobelli's passport(s), both expired and non-expired. These have not been produced.

10. Request No. 25 seeks all USB drives that Mr. Iacobelli used while at GM, some of which he surely had in his possession when he left GM upon indictment in 2017. No USB drives have been provided.

11. Finally, Mr. Iacobelli has produced no personal emails despite having several personal email addresses that he surely used post-2017 employment with GM.

Making these deficiencies even more acute is the fact that in recent correspondence with GM's counsel regarding the terms of an ESI protocol in the Wayne County litigation—including recent statements made by you before Judge Popke—you raised the prospect of a fee-shifting provision under which GM would be required to pay for Mr. Iacobelli's ESI search and production of his "electronic devices." (*See e.g.*, June 9, 2022 email from M. Nedelman to A. Wenner.) The clear inference from these statements is that in response to Judge Grand's order, which required counsel to ensure a meaningful search and production of responsive documents, counsel did not undertake any ESI searching of Mr. Iacobelli's communication devices. This not only begs the

question of what was done to comply with Judge Grand's order, but is also contrary to accepted discovery practices. *See e.g., Waskul v. Washtenaw Cnty. Cmty. Mental Health*, No. CV 16-10936, 2021 WL 5049154, at *5 (E.D. Mich. Oct. 31, 2021) (compelling ESI production and noting that "[a]lthough producing ESI can be expensive, parties are expected to bear the expense of producing documents from their active email files"). This failure also likely explains the lack of any production by Mr. Iacobelli of documents from his electronic devices, including personal emails.

As sanctions (or further order from the Court), GM intends to seek (at least initially) that (i) all of Mr. Iacobelli's electronic devices be turned over to a third-party forensic vendor; (ii) all documents that hit on certain search terms be turned over to GM without counsel review (subject to a privilege screen and claw-back right); and (iii) that a report be issued regarding relevant issues including deletions and usage of the device. GM will also seek an order that Mr. Iacobelli provide immediate access to his personal email accounts on the cloud or at any relevant server for forensic vendor review and production. Finally, GM will also ask the Court to compel Mr. Iacobelli to immediately take steps to comply with all of the above requests, including seeking foreign account documents from relevant institutions and, if he cannot, requiring that he submit a sworn affidavit as to why he cannot comply with each individual request.

You have made it clear on several occasions that you believe you have fully complied with Judge Grand's order. Accordingly, we will plan to file the necessary motion in short order given deadlines in the *Ashton* action and the length time of compliance by Mr. Iacobelli with his subpoena. If there is any category of documents for which you now believe Mr. Iacobelli will further comply, please alert us to this fact immediately. We will still need to depose Mr. Iacobelli in the *Ashton* action once we have clarity that he has fully complied with the Rule 45 subpoena.

Sincerely,

*/s/ Jeffrey L. Willian*

Jeffrey L. Willian, P.C.

JLW:sw

cc: Hariklia Karis, Esq.
Stacey G. Pagonis, Esq.
Jeffrey Lamb, Esq.
Adam Wenner, Esq.