UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| GENERAL MOTORS LLC,<br>GENERAL MOTORS COMPANY,<br><br>Plaintiffs,<br><br>against<br><br>JOSEPH ASHTON,<br><br>Defendant. | Case No. 2:22-mc-50034-GCS-DRG<br><br>HONORABLE GEORGE CARAM STEEH<br><br>MAGISTRATE JUDGE DAVID R. GRAND<br><br>Related to General Motors LLC v. Ashton, Case No. 2:22-mc-50034 (E.D. Mich.)<br><br>Arising from *General Motors LLC, et al. v. Ashton*, Case No. 1:20-cv-12659 (D.N.J.) |

**REPLY IN SUPPORT OF GENERAL MOTOR'S
MOTION TO ENFORCE THE COURT'S APRIL 28, 2022 ORDER**

## INTRODUCTION

Iacobelli cannot deny that he violated his discovery obligations and flouted the Court's April 28, 2022 Order. Iacobelli's excuses for these serial failings are not even colorable. Iacobelli claims "no harm, no foul" because his counsel at Butzel Long later produced some documents responsive to a *different* subpoena, argues that he misunderstood GM's clear requests, vaguely suggests a change in his internet provider explains missing emails, and avers that GM misunderstood his counsel's words to Judge Popke (ret.) when he stated Iacobelli would not conduct an ESI search unless GM paid for it. None of these arguments withstand even basic scrutiny and all of them lack evidentiary support. Indeed, Iacobelli's threat to take the Fifth if forced to provide a discovery affidavit, and concession that it is necessary to engage a "third party ESI vendor to confirm the results of [his] earlier [search] efforts," only further supports the need for an independent forensic review of his devices and GM's other requested relief.[1]

---

[1] *See Hoxie v. Drug Enf't Admin.*, 419 F.3d 477, 483 (6th Cir. 2005) ("The Supreme Court has held that a negative inference can be drawn from a failure to testify in civil proceedings, and that drawing such an inference violates neither the Fifth Amendment nor Due Process."); *Davis v. Mut. Life Ins. Co. of New York*, 6 F.3d 367, 384-385 (6th Cir. 1993) ("In a civil case, a party's invocation of the privilege against compulsory self-incrimination gives rise to a legitimate inference that the witness was engaged in criminal activity."); *see also id.* (noting that there is "no reason to distinguish" between a party and non-party witness's invocation of the Fifth Amendment).

## ARGUMENT

**Lack of ESI production.** Iacobelli's Response fails to describe the ESI search that was conducted of Iacobelli's devices and accounts in response to GM's Subpoena and the April 28 Order, and effectively concedes his prior search efforts were insufficient.[2] Notably, Iacobelli's post-April 28 search and production was confined to producing recent financial statements from a bank and credit card company. Indeed, Iacobelli's own counsel's words to Judge Popke (ret.) long after the deadline for compliance with the April 28 Order, the lack of production of additional responsive ESI, and Iacobelli's belated concession that he cannot satisfy his discovery obligations without the "assistance of a third-party vendor," all confirm the same thing: an independent forensic examination is the only way to ensure the integrity of the process. (*See* Hrg. Tr., ECF No. 31-2, PageID.1459.)

In an apparent attempt to explain the lack of produced personal emails, Iacobelli now suggests he lost access to his wowway.com emails when his internet provider suddenly changed. Iacobelli, however, provides no supporting details, including how this change led to the loss of electronic data, any efforts to recover that data, and when that event supposedly occurred. At a minimum, this excuse

---

[2] Capitalized terms not defined herein shall have the same meanings as in GM's Expedited Motion to Enforce Compliance with the Court's April 28 Order (ECF No. 31, the "Motion").

foreshadows a serious spoliation issue with respect to Iacobelli's email accounts.

**Missing DeLorenzo documents and emails.** While Iacobelli claims the only emails he has with DeLorenzo are attached to the DeLorenzo affidavit, Iacobelli himself has produced no such emails. Iacobelli certainly had these emails when he emailed DeLorenzo in August 2018, long ***after*** the government executed a search warrant on his home. It is irrelevant whether Iacobelli believes that GM may receive these emails from other parties, including the U.S. Attorney's Office. *See Brake Parts, Inc. v. Lewis*, No. 90-132-KSF, 2009 WL 1939039, at *4 (E.D. Ky. July 6, 2009) ("The fact that the same information may be available from two different sources does not excuse one of those sources from producing the information."). Further, Iacobelli is incorrect that all of the documents brought to the DeLorenzo meetings have been produced. DeLorenzo described under oath documents, including Iacobelli's book "outline," which remain missing. Iacobelli's counsel's refusal to allow GM to show DeLorenzo the Iacobelli-produced documents further undermines Iacobelli's unsworn assertion that production is complete.

**Butzel Long documents that Iacobelli should have produced.** Iacobelli admits that his production was deficient but claims it was "mooted" by the Butzel Long production. (*See* Response, ECF No. 33, PageID.1818.) This cavalier "no harm, no foul" excuse for apparent willful discovery misconduct only underscores the need for an independent forensic review of Iacobelli's devices and an affidavit

3

of compliance with the Court's April 28 Order. GM further disagrees that Butzel Long has itself produced all responsive documents. One month after GM's Subpoena was served on Iacobelli (and Butzel Long), in December 2021, Butzel suddenly and inexplicably sent "a few additional documents we recently found in our file" regarding Iacobelli to the U.S. Attorney's Office. Butzel now incredibly claims that it "does not know" what it sent to the government notwithstanding the pending Subpoena. (*See* Exhibit A, Butzel Motion to Quash; 7/7/2022 Letter, ECF No. 31-15, PageID.1792-93.) Butzel also has additional responsive documents in its possession that are currently under motion with Judge Popke (ret.). (*See id.*)

