## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| GENERAL MOTORS LLC, GENERAL MOTORS COMPANY,<br><br>Plaintiffs,<br><br>against<br><br>JOSEPH ASHTON,<br><br>Defendant. | CASE NO. 2:22-MC-50034-GCS-DRG<br><br>HONORABLE GEORGE CARAM STEEH<br><br>MAGISTRATE JUDGE DAVID R. GRAND<br><br>Related to General Motors LLC v. Ashton, Case No. 2:22-mc-50034 (E.D. Mich.)<br><br>Arising from *General Motors LLC, et al. v. Ashton*, Case No. 1:20-cv-12659 (D.N.J.) |

## MOTION TO ENFORCE RULE 45 SUBPOENA

Pursuant to Federal Rule of Civil Procedure 45(d)(2)(B)(i) and Local Rule 7.1, Petitioners General Motors LLC and General Motors Company (collectively, "GM") hereby move this Court to compel nonparty Susanne Iacobelli ("S. Iacobelli") to comply with the subpoena ("Subpoena") that GM served on S. Iacobelli on November 10, 2021 in the underlying action captioned *General Motors LLC, et al. v. Joseph Ashton*, Case No. 1:20-cv-12659-RBK-EAP (D.N.J.) (the "Ashton Action").

For the reasons set forth in the attached Brief in Support of GM's Motion to Enforce Rule 45 Subpoena, GM respectfully moves this Court to enter an Order

compelling S. Iacobelli to comply with the Subpoena by producing all documents responsive to the Subpoena and to appear for deposition within 10 days after the full production of documents.

As required by Local Rule 7.1(a), counsel for Petitioners have attempted to confer with S. Iacobelli regarding the Subpoena, the nature of this Motion, and its legal basis.  Despite numerous meet-and-confer conversations, the parties have not been able to resolve their disputes.

Dated: August 5, 2022                    Respectfully submitted,

**HONIGMAN LLP**
By: */s/ Jeffrey K. Lamb*
Jeffrey K. Lamb (P76738)
Adam M. Wenner (P75309)
Keith D. Underkoffler (P84854)
2290 First National Building
660 Woodward Avenue
Detroit, MI 48226
Telephone: (313) 465-7000
jlamb@honigman.com
awenner@honigman.com
kunderkoffler@honigman.com

**KIRKLAND AND ELLIS LLP**
Hariklia Karis, P.C.
Jeffrey L. Willian, P.C.
300 North LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000
hariklia.karis@kirkland.com
jeffrey.willian@kirkland.com

*Attorneys for General Motors LLC and*
*General Motors Company*

2

# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| GENERAL MOTORS LLC, GENERAL MOTORS COMPANY,<br><br>Plaintiffs,<br><br>against<br><br>JOSEPH ASHTON,<br><br>Defendant. | CASE NO. 2:22-MC-50034-GCS-DRG<br><br>HONORABLE GEORGE CARAM STEEH<br><br>MAGISTRATE JUDGE DAVID R. GRAND<br><br>Related to General Motors LLC v. Ashton, Case No. 2:22-mc-50034 (E.D. Mich.)<br><br>Arising from *General Motors LLC, et al. v. Ashton*, Case No. 1:20-cv-12659 (D.N.J.) |

## BRIEF IN SUPPORT OF
## MOTION TO ENFORCE RULE 45 SUBPOENA

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

Concise Statement of the Issues ............................................................. iii

Controlling Authority ........................................................................... iv

Introduction ............................................................................................1

Background ..............................................................................................2

Argument .................................................................................................9

I.      S. Iacobelli's Objections are Improper........................................11

II.     S. Iacobelli's Search for Documents was Insufficient ...............14

Conclusion..............................................................................................18

## <u>CONCISE STATEMENT OF THE ISSUES</u>

Whether the Court should compel Susanne Iacobelli to comply with the Subpoena served on her by GM in the Ashton Action.

