UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GENERAL MOTORS LLC, and,
GENERAL MOTORS COMPANY,

    Plaintiffs,

v.

JOSEPH ASHTON,

    Defendant.

Case No. 22-50034

George Caram Steeh
U.S. District Judge

David R. Grand
U.S. Magistrate Judge

Arising from *General Motors LLC et al. v. Ashton*, No. 20-cv-12659 (D.N.J.)

_____/

## ORDER ON GENERAL MOTORS' EXPEDITED MOTION TO ENFORCE THE COURT'S APRIL 28, 2022 ORDER REQUIRING FULL COMPLIANCE WITH GENERAL MOTORS' SUBPOENA TO ALPHONS IACOBELLI (ECF No. 31)

**Background**

  On June 1, 2022, the Court issued an Order on the motion which was the initiating document in this case – Susan Iacobelli's motion to quash a subpoena *duces tecum* served on her by General Motors LLC and General Motors Company (collectively, "GM") in connection with the case of *General Motors LLC, et al. v. Ashton*, No. 20-12659, which is pending the District of New Jersey (the "New Jersey Action"). (ECF No. 28). The Court hereby incorporates the "Background" section of that Order herein by reference.

  On April 28, 2022, the Court heard oral argument on a somewhat-related motion – GM's motion to enforce a November 19, 2021 subpoena *duces tecum*[1] that it served on Ms.

_____

[1] The subpoena is found at ECF No. 19-2 (the "Subpoena").

Iacobelli's husband, Alphons Iacobelli ("Iacobelli").  (ECF Nos. 17, 23).  At the conclusion of the hearing on that motion, the Court made the following text entry:

> For the detailed reasons stated on the record, IT IS ORDERED that the motion is GRANTED to the extent discussed, and that Mr. Iacobelli shall ensure that a reasonable, good-faith search is performed for responsive materials, and that such non-privileged materials are produced within 30 days.[2]

(4/28/22 text entry) (the "Order").

No objections were filed to the Court's Order.  However, on July 11, 2022, GM filed its "Expedited Motion to Enforce the [Order] Requiring Full Compliance with GM's Subpoena to Alphons Iacobelli."  (ECF No. 31).  In its motion, GM challenged Iacobelli's compliance with the Order with respect to the ESI review of his electronic devices and iCloud storage, and the production of numerous categories of documents, including: (1) the "DeLorenzo documents"; (2) Iacobelli's personal e-mails; (3) domestic bank records; (4) foreign bank records; (5) documents sufficient to identify Iacobelli's electronic devices; (6) "government investigation material"; and (7) Business Advisory Group documents, Iacobelli's passport, and certain USB drives.  The motion was fully briefed (ECF Nos. 33, 35), and the Court held oral argument on September 20, 2022.  The Court addressed the disputed issues and instructed the parties to submit a stipulated order for entry by the Court. (ECF No. 42).

Unfortunately, the parties were unable to agree on the terms of a stipulated order. On September 28, 2022, GM's counsel submitted to the Court via e-mail (cc'd to

---

[2] The Court held in abeyance its ruling as to a dispute over the common interest privilege, which it later resolved in Iacobelli's favor.  (ECF No. 30).

Iacobelli's counsel) its proposed order on the underlying motion, along with a letter (and attachments) addressing the parties' "major differences."[3]   On September 30, 2022, Iacobelli filed his "Response and Objections" to GM's submission, and GM filed a reply on October 5, 2022.  (ECF Nos. 43, 45).  With the benefit of the parties' additional submissions, the Court enters this Order to formally resolve GM's motion.