In his Response, Iacobelli suggests he did not produce the same documents as Butzel Long because the subpoenas were not identical and "minor differences in the production of responsive documents should have been expected." (*See* Response, ECF No. 33, PageID.1798.) That suggestion is not candid. Even assuming Iacobelli was under no obligation to request those documents from his counsel—he was—the Butzel Long documents, including Iacobelli's affidavit about foreign accounts, were clearly called for by the Rule 45 subpoena. (*See* Exhibit B, 11/10/2021 subpoena to A. Iacobelli) (requesting documents "relating to any of the foreign bank accounts identified in the Complaint," "relat[ing] to the investigation conducted by the U.S. Attorney's Office," or "provided to the U.S. Attorney's Office"). Notably, if these suppressed documents had been timely produced, they would have undermined the

4

broad invocation of the Fifth Amendment that Iacobelli advocated before Judge Popke (ret.) at the time. (*See, e.g.*, Exhibit C, Iacobelli Br. In Opp. to Pls.' Mot. to Compel Interrogatory Answers (May 20, 2022).)[3]

**Missing bank records.** Iacobelli admits that he has not requested documents from any banks. (*See* Response, ECF No. 33, PageID.1812). Instead, he expects GM to issue subpoenas to the banks directly. But only Iacobelli knows of all the banks where he has held accounts since 2009. Iacobelli must request these documents (or disclose the names of the banks under oath), which are indisputably within in his control.

Iacobelli also argues that he has "no knowledge" of foreign accounts. (*Id.* at PageID.1815). However, given GM's allegations and evidence (*see* Second Am. Compl., ECF No. 31-12, ¶¶ 70-74), Iacobelli must at least authorize GM to request the information from banks on his behalf. "Only [Iacobelli] has the ability to access the file[s], which he can do by requesting a copy . . . directly from the [foreign banks] or signing the consent to release proposed by [GM]." *Pogue v. Nw. Mut. Life Ins.*

---

[3] Offering more misdirection, Iacobelli argues that he is not fully immune from future prosecution under his Cooperation Agreement which granted broad immunity in return for cooperation. This argument is farfetched and, at bottom, irrelevant here. Iacobelli's supposed fear of further prosecution (which will be addressed by Judge Popke (ret.) shortly) does not excuse Iacobelli's serial discovery transgressions in failing to produce subpoenaed and court-ordered documents.

*Co.*, No. 3:14-CV-598 -CRS-CHL, 2016 WL 2731497, at *4 (W.D. Ky. May 6, 2016); *see Commodity Futures Trading Comm'n v. Schroeder,* No. 1:06CV0705, 2006 WL 3114275, at *5 (W.D. Mich. Oct. 6, 2006) (ordering party to sign consent allowing plaintiff to seek foreign bank information). Disclosure of pre-existing financial records does not implicate the Fifth Amendment. *See Doe v. United States*, 487 U.S. 201, 212 (1988) ("[T]he privilege may be asserted only to resist compelled explicit or implicit disclosures of incriminating information.").

**Missing electronic device information.** There was nothing unclear about GM's requests for information "sufficient to show all electronic devices that you have used to communicate with any third parties." (*See* Exhibit B.) In fact, Iacobelli's own December 31, 2021 response to the Subpoena underscores that he knew exactly what GM was looking for. (*See* Response, ECF No. 33, PageID.2059.) The fair inference is that Iacobelli chose to flout the Court's April 28 Order rather than produce this potentially damaging information. Notably, even today, such documents remain unproduced even though Iacobelli concedes he can "provide the information . . . identified as the object of [this] request." (*Id.* at PageID.1816.)

**Missing USB Drives.** While Iacobelli claims that he did not download any confidential GM documents to USB drives, GM has evidence that Iacobelli, in fact, downloaded such documents. (*See* Second Am. Compl., ECF No. 31-12, ¶ 158.) Iacobelli also printed an excessive number of GM confidential documents, well

6

beyond any business need, and did so when he knew he was about to be indicted. (*See id.* ¶¶ 158-59; Exhibit D, Iacobelli Common Interest Privilege Log (indicating that Iacobelli knew of the indictment before it became public on July 26, 2017).)

**Iacobelli's threat to take the Fifth if ordered to provide an affidavit.** Iacobelli threatens that he will plead the Fifth if required to submit an affidavit as to the completeness of his document search and production. This threat is more evidence that Iacobelli has not complied with his discovery obligations and third-party forensic review is needed. GM's request for an affidavit is common practice in similar situations. *See Gen. Ret. Sys. of the City of Detroit v. Alamerica Bank*, No. 14-cv-10032, 2016 WL 8243173, at *1 (E.D. Mich. Mar. 7, 2016) (noting court order to submit affidavits "detailing why the documents are unavailable, how the documents became unavailable, and when the documents became unavailable").

In summary, given these serial and likely intentional acts of discovery misconduct, a third-party forensic review of Iacobelli's devices and email accounts is necessary to address the deficiencies and potential spoliation. To ensure that GM's requested relief is clear, GM respectfully submits the attached draft order. (Exhibit E, Proposed Order.)

Dated: August 1, 2022            Respectfully submitted,

**HONIGMAN LLP**
By: */s/ Jeffrey K. Lamb*
Jeffrey K. Lamb (P76738)

## CERTIFICATE OF SERVICE

I hereby certify that on August 1, 2022 I caused the foregoing document to be electronically filed with the Clerk of the Court using the ECF filing system, which will send notification of such filing to all counsel of record.

By: */s/ Jeffrey K. Lamb*
Jeffrey K. Lamb (P76738)
2290 First National Building
660 Woodward Avenue
Detroit, MI 48226
Telephone: (313) 465-7000
jlamb@honigman.com

44729484.4