***GM states: Yes.***

# <u>CONTROLLING AUTHORITY</u>

## <u>Cases</u>

*Halawani v. Wolfenbarger*, No. 07-15483, 2008 WL 5188813 (E.D. Mich. Dec. 10, 2008)

*Strategic Mktg. & Rsch. Team, Inc. v. Auto Data Sols., Inc.*, No. 2:15-CV-12695, 2017 WL 1196361 (E.D. Mich. Mar. 31, 2017)

*United States v. Cordes*, No. 15-cv-10040, 2016 WL 1161524 (E.D. Mich. Mar. 23, 2016)

## <u>Rules</u>

Fed. R. Civ. P. 45

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*CH Holding Co. v. Miller Parking Co.*,
  12-cv-10629, 2013 WL 4516382 (E.D. Mich. Aug. 26, 2013) ..........................10

*Champion Foodservice, LLC v. Vista Food Exch., Inc.*,
  No. 1:13-cv-1195, 2016 WL 4468000 (N.D. Ohio Aug. 23, 2016) ..................14

*Commodity Futures Trading Comm'n v. Schroeder*,
  No. 1:06CV0705, 2006 WL 3114275 (W.D. Mich. Oct. 6, 2006)....................15

*Faison v. State Farm Fire & Cas. Co.*,
  13–cv–15014, 2015 WL 4274882 (E.D. Mich. June 18, 2015) ........................10

*Flagg v. City of Detroit*,
  No. 05-74253, 2010 WL 3070104 (E.D. Mich. Aug. 4, 2010) ..........................12

*Halawani v. Wolfenbarger*,
  No. 07-15483, 2008 WL 5188813 (E.D. Mich. Dec. 10, 2008)..................10, 13

*Mich. Auto. Ins. Placement Facility v. New Grace Rehab. Ctr., PPC*,
  No. 4:17-cv-11007-TGB-DRG, 2019 WL 355654 (E.D. Mich. Jan.
  29, 2019) ...................................................................................................13

*People v. Fisher*,
  503 N.W.2d 50 (Mich. 1993)...............................................................................8

*State Farm Mut. Auto. Ins. Co. v. Physiomatrix, Inc.*,
  No. 12-cv-11500, 2013 WL 10936871 (E.D. Mich. Nov. 26, 2013) ................12

*Strategic Mktg. & Rsch. Team, Inc. v. Auto Data Sols., Inc.*,
  No. 2:15-CV-12695, 2017 WL 1196361 (E.D. Mich. Mar. 31,
  2017) .......................................................................................................14

*United States v. Cordes*,
  No. 15-cv-10040, 2016 WL 1161524 (E.D. Mich. Mar. 23, 2016) ..................12

STATUTES

MCL 600.2162(1) ......................................................................................................7

## **INTRODUCTION**

Since the Court's ruling regarding the spousal privilege on June 1, 2022, GM has repeatedly sought a firm date for Susanne Iacobelli's ("S. Iacobelli") deposition. None has been provided.  GM has also communicated with S. Iacobelli's counsel, Michael Nedelman, regarding S. Iacobelli's response to the document portion of GM's Rule 45 subpoena.  To date, Mr. Nedelman has only produced a copy of an expired passport.  Mr. Nedelman has also refused to answer even basic inquiries regarding whether S. Iacobelli has or had a passport that replaced the expired passport.  In summary, although the Subpoena was served on November 10, 2021, S. Iacobelli has only produced a single document and functionally refuses to provide deposition testimony despite previous motion practice before this Court. The deficiency of S. Iacobelli's response was made even more apparent when a recently served subpoena on Butzel Long, P.C. ("Butzel Long"), Alphons Iacobelli's former criminal counsel, resulted in the production of an affidavit from S. Iacobelli to the government regarding GM's foreign account allegations, which clearly should have been produced in response to the Subpoena.

The purpose of this motion is to move to compel the full production of documents requested by the Subpoena.  Like her husband Alphons Iacobelli in response to a similar Rule 45 subpoena, S. Iacobelli has set forth a host of unsupported objections to document production that this Court should overrule.  (*Cf.*

4/28/2022 Docket Entry granting GM's motion to compel A. Iacobelli (ordering "a reasonable, good-faith search . . . for responsive materials" and overruling A. Iacobelli's objections).)   Further, GM asks that this Court order a mandatory deposition date for S. Iacobelli within 10 days after the full production of documents.