## Foreign Bank Accounts

GM alleges that as part of the underlying fraudulent scheme, foreign bank accounts were utilized to funnel money to Iacobelli or for his benefit.  Iacobelli asserts that he has no knowledge of any foreign bank accounts whatsoever, and therefore has no information or documents to produce responsive to GM's request.   However, GM has identified particular foreign banks at which it claims the accounts in question reside or resided (the "Foreign Bank(s)").   At oral argument, the Court suggested Iacobelli sign a simple authorization for GM to obtain records from those Foreign Banks as to any accounts in Iacobelli's name (or expressly held for his benefit). Of course, if Iacobelli's representations about there being no such accounts is accurate, these authorizations will be of no moment because the banks that receive them will have no responsive documents to produce.

Iacobelli's counsel indicated that his concern was that "whatever authorization General Motors would proffer would imply that such accounts exist . . ."  (ECF No. 40, PageID.2946).   Later, he reiterated that this "authorization" approach "may be an appropriate or -- depending on the way that the authorization is framed, because I don't

---

[3] To ensure a complete record regarding these matters, the Court docketed GM's letter and attachments.  (ECF No. 44).

want to imply that any such account exists, but in the nature of a quitclaim authorization

[as the Court had previously characterized it], for lack of a better description, that is

something that I would seriously discuss with Mr. Iacobelli.  Because I agree with Your

Honor.  We have taken a very clear position, and I'm not concerned about it, that no such

accounts exist." (*Id.*, PageID.2947).

In GM's September 28, 2022 letter, it addressed the foreign bank authorization

dispute, and attached a draft letter, in the following form, that Iacobelli offered to send to

each of the Foreign Banks identified by GM:

> Dear [Bank]:
>
> I have, pursuant to the ___, 2022 Order of the United States District Court for the Eastern District of Michigan in the above-referenced matter, been ordered to request from you any documents you may have that evidence the establishment and/or maintenance in [my name] or [in the name of _____] of one or more account(s) with your bank.  If any such account(s) exist or previously existed, I request that you immediately provide to me (a) all of the documents, if any, that may have been executed and/or provided to you in connection with the establishment of any such account(s); (b) all communications between the bank and any person, firm and/or entity with respect to the account(s); (c) all statements issued with respect to the account(s); and if not included in the statements, (d) all documents that evidence any deposits into and/or withdrawals into and/or from such accounts, including but not limited to wire transfer, SWIFT and/or ACH activity.
>
> **This request is made solely to comply with the Court's Order and is not intended and should not be interpreted and/or construed as a representation by me, or to infer or imply, that any such account(s) exist. Since I am unaware of any such account(s) and disclaim any connection to any such account(s), to the extent your review confirms that there are no accounts in my name with your bank, I would similarly appreciate written confirmation of that fact.**
>
> * * *

4

(ECF No. 44, PageID.3000) (bolding added, *see infra* at 10).

GM objects to Iacobelli's proposed letter, asserting that it "will effectively ensure that the banks ignore [his] request for bank information. For example, Switzerland has a blocking statute that prevents the gathering of evidence through an 'official act' from a 'foreign authority' on Swiss soil. Art. 271, Swiss Criminal Code. When provided to a Swiss bank, Iacobelli's letter likely will be read as an official act ('I have…been ordered to request from you') from a 'foreign authority' (United States District Court), and therefore will be rejected." (*Id.*, PageID.2997). GM also contends that "the Iacobelli letter further signals to the bank that Mr. Iacobelli is requesting his accounts against his will (e.g., 'I am unaware of any such accounts,' I am under 'court order') and likely will again elicit a nonresponsive answer." (*Id.*).

Instead of Iacobelli's proposed letter, or a generic authorization signed by Iacobelli which simply authorizes each of the Foreign Banks to produce to GM records for any bank accounts in his name or held for his benefit, GM suggests Iacobelli be ordered to sign a "power of attorney consent form" (the "POA Form") that has been approved by its Swiss counsel. (*Id.*; *id.*, PageID.3002). GM's proposed POA Form provides:

> I, Alphons Anthony Iacobelli, born on [DOB], and of 1749 Piccadilly Ct., Rochester Hills, MI 48309 hereby grant the attorneys at [LAW FIRM], including anyone that any of them may instruct on their behalf, (collectively, "My Attorneys-in-fact") to be and act as my lawful attorney-in-fact in respect of any financial account of whatever nature, whether presently open or closed, that is or ever was in my name (whether jointly or solely); beneficially owned by me (whether jointly or solely) and/or, in which I had any financial interest whatsoever; where I am or ever was a signatory, authorized user, and/or exercised any control over it, including any right to information; is or was held in trust for me; for which I am or was a settlor, trustee, or beneficiary;

5

and/or is or ever was otherwise associated with me in any way whatsoever ("My Accounts").