## BACKGROUND

On November 10, 2021, GM served the Subpoena for documents and testimony on S. Iacobelli in the Ashton Action. (*See* **Exhibit 1**, 11/10/2021 Subpoena to S. Iacobelli.)  In that case, GM asserts claims for fraud and breach of fiduciary duty against Joseph Ashton based on Ashton's involvement in two fraudulent schemes that directly harmed GM.  (*See* ECF No. 17-2, GM's First Am. Compl., PageID.643-80.)  From 2014 to December 2017, Ashton served as the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America ("UAW") Trust's designee on General Motors Company's Board of Directors.[1]  Prior to serving on GM's Board, Ashton was a Vice President of the UAW's GM Department from 2010 to 2014, primarily responsible for negotiating with GM on behalf of the union.  While working for the UAW, Ashton

---

[1]   The UAW Trust was established as a result of the 2007 CBAs between the UAW, FCA, GM, and Ford, which assigned retiree health care liabilities to an independent Voluntary Employee Beneficiary Association.   Pursuant to restructuring following the 2008 financial crisis, the UAW Trust obtained the right to appoint a director to GM's Board.  (*See* ECF No. 17-2, PageID.638, ¶ 9 n.2.)

also served as a director for the UAW-GM Center for Human Resources (the "CHR"), which was a joint training center set up by GM and the UAW for UAW employees, but funded by GM.

As part of Ashton's first fraudulent scheme, Ashton demanded and received tens of thousands of dollars in kickbacks in return for directing contracts for CHR merchandise to specific vendors. Ashton continued to receive such kickbacks while serving on GM's Board, and despite his fiduciary duty to GM, never disclosed the existence of that scheme, which directly harmed GM by inflating the funding needed by the CHR from GM and embezzling GM-provided funds. Ashton has largely admitted to his role in this first scheme through his December 4, 2019 guilty plea in a criminal investigation by the U.S. Attorney's Office for the Eastern District of Michigan. (*See United States v. D-1 Joseph Ashton*, Case No. 19-cr-20738 (E.D. Mich.), Rule 11 Plea Agreement, ECF No. 11.) Mr. Ashton is currently incarcerated as a result of that plea.

The Subpoena relates to the second fraudulent scheme at issue in the Ashton Action. As has been admitted in various criminal pleadings, for a long period of time, GM's competitor FCA US LLC, and its parent company Fiat Chrysler Automobiles N.V. (collectively, "FCA") made illegal payments of cash and other things of value to several UAW members in return for beneficial treatment in collective bargaining negotiations. GM alleges that FCA's purpose in directing this

3

scheme was to harm GM in order to accomplish the long-held goal of FCA's former CEO (Sergio Marchionne) to effect a merger between FCA and GM.  GM alleges that, in furtherance of this scheme, FCA made payments to Ashton while Ashton served on GM's Board of Directors in return for Ashton providing GM's confidential information to FCA.

Susanne Iacobelli's husband, Alphons Iacobelli, was directly involved in Mr. Ashton's two unlawful schemes.  As Alphons Iacobelli has admitted in his Plea Agreement, from "2008 until [he] retired in June 2015, [Iacobelli] was the FCA Vice President for Employee Relations.  As the FCA Vice President for Employee Relations, Alphons Iacobelli was FCA's lead representative for labor relations and had lead responsibility for managing FCA's relationship with the UAW.  Alphons Iacobelli was the senior FCA official responsible for negotiating with the UAW and for administering the collective bargaining agreements between FCA and the UAW, including the resolution of disputes and grievances that arose under the collective bargaining agreements between FCA and the UAW."  (**Exhibit 2**, *United States v. Iacobelli*, Case No. 17-cr-20406 (E.D. Mich.), Iacobelli Rule 11 Plea Agreement, ECF No. 58, PageID.252.)