My Attorneys-in-fact have all the requisite power to obtain all information, documents, and records of whatever nature regarding My Accounts from [BANK], [BRANCH], and [BANK] is expressly ordered and authorized to disclose all information and records to My Attorneys-in-fact regarding My Accounts. Furthermore, [BANK] is ordered and authorized to declare to My Attorneys-in-fact that it does not hold, and never has held, any of My Accounts if that is, in fact, the case.

This Power of Attorney extends to the release of information, documents, and records only regarding My Accounts. It does not authorize My Attorneys-in-fact to conduct any financial transactions whatsoever in respect of My Accounts.

_____
Alphons Anthony Iacobelli

(*Id.*, PageID.3002).

In addition to asking that the Court order Iacobelli to sign its proposed POA Form, GM asks the Court to order that:

No one on behalf of Iacobelli (including but not limited to Iacobelli, his counsel, or representative) shall contact any foreign financial institution with respect to any financial account that Iacobelli may or may not have at any foreign financial institution. If contacted by a foreign financial institution, Iacobelli, through his counsel, shall promptly alert GM's counsel to the nature of any such communication, including providing a copy of any such written communication and a summary of any verbal communication. After informing GM of such communication, Iacobelli shall further inform any foreign financial institution that contacts him (making GM aware of such communication) that he affirmatively and fully consents to the release of any financial records that involve an account in his name, Business Advisory Group, or any related entity or person over which he exercises control, and further affirm for the foreign financial institution that the Consent(s) are authentic and should be faithfully accepted and adhered to. Iacobelli is further restrained from making any communication inconsistent with the foregoing to such foreign financial institution. The signed Consent(s) shall not be

deemed an admission by Iacobelli that any such records exist, that he ever held an account with the financial institution in question, or constitute a waiver of his Fifth Amendment right to not testify about the existence of such an account.

(*Id.*, PageID.3010).

In response, Iacobelli asserts that GM, through its proposed POA Form and court order, "seeks to perpetuate a fraud upon one or more [of the Foreign Banks], by presenting the request for information as if such request(s) had no relationship whatsoever to this Action, the underlying subpoena duces tecum, and any Order that this Court may enter; and (b) seeks an injunction against Mr. Iacobelli." (*Id.*, PageID.2980).  More specifically, Iacobelli argues:

> Incredibly, GM rejected [his proposed letter to the Foreign Banks] and instead has demanded that Mr. Iacobelli participate in defrauding, or at a minimum materially misleading, one or more foreign banks, by concealing from the banks that the information is sought pursuant to an Order of this Court (assuming entry of such an Order) in enforcement of a subpoena duces tecum (a further Order of this Court), and misrepresent that the information is being voluntarily requested without reference to any ongoing court proceedings.  GM claims that this fraudulent scheme is necessary because one or more banks will refuse to provide the information sought if advised that it is sought pursuant to a Court Order.