Mr. Iacobelli further stipulated that "[b]etween in or before January 2009 and continuing through in or after June 2015, [Iacobelli] knowingly and voluntarily joined a conspiracy in which FCA and FCA executives and FCA employees agreed

to pay and deliver, and willfully paid and delivered, money and things of value to officers and employees of the UAW. As part of that conspiracy, Alphons Iacobelli and other FCA executives and FCA employees acting in the interest of employer FCA used the bank accounts and credit card accounts of the NTC to benefit officers and employees of the UAW, knowing that those individuals were not permitted to receive the money and other things of value." (*Id.* at PageID.252-53.) As pled in the First Amended Complaint, FCA used a system of foreign bank accounts to pay Mr. Ashton, Mr. Iacobelli, and its other co-conspirators for their role in the bribery scheme. (*See, e.g.*, ECF No. 17-2, at ¶¶ 57-60.) GM has also uncovered evidence that FCA paid certain family members of its co-conspirators, including S. Iacobelli, and thus has reason to believe that S. Iacobelli was directly involved in the illicit foreign account payments. GM issued the Subpoena to S. Iacobelli to further discover this information.

In responding to the Subpoena, S. Iacobelli rattled off a series of boilerplate objections and brought a motion to quash the Subpoena with respect to S. Iacobelli's oral deposition, citing Michigan's spousal privilege. (*See* Motion to Quash Subpoena *Duces Tecum*, ECF No. 1 (PageID.1).) In her counsel's November 26, 2021 response to the Subpoena, S. Iacobelli made the following primary objections to the document requests in the Subpoena:

- The Subpoena improperly seeks documents relating to dismissed cases brought by GM in the U.S. District Court for the Eastern District of Michigan and Michigan state court.[2]

- GM has "no good faith basis" for believing that S. Iacobelli has non-privileged responsive documents. (*See, e.g.*, Responses to Request Nos. 1, 3.)

- GM seeks documents privileged by the "spousal communication privilege and/or the attorney client privilege." (*See, e.g.*, Responses to Request Nos. 2, 14-15.)

- GM seeks documents that are "not relevant or proportional to the needs of this case, and beyond the permissible scope of discovery in this case; and imposes undue burden on Susanne Iacobelli." (*See, e.g.*, Responses to Request Nos. 4-9, 12-14, 20.)

(**Exhibit 3**, 11/26/2021 S. Iacobelli's Response to Subpoena.)

On December 24, 2021, after the parties conducted several meet-and-confers on her improper objections, S. Iacobelli's counsel sent a second letter to GM. (12/24/2021 Letter from M. Nedelman, ECF No. 1, PageID.197.)   In her December 24 letter, S. Iacobelli repeated these same objections and provided some additional information about documents in her possession responsive to the Subpoena.  In particular, she noted that she "may" have privileged documents in her possession responsive to GM's requests for information relating to the FCA/UAW conspiracy, the foreign account allegations, and the related government investigation

---

[2]   GM notes that the Michigan state court case, *General Motors LLC v. Iacobelli, et al.*, No. 20-011998-CB (Cir. Ct. Wayne Cty.), brought by GM against Alphons Iacobelli, has since been revived and the parties are actively engaging in discovery.

(Request Nos. 1-4, 10-15).  S. Iacobelli also indicated that she would not undertake a review for documents responsive to several categories of information unless ordered by the Court <u>and</u> GM agrees to compensate her for the "time and expense (including that of the undersigned counsel) in conducting the necessary review." (*See* 12/24/2021 Letter from M. Nedelman, ECF No. 1, PageID.197.)[3]

On June 1, 2022, after the parties completed their briefing on S. Iacobelli's motion to quash the Subpoena for her deposition, this Court ruled that S. Iacobelli was permitted to partially invoke the spousal privilege with respect to certain deposition topics.  (*See* Order, ECF No. 28, PageID.1407.)  However, there has been no holding, nor could there be under the relevant law, that the spousal testimonial privilege allows S. Iacobelli to shirk her obligations to produce documents in response to the Subpoena.  By its plain terms, MCL 600.2162(1) relates only to deposition or trial testimony: "In a civil action . . . a husband shall not be ***examined as a witness*** for or against his wife without her consent or a wife for or against her husband without his consent, except as provided in subsection (3)."  (Emphasis added).  Further, "[the] phrase, 'be examined,' connotes a narrow testimonial