> In furtherance of this improper if not unlawful scheme suggested by GM, in which Mr. Iacobelli will not participate, GM improvidently seeks the entry of this Court's Order compelling Mr. Iacobelli to provide not the "consent" originally sought by GM but instead a "power of attorney," together with the entry of an injunction to ensure that the fraud GM seeks to perpetrate remains concealed.  The injunctive relief sought by GM (in the absence of any showing remotely approaching satisfaction of Rule 65), as noted above includes the proposed prohibition that "[n]o one on behalf of Iacobelli (including but not limited to Iacobelli, his counsel or representative" may contact any foreign financial institution with respect to any financial account that Iacobelli may or may not have at any foreign financial institution"

7

(despite GM claiming that they are Mr. Iacobelli's accounts).  As if that were not enough, GMs' proposed Order seeks to require Mr. Iacobelli, in the event that one or more of the foreign banks contact him, to further defraud the banks by (a) omitting reference to the subpoena duces tecum and this Court's Order, and instead representing (or limiting such representation to the statement) "that he affirmatively and fully consents to the release of any financial records that involve an account in his name, Business Advisory Group, or any related entity or person over which he exercises control," and (b) "further affirm for the financial institution that the Consent(s) are authentic and should be faithfully accepted and adhered to."  To ensure that the subpoena duces tecum and this Court's Order are not disclosed (despite being material facts), GM seeks injunctive relief providing that "Iacobelli is further restrained from making any communication inconsistent with the foregoing to such foreign financial institutions."

Mr. Iacobelli objects to GMs' proposed Order and will not participate in defrauding and/or misleading any financial institution (foreign or domestic), by an affirmative misstatement or the omission of a material fact (the subpoena duces tecum and this Court's Order, if any), giving rise to his request for information, or any request that GM is permitted to make in his name.

(*Id.*, PageID.2985-86).

Neither side's proposal is particularly satisfying.  On the one hand, as a subpoenaed third-party, Iacobelli has an obligation under Federal Rule of Civil Procedure 45 to make a good-faith effort to obtain responsive, non-privileged documents that are within his possession, custody, or control, which would include any documents held by Foreign Banks in accounts in his name or for his benefit.  In general, that would certainly entail a simple letter from Iacobelli to each of the Foreign Banks in which he requests copies of salient records, which records he would then produce to GM.  Iacobelli's purported fear that merely signing an authorization for the release of records would imply that an account exists borders on frivolous; an account either exists or does not exist, a fact that will be

unchanged by Iacobelli's signing an authorization.  The issue is particularly irrelevant considering both the Court and GM have expressly recognized that no such implication would arise from Iacobelli's mere signing of a generic authorization.  (ECF No. 44, PageID.3010).  And, most importantly, Iacobelli cannot manufacture an "out" to producing documents by forcing the Court to order him to do that which he is required to do.  *See infra* at 10.

On the other hand, to the extent any Foreign Bank would, under its country's laws, refuse to produce such records merely because it knew the request was being made in conjunction with Iacobelli's response to a federal court subpoena or court order, this Court is loath to require Iacobelli to sign the POA Form which omits that information.

Between the two less-than-perfect proposals, the Court will endorse Iacobelli's, with one important modification.  First, GM makes only the aforementioned brief and vague reference to the Swiss "blocking statute," and provides no meaningful evidence or analysis confirming that Iacobelli's letter will be construed as an "official act" or result in a Swiss bank's refusal to produce documents or information.  Second, many of the Foreign Banks at issue are located in countries outside of Switzerland, including Italy, Liechtenstein, Singapore, and the Cayman Islands (ECF No. 31-7, PageID.1585), and GM provided no information that any of those countries have "blocking statutes" like the Swiss one, or would otherwise refuse to produce documents in response to Iacobelli's proposed letter.  Third, if a Foreign Bank would refuse to honor the requests in Iacobelli's letter simply because the letter advises it is being sent in conjunction with a U.S. District Court subpoena and pursuant to a court order, that is an issue for GM to raise with that Foreign

Bank or with a court with jurisdiction over it, and it would be inappropriate for this Court to order execution of a document designed to circumvent that situation even if it would give "the best chance of eliciting *any* response from a Swiss bank." (ECF No. 45, PageID.3017) (emphasis in original).[4]

However, the Court finds that it is appropriate to require Iacobelli to modify the bolded paragraph of his proposed letter, *see supra* at 4, so that it reads as follows:

> Although this request is being made in compliance with the Court's Order and is not intended and should not be interpreted and/or construed as a representation by me, or to infer or imply, that any such account(s) exist, this request is specifically intended to apply to the laws of any country other than the United States which restricts or prohibits the disclosure of bank information without the consent of the holder of the account, and shall be construed as my consent with respect thereto.