---

[3]   Without waiving its right of future challenge, GM understands that Butzel Long at least views the Cooperation Agreement, Proffer Agreement, and S. Iacobelli Declaration as confidential and GM has therefore not attached these documents to this Motion.  GM will generally describe these important documents. However, to the extent the Court would like to review them, GM will promptly file these documents under seal with the Court.

privilege only—a spouse's privilege against being questioned as a sworn witness about the described communications.  In other words, the spouse must testify for the privilege to apply." *People v. Fisher*, 503 N.W.2d 50, 56 (Mich. 1993) (holding that marital communications introduced through a presentence report were not privileged).

Since the Court's June 1 ruling, GM's counsel has repeatedly sought to obtain available firm dates for S. Iacobelli's deposition limited to the topics upon which the Court held that she could not preemptively claim the spousal privilege.  GM counsel has also alerted S. Iacobelli's counsel to its belief that she has not made efforts to produce all responsive documents.  (*See* **Exhibit 4**, 7/14/2022 email from J. Willian to M. Nedelman; *see also* **Exhibit 5**, 7/18/2022 email from J. Willian to M. Nedelman (seeking additional information about S. Iacobelli's deficient production and improper objections).)  In response, S. Iacobelli's counsel made clear that S. Iacobelli will not be producing any more documents.  (*See* **Exhibit 4**, 7/17/2022 email from M. Nedelman to J. Willian.)  And, when asked explicitly in an email whether S. Iacobelli has "a passport that she no longer possesses post the expired passport that was produced," S. Iacobelli's counsel did not respond.  (*See* **Exhibit 5**.)

There is strong evidence that S. Iacobelli, like her husband (*see* Mot. to Enforce Rule 45 Subpoena, ECF No. 17, PageID.604), willfully withheld documents

in response to the Subpoena.  On July 5, 2022, Butzel Long produced a set of documents in response to a separate GM-issued subpoena, including a declaration signed by S. Iacobelli to the U.S. Attorney's Office for the Eastern District of Michigan relating to GM's foreign account allegations.  S. Iacobelli's failure to produce this critical document—which would have undermined her husband's attempt to use the Fifth Amendment to deny GM discovery in the state court action (*see* **Exhibit 6**, 5/20/2022 Br. of A. Iacobelli in Opp. to Pls.' Mot. to Compel Interrog. Answers)—demonstrates that S. Iacobelli has failed to comply with the Subpoena by producing all responsive documents.

Under these circumstances, GM seeks an order eliminating all objections in response to the Rule 45 Subpoena and requiring production of all of GM's requested documents within 14 days.  Certain of the document requests are discussed more specifically below.

## <u>ARGUMENT</u>

Parties may obtain discovery with respect to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).  "'Relevant evidence' is 'evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.'"

9

*CH Holding Co. v. Miller Parking Co.*, 12-cv-10629, 2013 WL 4516382, at *2 (E.D. Mich. Aug. 26, 2013) (quoting Fed. R. Evid. 401).

"Federal Rule of Civil Procedure 45 governs the issuance of subpoenas for the discovery of information from third parties." *Faison v. State Farm Fire & Cas. Co.*, 13–cv–15014, 2015 WL 4274882, at *2 (E.D. Mich. June 18, 2015), *report and recommendation adopted*, No. 13-15014, 2015 WL 4274887 (E.D. Mich. July 14, 2015). Rule 45(a) permits a party to sign, and a court to issue, a subpoena to a nonparty for testimony and/or the production of documents. *See* Fed. R. Civ. P. 45(a). Such a discovery request "should ordinarily be allowed unless it is clear that the information sought can have no possible bearing on the subject matter of the action." *Halawani v. Wolfenbarger*, No. 07-15483, 2008 WL 5188813, at *5 (E.D. Mich. Dec. 10, 2008) (compelling compliance with subpoena that sought relevant information) (citation omitted).