The Court notes that virtually the same verbiage was approved in the *Schroeder* case, 2006 WL 3114275, at *6 n.1, and including this verbiage properly balances the salient interests. First, it recognizes Iacobelli's obligation under Rule 45 to make a good faith effort to obtain responsive records, and does not allow him to manufacture an "out" by forcing the Court to order him to do that which he is required to do under Rule 45. Second,

---

[4] In support of its position, GM cites to *Commodity Futures Trading Comm'n v. Schroeder*, No. CIV.A. 1:06CV0705, 2006 WL 3114275, at *6 (W.D. Mich. Oct. 6, 2006), asserting that the court in that case "order[ed] party to sign consent allowing plaintiff to seek foreign bank information." (ECF No. 35, PageID.2076). But GM's reliance on this case is largely misplaced. First, although the cited document was a court order, it made clear that the parties had agreed to the consent document, whereas here Iacobelli and GM disagree as to the proper approach. Second – presumably because of the parties' agreement – the order contains no analysis that would bear on resolving the dispute here. Third, the stipulated "consent" form, which was attached to the order, specifically references the fact that the information was being sought in connection with federal court litigation, which is one of the disclosures Iacobelli proposes including in his draft letter. *Schroeder*, at *6 n.1.

it respects GM's rights to seek and obtain relevant and important discovery.  Third, it respects any obligations the Foreign Banks may have under foreign law by ensuring that they are not making decisions about producing documents based on undisclosed information.  Again, if knowing all of the facts, a Foreign Bank believes that producing the requested bank records would violate foreign law, that is an issue GM will need to take up with the Foreign Bank in the appropriate forum.

Accordingly, **IT IS ORDERED** that within one week, Iacobelli shall issue his proposed letter (ECF No. 44, PageID.3000), with the aforementioned modification, to each of the Foreign Banks.  Within one week of his receipt of any requested documents, Iacobelli shall produce a copy of same to GM.

**Iacobelli Phone Held by the Government**

In its September 28, 2022 letter, GM asserts, "In response to a Touhy request, the federal government has informed us that they are holding a phone belonging to Mr. Iacobelli.  Mr. Nedelman denies the government is holding such a phone." (ECF No. 44, PageID.2998).  GM suggests including the following provision in its proposed order:

> Within seven days of the entry of this Order, Iacobelli shall jointly request with GM the return of any phone belonging to Iacobelli the government possesses.  If returned, Iacobelli shall promptly preserve all contents of the phone through imaging of the device.  After such imaging is complete, Iacobelli shall search the phone and his other electronic devices for all responsive documents and produce all documents not otherwise privileged.  Any document or information Iacobelli claims is privileged must be put in an appropriate privilege log.

(*Id.*, PageID.3008).

In his response, Mr. Iacobelli objects, arguing:

11

. . . Mr. Iacobelli is not aware of any phone that was seized by and remains in the possession of the United States.  GM has, through the issuance of a *Touhy* request and attendant subpoena duces tecum, already sought from the United States the production of that phone, if it exists; the United States has responded to the *Touhy* request, without producing the phone - leading to the inescapable conclusion that either (a) the alleged phone doesn't exist, or (b) if it exists, it will not be released by the United States.  The failure and/or refusal of the United States to release to GM any such phone clearly evidences that any phone, if it exists, is not in the possession, custody and/or control of Mr. Iacobelli and, as a result, he has no duty or obligation to affirmatively seek its turnover to Mr. Iacobelli.  In short, Mr. Iacobelli should not be compelled to accompany GM on its scavenger hunt for recovery of a phone of which Mr. Iacobelli is unaware and that the United States has in response to a subpoena duces tecum and *Touhy* request refused to produce (if it exists).