This Court can enforce the Subpoena against S. Iacobelli under Rule 45(g), which provides that "[t]he court for the district where compliance is required…may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena…." Fed. R. Civ. P. 45(g). *See also Halawani*, 2008 WL 5188813, at *7 ("Although a subpoena is in a sense the command of the attorney who completes the form, defiance of a subpoena is nonetheless an act in defiance of a court order….").

## I.     S. IACOBELLI'S OBJECTIONS ARE IMPROPER

As set forth above, S. Iacobelli's objections to the document requests in the Subpoena can be distilled into three categories: (1) GM has "no good faith basis" for believing that S. Iacobelli has responsive documents; (2) the requested documents are protected by "spousal communication privilege and/or attorney-client privilege"; and (3) the requested documents are irrelevant and overly burdensome. *See supra* pp. 5-7. These objections should not be credited.

*First,* S. Iacobelli may not claim that she is exempt from searching for relevant documents because she believes that GM has "no good faith basis" for believing they exist. Whether or not S. Iacobelli has responsive documents in her possession is a fact that is inherently within her knowledge, not GM's, and she is required to undertake a good faith search to determine whether she does have such documents. Based on GM obtaining through other means a responsive declaration to the U.S. Attorney's Office for the Eastern District of Michigan signed by S. Iacobelli related to GM's foreign account allegations, it is clear that, to date, S. Iacobelli has failed to do so.

*Second,* S. Iacobelli may not use the possible existence of an applicable privilege to exempt herself for searching for and producing responsive documents. While her December 24 letter was slightly more detailed than her November 26 letter, the December 24 letter is still unclear as to whether a search was actually

conducted for each request and whether privileged responsive documents were, in fact, found. The spousal privilege does not apply to the production of documents other than communications that may reflect actual spousal communications. "It applies only to utterances or expressions intended by one spouse to convey a message to the other in confidence. It does not apply to events a spouse observed or in which she participated (such as financial transactions)." *United States v. Cordes*, No. 15-cv-10040, 2016 WL 1161524, at *3 (E.D. Mich. Mar. 23, 2016) (internal quotations omitted); *see also Flagg v. City of Detroit*, No. 05-74253, 2010 WL 3070104, at *2 (E.D. Mich. Aug. 4, 2010). Moreover, "[t]he privilege must be strictly construed and accepted only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominate principle of utilizing all rational means for ascertaining truth." *Cordes*, 2016 WL 1161524, at *3 (internal quotations omitted).

S. Iacobelli must actually search for documents regardless of whether privileged documents might be found; and, if a privilege does apply, she must produce a privilege log under Federal Rule of Civil Procedure 26(b)(5)(A) with descriptions sufficient to allow GM to evaluate the appropriateness of the privilege claims. "To the extent any of the documents sought under the [Subpoena] contain privileged information, [S. Iacobelli] may assert privilege over them by providing to [GM] a proper privilege log that it can assess and challenge if necessary." *See State*

*Farm Mut. Auto. Ins. Co. v. Physiomatrix, Inc.*, No. 12-cv-11500, 2013 WL 10936871, at *11 (E.D. Mich. Nov. 26, 2013). Because S. Iacobelli has not produced such a log, it is apparent that either no search was conducted or no privilege applies to the documents that were found.

*Finally,* S. Iacobelli's boilerplate objections to GM's document requests as "irrelevant" or overly "burdensome" should be disregarded. Document requests are only improper as irrelevant if they have "***no possible bearing*** on the subject matter of the action." *Halawani*, 2008 WL 5188813, at *5 (compelling compliance with subpoena that sought relevant information) (emphasis added) (citation omitted). It is therefore not enough for S. Iacobelli to claim, for example, that certain foreign bank accounts are irrelevant because they were not specifically named in the First Amended Complaint. (*See* **Exhibit 3**, 11/26/2021 S. Iacobelli's Response to Subpoena.)