In addition, GM assumes, in its proposed Order, that any phone that may exist and may ultimately be returned to Mr. Iacobelli is his phone. Certainly, if a third party's phone was intentionally or inadvertently swept up in connection with the execution of a search warrant, Mr. Iacobelli cannot agree and cannot be compelled to image that phone or conduct any review for ESI.

(ECF No. 43, PageID.2981-82) (emphasis in original).

Iacobelli's arguments lack merit.  Under GM's proposed verbiage, Iacobelli would merely be joining in a request to produce to him any phone "belonging to [him] the government possesses," and GM specifically represents that that the government has informed it that it *is* holding such a phone.  Thus, Iacobelli's concern about requesting a non-existent phone, or being returned a phone that belongs to someone else is unfounded. And, to the extent the government may be unwilling to comply with Iacobelli's request for its return, that is not a reason to relieve Iacobelli of his obligation under Rule 45 to simply

*request* its return.  Finally, if any returned phone truly is not Iacobelli's, it won't have documents responsive to GM's subpoena, and thus any burden would be minimal.

Accordingly, **IT IS ORDERED** that within one week, Iacobelli shall jointly request with GM the return of any phone belonging to Iacobelli the government possesses.  If returned, Iacobelli shall promptly preserve all contents of the phone through imaging of the device.  After such imaging is complete, Iacobelli shall search the phone for all documents responsive to GM's subpoena and produce all non-privileged documents. Iacobelli shall include on a privilege log any responsive documents withheld on the grounds of privilege.

## **Search Terms**

The last of the parties' "major differences" relates to "search terms."  (ECF No. 44, PageID.2997).  In its September 28, 2022 letter, GM explained the issue as follows:

> Iacobelli's counsel, Mr. [Michael A.] Nedelman[,] has asked if GM proposes the use of search terms.  We asked Mr. Nedelman to identify the communication devices that need to be searched, when those devices were put into service, and the amount of data at issue.  Without this information, GM has no idea if search terms are appropriate.  Mr. Nedelman has not responded to this attempt to meet and confer as of the submission of this letter.

(*Id.*, PageID.2998).

Iacobelli responded, arguing that he proposed "that GM provide [him] suggested additional search terms for use in the Wayne County Action," and that GM's claimed "need[] to know the 'type of devices' held by Mr. Iacobelli in order to suggest search terms[] [is] a non-sensical demand that itself illustrates the ongoing difficulty that Mr. Iacobelli has experienced in attempting to reach agreement with GM on any reasonable

approach to resolving the ongoing discovery disputes in this matter." (ECF No. 43, PageID.2981). However, in its supplemental filing, GM did not offer any explanation as to why it needs Mr. Iacobelli to identify the details of his communication devices in order for GM to be able to propose search terms. (ECF No. 44, PageID.3013-14). Having failed to do so, and given its assertion that it "has no idea if search terms are appropriate," the Court will not order any relief as to "search terms." Accordingly, **IT IS ORDERED** that to the extent GM seeks an order compelling Iacobelli to utilize any particular search terms in searching for responsive documents, the motion is **DENIED**.[5]

### Other Issues with Respect to GM's Subpoena to Iacobelli

Subject to the foregoing limitations and obligations, the Court **ORDERS** as follows as to GM's instant motion to compel:

- Within fourteen days of the entry of this Order, Iacobelli shall conduct a thorough search of all electronic devices and other sources of information in his possession, custody, and/or control for documents responsive to GM's Subpoena. Iacobelli's search obligations shall extend to any information that is (i) in his immediate possession, custody, and/or control, i.e., that information that is not in the custody of a third-party, such as a bank, an accountant, etc.;[6] (ii) available from individuals or entities subject to his control; and/or (iii) available from a third party upon his demand.[7] This aspect of this Order pertains to Iacobelli's domestic bank accounts,

---

[5] The Court notes that this ruling applies only with respect to GM's instant motion, and has no bearing on the appropriateness of the use of search terms in GM's other litigation against Iacobelli. Nor is it likely that Iacobelli could reasonably fulfill his obligations under Rule 45 without himself utilizing search terms to search for responsive documents. Accordingly, while the Court is denying this aspect of GM's motion, it may behoove the parties to promptly agree on search terms.