S. Iacobelli has not provided any basis to substantiate her boilerplate relevance and burden claims. "Because boilerplate objections do not facilitate the efficient completion of the discovery process and are not permitted under the Federal Rules, courts in this district have consistently voiced their disapproval of generalized, blanket objections." *Michigan Auto. Ins. Placement Facility v. New Grace Rehab. Ctr., PPC*, No. 4:17-cv-11007-TGB-DRG, 2019 WL 355654, at *2-3 (E.D. Mich. Jan. 29, 2019) (criticizing boilerplate objections to document requests

as "overly broad, vague, and the answers to the requests are irrelevant and/or not reasonably likely to lead to admissible evidence"). S. Iacobelli's objections to the Subpoena should therefore be disregarded. *See Strategic Mktg. & Rsch. Team, Inc. v. Auto Data Sols., Inc.*, No. 2:15-CV-12695, 2017 WL 1196361, at *2 (E.D. Mich. Mar. 31, 2017) ("Boilerplate or generalized objections are tantamount to no objection at all and will not be considered by the Court.").

## II.    S. IACOBELLI'S SEARCH FOR DOCUMENTS WAS INSUFFICIENT

In addition to her improper objections, it is clear from the single document produced that S. Iacobelli has failed to conduct a good faith search for documents responsive to the Subpoena. Civil discovery depends on the good faith of counsel and civil litigants to fully and fairly comply with all discovery obligations. Fed. R. Civ. P. 26(g) advisory committee's note (1983 Amendment) ("If primary responsibility for conducting discovery is to continue to rest with the litigants, they must be obliged to act responsibly and avoid abuse."); *Champion Foodservice, LLC v. Vista Food Exch., Inc.,* No. 1:13-cv-1195, 2016 WL 4468000, at *1 (N.D. Ohio Aug. 23, 2016) ("Our system of justice, aimed at resolving cases on the merits, hinges on the good-faith and honest participation of all parties in the discovery process as required by the Federal Rules.").

However, here there is clear evidence that S. Iacobelli has failed to fully comply with GM's Rule 45 Subpoena and an order compelling her compliance is

14

needed.  To date, S. Iacobelli has produced only the single copy of an expired passport.  She therefore has produced no documents relating to any of the categories below, nor has she explained her failure to do so.

**Documents Relating to Bribery Scheme including Foreign Bank Account Records (Request Nos. 1-11):** GM now understands that S. Iacobelli stated in an affidavit supplied to the government that she has no knowledge of foreign bank accounts[4]  However, based on her counsel's statements, GM understands that S. Iaocbelli will assert the Fifth Amendment when questioned at her deposition about her use or knowledge of such accounts in her name or over which she has control.  These positions are mutually inconsistent (unless S. Iacobelli misled the government).

Regardless, under the terms of the Subpoena, S. Iacobelli has a responsibility to obtain documents relating to such foreign accounts, if they exist.  Given her clear failure to comply with her discovery obligations, S. Iacobelli should be compelled to provide GM written consents to seek such information relating to these accounts from foreign institutions.  *See Commodity Futures Trading Comm'n v. Schroeder*,

---

[4]   GM has not attached the S. Iacobelli Declaration to this Motion.  To the extent the Court would like to review the declaration, GM will promptly file it under seal with the Court.  The S. Iacobelli Declaration is substantially similar to the Alphons Iacobelli Declaration publicly filed in connection with Alphons Iacobelli's Opposition to GM's Motion to Enforce the Court's April 28, 2022 Order.  (*See, e.g.*, A. Iacobelli Declaration, ECF No. 33, PageID.1830-32.)

No. 1:06CV0705, 2006 WL 3114275, at *5 (W.D. Mich. Oct. 6, 2006) (ordering party to sign consent allowing plaintiff to seek foreign bank information). This is particularly so, given GM's detailed allegations of the existence of these accounts. (*See* Second Am. Compl. (Wayne Cty.), ECF No. 17-3, ¶¶ 69(a), 70-74, PageID.727-728, 730-731) (alleging that GreyList Trace found banking connections between Mr. Iacobelli and his family and several foreign financial institutions).)