[6] Iacobelli complains that the Subpoena "apparently seeks to compel [him] to embark on discovery efforts well beyond those imposed upon him by Rule 45; for what is 'immediate?'" (ECF No. 43, PageID.2982). The concept, however, is hardly difficult to understand.

[7] By way of example, as the Court explained during the hearing, if Iacobelli lacks immediate access to records sufficient to identify any safe deposit box, he must request same from the bank, i.e., the entity that does have immediate access. (ECF No. 42, PageID.2966-67) ("In order to comply with

as the discoverability of those account records does not raise the issues at stake with respect to Iacobelli's foreign bank accounts. *See supra* at 3-11.  Iacobelli's search efforts and production obligations shall not be limited by his written objections to the Subpoena (which are boilerplate and fail to identify any actual undue burden), except those predicated on the attorney-client privilege, work product doctrine, or the Fifth Amendment.

- Within fourteen days of the entry of this Order, Iacobelli shall provide to GM a signed affidavit attesting under oath that he has made a good-faith effort to search for documents responsive to the Subpoena and has produced any non-privileged such documents to GM.  (*See* ECF No. 42, PageID.2970).  To the extent any required search was not made or any responsive document not produced on the ground of privilege, Iacobelli shall provide an appropriate privilege log.

- Within seven days of the entry of this Order, Iacobelli shall contact all of his former internet service providers, including, but not limited to, Wide Open West, that may possess email correspondence responsive to the Subpoena.[8]  Iacobelli shall utilize the form letter he provided in Exhibit 2 to his September 30, 2022 response.  (ECF No. 43, PageID.2992).  The communications to the service provider(s) shall request access to any email account(s) registered (or previously registered) under Iacobelli's name.   For clarity, this obligation includes, but is not limited to, "al.iacobelli@wowway.com" and "theiacobellis@wowway.com".  Iacobelli shall, in good faith, follow any directions given to him by his former internet service providers to gain access to his prior e-mail accounts.  Within 14 days of Iacobelli gaining access to any such account, he shall search for and produce to GM any non-privileged e-mails that are responsive to the Subpoena.  Within that same timeframe, Iacobelli shall provide GM with a privilege log of any e-mails withheld on the ground of privilege.

## Conclusion

For the reasons stated above, **IT IS ORDERED** that GM's Expedited Motion to

Enforce the Court's April 28, 2022 Order Requiring Full Compliance with General Motors'

---

the subpoena, [Iacobelli] has to request that of the bank.  If he does not do that, then I imagine General Motors will file a motion to hold him in contempt . . .").

[8] It appears from GM's latest filing that Iacobelli has already sent the communication ordered herein to his prior internet service providers.  (ECF No. 45, PageID.3016).  This Order does not require Iacobelli to re-send any such communication.

Subpoena to Alphons Iacobelli **(ECF No. 31)** is **GRANTED IN PART AND DENIED IN PART** as set forth above.

**IT IS SO ORDERED.**

Dated: October 11, 2022                    s/David R. Grand
Ann Arbor, Michigan                        DAVID R. GRAND
                                            United States Magistrate Judge

## NOTICE TO THE PARTIES REGARDING OBJECTIONS

The parties' attention is drawn to Fed. R. Civ. P. 72(a), which provides a period of fourteen (14) days from the date of receipt of a copy of this order within which to file objections for consideration by the district judge under 28 U.S. C. §636(b)(1).

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on October 11, 2022.

                                            s/Michael E.Lang
                                            MICHAEL E. LANG
                                            Case Manager