S. Iacobelli also had an obligation under the Subpoena to produce documents sufficient to show all of her domestic financial accounts since 2009. (*See* **Exhibit 1** (requesting "[d]ocuments sufficient to identify all accounts that You have maintained directly or indirectly at financial institutions inside or outside of the United States").) She has produced no such information on domestic accounts though it is apparent that at least some responsive documents must exist.

**Government Investigation Records (Request Nos. 12-14):** Relatedly, Butzel Long's production of S. Iacobelli's declaration to the U.S. Attorney's Office for the Eastern District of Michigan reveals that S. Iacobelli was involved in the government's investigation into the unlawful bribery scheme alongside her husband. However, she has not produced a single responsive document, including the declaration that has now been produced by Butzel Long. She must therefore produce all non-privileged, responsive documents, and, for the documents she is claiming

16

privilege over (which apparently exist according to her December 24 letter), produce a privilege log.

**Documents Regarding Peter DeLorenzo (Request Nos. 15, 17-19):** As the Court is aware, Peter DeLorenzo submitted a detailed affidavit describing two meetings and related email exchanges that he had with Alphons Iacobelli. These emails and meetings are undoubtedly relevant to GM's claims: Mr. Iacobelli described the FCA/UAW bribery scheme at these meetings as the "biggest corporate corruption case in US business history," and indicated that he possessed additional related documents. (ECF No. 17-4, Affidavit of Peter DeLorenzo at 2 (PageID.806).) S. Iacobelli claims that she "may" have responsive communications that are privileged. (*See* 12/24/2021 Letter from M. Nedelman, ECF No. 1, PageID.197.) However, she has yet to identify such documents or justify her assertion of privilege on a privilege log.

**Copy of U.S. Passport (Request No. 25):** While the sole document that S. Iacobelli has produced thus far, her expired passport, is responsive to this request, it is not enough. Instead, S. Iacobelli must produce a copy of the passport that existed after the expired passport—and if that does not exist for some reason, state why that important document does not exist.

17

## **<u>CONCLUSION</u>**

For these reasons, GM respectfully requests that the Court grant this Motion to Compel and (i) strike all of S. Iacobelli's improper objections in response to the Subpoena; (ii) order S. Iacobelli's counsel to ensure a prompt and full production of responsive documents; (iii) order S. Iacobelli's counsel to employ a reasonable ESI search to ensure that all potentially responsive documents are located and produced; (iv) order S. Iacobelli to produce a privilege log of any withheld responsive documents; and (v) order S. Iacobelli to appear for a mandatory deposition in response to GM's Subpoena within 10 days of completing full production of documents.

Dated:  August 5, 2022

Respectfully submitted,
**HONIGMAN LLP**
By: */s/ Jeffrey K. Lamb*

Jeffrey K. Lamb (P76738)
Adam M. Wenner (P75309)
Keith D. Underkoffler (P84854)
2290 First National Building
660 Woodward Avenue
Detroit, MI 48226
Telephone: (313) 465-7000
jlamb@honigman.com
awenner@honigman.com
kunderkoffler@honigman.com

**KIRKLAND & ELLIS LLP**
Hariklia Karis, P.C.
Jeffrey L. Willian, P.C.
300 North LaSalle
Chicago, IL 60654
Telephone: (312) 862-2000
hkaris@kirkland.com
jwillian@kirkland.com

*Attorneys for General Motors LLC and*
*General Motors Company*

19

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 5, 2022 I caused the foregoing document to be

electronically filed with the Clerk of the Court using the ECF filing system, which

will send notification of such filing to all counsel of record.

By: */s/ Jeffrey K. Lamb*
Jeffrey K. Lamb (P76738)
2290 First National Building
660 Woodward Avenue
Detroit, MI 48226
Telephone: (313) 465-7000
jlamb@honigman.com