**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

GENERAL MOTORS, LLC,

Plaintiff,

vs. Case No. 22-50034

JOSEPH ASHTON,

Defendant.

_____________________________/

**MOTION HEARING**
**BEFORE THE HONORABLE DAVID R. GRAND**
United States Executive Magistrate Judge
HEARING CONDUCTED VIA VIDEO CONFERENCE
ALL PARTIES APPEARING REMOTELY

**APPEARANCES:**

**FOR THE PLAINTIFF:**

Jeffrey L. Willian
Kirkland & Ellis
200 E. Randolph Drive
Suite 6000
Chicago, IL 60601
312.861.2000

Jeffrey K. Lamb
Honigman, LLP
2290 First National Building
Detroit, MI 48226
313.465.7404

**FOR THE DEFENDANT:**

Michael A. Nedelman
Nedelman Legal Group, PLLC
28580 Orchard Lake Road
Suite 140
Farmington Hills, MI 48334
248.855.8888

TRANSCRIBED BY: April A. Kurtz, CSR-7347, RPR
www.transcriptorders.com

(Transcriber not present at live proceedings.
Transcript produced from digital recording.)

TABLE OF CONTENTS

MATTER PAGE

Motion to Enforce.................................. 3

WITNESS:

None

EXHIBITS:

None

CERTIFICATE OF REPORTER........................... 21

Detroit, Michigan

Thursday, October 13, 2022

1:02 p.m.

* * *

THE CLERK: The United States District Court for the Eastern District of Michigan is now in session. Honorable Magistrate Judge David R. Grand presiding.

Now calling Case Number 22-50034, General Motors, LLC versus Ashton.

Will counsel please identify themselves for the record?

MR. NEDELMAN: Good afternoon, your Honor. Michael Nedelman on behalf of Susanne Iacobelli.

MR. WILLIAN: Good afternoon. Jeffrey Willian on behalf of the plaintiff, General Motors.

MR. LAMB: Good afternoon. Jeff Lamb, from Honigman, for GM as well.

THE COURT: All right. Thank you. Good afternoon, everyone. And we have before the Court, the motion to compel regarding Miss Iacobelli and her compliance with the subpoena issued to her. I just note I had just issued, a couple days ago, the order on the motion with respect to Mr. Iacobelli. There's a little bit of overlap, so I'll -- I may be referring back to that order throughout this -- this hearing, particularly with respect to the foreign document issue.

But I've -- I've, obviously, read everything and I'm very -- unfortunately, very familiar with the issues. I was hoping not to -- you know, not to get called back in to make rulings on what are, you know, really just some very straightforward issues in large part. But, you know, we have the motion and so I have to deal with it. So I'm happy to hear any additional, you know, brief argument that either side has, starting with the moving party.

And probably best to take them -- by my count, there's maybe like five or so open, six, maybe, open items. Probably best to just knock them off one at a time.

MR. WILLIAN: Sure, your Honor. In fact, I'm -- I'm not going to rehash anything that's in the briefs because I think we're on agreement as to an agreed order in light of the arguments in your ruling on Mr. Iacobelli with a few exemptions, I anticipate. So what might make sense is for me to outline the major points of an agreed order, and then if Mr. Nedelman disagrees, then we can argue it out, I suppose.

THE COURT: All right. That's fine. I -- I mean, that would be terrific if we can reach an agreed upon resolution, so go ahead.

MR. WILLIAN: All right. Number one, as I understand it, Susan Iacobelli will withdraw all objections to the document request other than privileged objections, of course, and therefore, she will fully comply with all the requests.

And anything that's claimed as privileged needs to get on a privilege log.

THE COURT: All right. Mr. Nedelman, do you agree as to that?

MR. NEDELMAN: No, your Honor. I -- I think Mr. Willian is being a little optimistic. We -- we haven't agreed to withdraw any objections. I am mindful of your Honor's earlier rulings, and I -- I guess I think your Honor's approach to this probably is better than Mr. Willian trying to dictate what he believes to be an agreement between us, because I don't think we have one.

THE COURT: How can there be -- with such experienced good lawyers, how can there be so much disagreement as to what's been agreed?

MR. NEDELMAN: Your Honor --

THE COURT: It's baffling.

MR. NEDELMAN: In part, your Honor, because I don't think there's -- there's some agreement and perhaps if I can take the lead, I'll try and walk through it.

I understand your Honor's ruling with respect to the foreign accounts. If that is your Honor's ruling with respect to Mrs. Iacobelli as well, then she will send the same form of letter that your Honor has indicated is appropriate with respect to Mr. Iacobelli.

With respect to the domestic accounts, I did have a

brief conversation with Mr. Willian yesterday afternoon regarding the information from the domestic accounts. I had suggested -- my understanding was General Motors would prefer to subpoena those records rather than me ask for them, which we are prepared to do to satisfy your Honor's order. With respect to Mr. Iacobelli, they are the same accounts.

We don't care whether we ask for them or General Motors subpoenas them. We just don't think it's necessary to do both. And we're willing to allow GM to go forward and subpoena them, if that's --

THE COURT: But what GM -- what GM said to that proposal is, how do they know what the accounts are?

MR. NEDELMAN: The -- the -- the actual account numbers, we'll give them to the extent we have them, but the only two financial institutions at which accounts were had were Comerica and JPMorgan Chase. So if we missed an account number in the process, that can be cured in the context of the subpoena. But those are the only two financial institutions at which there were accounts and those are, with the exemption of American Express, the only two financial institutions with which respect to there were credit card accounts, because they followed the banking relationships.

So, we'll cooperate. I certainly will honor your Honor's order to request them from the banks. GM has indicated a preference that they subpoena them. I guess, just in the

terms of efficiency, if your Honor's willing to let them subpoena them and I don't have to request them, then so be it. But I'll do whatever the -- the Court wants.

THE COURT: All right.

MR. NEDELMAN: Those really take care of the -- of the bank accounts, I believe.

I know there was an issue regarding Mrs. Iacobelli's passport. We have represented to General Motors that she did not renew the passport that expired in 2019, so I don't believe that that's an issue anymore. And there were a number of categories of documents which we had responded that there were no responsive documents. I know that is disappointing to General Motors, but that is what they are left with in terms of -- of responsive -- I mean, we don't have an obligation, obviously, to create that which doesn't exist.

And to the extent that your Honor wishes a declaration that there has been a search for responsive documents and to those categories that we indicate there aren't any, that we didn't locate any, then, obviously, that is something that would be appropriate in light of what your Honor ruled with respect to Mr. Iacobelli.

THE COURT: All right.

MR. NEDELMAN: The only remaining issue after all of that goes to the examination of Mrs. Iacobelli, and there's a disagreement between the parties as to what your Honor

anticipated in light of your March 9th minute order.

What we anticipated was that General Motors would give us questions that they believed were within the -- were permitted to be asked of Mrs. Iacobelli in light of the spousal privilege. General Motors has not done that. I will characterize -- well, they have not provided the questions, they've merely provided topics, which is not what your Honor indicated -- at least my understanding of what your Honor indicated you were expecting.

So I think that is the critical issue that your Honor needs to address. The rest of it, I think, is appropriately handled in the same manner that your Honor dealt with Mr. Iacobelli.

MR. WILLIAN: All right. Your Honor, so, first, as to all the objections, being Mrs. Iacobelli giving up on her -- all of her, you know, myriad of objections to the document request, we would ask that those all be overruled, other than privilege.

In fact, I'm a little surprised to hear Mr. Nedelman say he doesn't agree to that, because his brief says that he agrees to that. On page 10, you said Mrs. Iacobelli is not further challenging the scope of the discovery request set forth in the subpoena duces tecum and considers her earlier objections to both scope of discovery sought and any intended burden to have been overruled.

So we clearly would like an order of compliance specifying that all the objections have been overruled other than privilege. That's number one.

Number two is, anything that's withheld on privilege should be on a privilege log. We briefed that issue. And that's just standard practice.

THE COURT: Let me just take these one at time, because I'm just going to give my rulings and I really don't -- I -- I'm not doing any more proposed orders from you all just because I thought that would be more helpful than not, and it turned out to not be. So I'm just going to take these one at a time and give my rulings, and that will be that.

So, in terms of the prior objections to, you know, breadth and burden, and all that, it's the same as I said with respect to Mr. Iacobelli in -- in the order I just issued a couple days ago. Those are just largely boilerplate. They're not supported by any sort of evidence by way of, I don't know, some, like, IT person who might say, oh, there's this many terabytes of data that would need to be reviewed or this many documents.

There's just -- my -- you know, my sense is that the -- the real meaty issues here are -- and they are important ones, I recognize, are spousal privilege, Fifth Amendment privilege, things like that.

All of the other considerations under Rule 26, which

apply to Federal Rule 45 subpoenas about proportionality and importance of the issues and costs, and all that, that all mitigates in favor of requiring Ms. Iacobelli to do a reasonable good faith search for the documents and to produce what she has or can get. And I -- and I made very clear, you know, what that means.

I understand most people don't necessarily keep all the kinds of documents that GM is asking for on hand, in their own house; maybe they don't even necessarily have immediate access to it by -- by jumping online and -- and -- and getting it. But you have to then write your accountants, your lawyers, your banks and say I've been asked to provide this and I think you have it and please produce it to me. That's what's -- you know, that's what's expected and that's not too much. That's not unduly burdensome.

And so all those -- I do -- I'm just going to be consistent and find that all of those more, like I said, kind of boilerplate objections are overruled and we'll have to move forward with Ms. Iacobelli's responsibilities accordingly.

All right. So that's -- that was the first one.

The second one is this notion of whether there -- the question of whether there needs to be a privilege log. And I'm -- it's -- this is -- this is just a good example of how attorneys, good attorneys can just see things differently, because Ms. Iacobelli, in her response brief, quotes Federal

Rule Civil Procedure 45(a)(2)(e), and then interprets it as saying, well, we don't need to do a privilege log, but all the -- and just so it's clear, (a)(2)(e) says, quote, a person withholding subpoenaed information under a claim that it is privileged must -- and I guess I -- I -- there's some ellipses in there, must expressly make the claim and describe the nature of the withheld documents, communications or tangible things in a manner that, without revealing information itself, privileged or protected, will enable the parties to assess the claim.

To me, that is the definition of a privilege log and it is not sufficient to just make a broad statement that, oh, well, these are all covered by the spousal privilege or these are all privileged. It's you have to do the -- the log that provides the who, the general topic, again, without divulging privilege.

And so -- and -- and the case law on this is -- is the interpretation that I just gave. And I -- I found a very recent -- a couple of recent cases. So one is -- this is Cox v. Franklin County Board of Commissioners, 2019, Westlaw 6711388. It's a Southern District of Ohio, but, obviously, within the Sixth Circuit. And it cites to a First Circuit case that says, quote, the operative language of Rule 45 is mandatory and courts consistently have held that the rule requires a party resisting disclosure to produce a document index or privilege log. A party that fails to submit a

privilege log is deemed to waive the underlying privilege.

And -- and, you know, and -- and so, again, it's -- I -- I think that that's, you know, consistent with my interpretation of Rule 45. And so -- and I also note that GM, in its brief, cited a couple of cases that have held similarly the Okinami case specifically applied that ruling to a third party subpoena.

And so, for that reason, I think that it is appropriate to require Ms. Iacobelli to produce a privilege log that would -- and again, I don't do this as something extremely onerous or I'm not looking to make this, you know, more than what it needs to be. It just needs to be your basic privilege log, but then provide sufficient details so that GM can make the necessary assessments.

All right. So -- so that is the Court's resolution of that issue.

Go ahead, Mr. Willian, on whatever you want to raise next.

MR. WILLIAN: I'm trying to keep these in order, your Honor.

So, then, on the financial accounts, look, if Mrs. Iacobelli puts in an affidavit these are all the financial accounts, domestic and foreign, and, GM, have at it, you can subpoena them, that's fine, but it -- we're not going to just rely on what counsel's telling us. We need her to, you know,

square it to us since it's her duty to either produce or point us in the right direction.

So we would ask that that happen as far as an affidavit on that.

MR. NEDELMAN: So -- well, let's start with the -- let's start with the foreign accounts, because this is something I obviously spent a good amount of time on based on the order in the -- that I just issued a couple days ago.

So Mrs. Iacobelli is willing to send the same order that I -- I'm sorry, the same letter that I ordered Mr. Iacobelli to send, is that right?

MR. NEDELMAN: Upon entry of your Honor's order compelling it, yes, your Honor.

THE COURT: All right.

MR. NEDELMAN: I want to keep -- I want to keep the same -- I want to keep the same construct. So, yes, if your Honor orders it, we will send it.

MR. WILLIAN: Can I be heard on it, your Honor?

THE COURT: Yes.

MR. WILLIAN: I mean, as you know, GM proposed a different consent, and I fully understand your ruling. I've studied it. I understand how you came out on it. It's -- it is problematic for us in certain jurisdictions, particularly Switzerland, because they, you know -- candidly, they have statutes designed to, you know, protect people who bring their

assets there for a very good reason. I mean, that's -- that's their prime source of business for that country and other countries like it.

So we are studying your order in -- you know, our preliminary conclusion is setting that kind of consent could be counter-productive, depending on the jurisdiction, so we may -- we may either file motion to reconsider with you or file an objection, whichever one you prefer procedurally.

So, as to Mrs. Iacobelli, I guess to preserve --

THE COURT: Well, I -- I prefer the objection route because it goes not to me, but no -- I'm -- I'm joking on that. I mean, whatever you think is, you know, most appropriate in -- like, I mean, the motion for reconsideration has a specific standard, right, that is --

MR. WILLIAN: Yeah.

THE COURT: -- different than objection. So whatever you think is most appropriate. And if I, you know, missed something or misconstrued something, you're certainly free to go that route.

MR. WILLIAN: I appreciate that, your Honor.

So, as to -- as to foreign account, consent issued to preserve our right to object, I would -- I'm going to have to formally ask that you follow the form that we submitted, that you did not necessarily file with respect to Mr. Iacobelli.

THE COURT: All right. Well, you know, as I said,

and I -- I read back through my order just a few moments ago in preparation for today. And, you know, it's the -- it's the exact same issue. And -- and I -- I -- I think I made clear -- I mean, I totally understand where the -- where GM is -- is coming from and its -- its concerns about how doing it the way that I ordered may result in GM not getting all of the documents that it wants.

You know, on the other hand, that -- those countries have their -- you know, have their own requirements and their own laws. And I'm just not comfortable entering an order that is designed specifically to withhold from any of those countries or any bank responding in any of those countries information, which, if it had, it would operate differently.

And so I tried to walk the line as best I could by recognizing the importance of the information to GM. And the importance of a deponent or a third-party deponent who receives a subpoena to operate in good faith. But the facts are what they are, and the facts are that there has been this objection and it is pursuant to litigation, and so that's why I think that it's appropriate to go the route that I did.

And so, for all of those reasons, I will just enter this -- you know, the same order compelling Mrs. Iacobelli to submit the same letter as I ordered Mr. Iacobelli to submit.

All right.

MR. WILLIAN: Understood. And are you also ordering

her to, in her affidavit, identify the financial accounts that she's aware of so we can subpoena those?

THE COURT: Well, so this is -- I mean, this is an interesting issue because the -- in a -- in a Rule 45 subpoena, it's not an interrogatory, right, and so you are asking her to obtain -- you're asking her to produce documents, and then she has to make a good faith effort to do that under -- and there's a legal obligation for her to do that. I don't believe there's a legal obligation for her to submit a declaration that says I swear these are all of the -- these are all of the banks that I -- that -- you know, that I know of.

Now, I don't know why she wouldn't be willing to do that. And it would raise, I think, a lot of red flags if somebody wouldn't be willing to do that, and it would be kind of a pointless exercise to refuse to do that because she could be deposed and certainly could be asked those questions, and then she would have to answer. But that's because a deposition is a different animal than a Rule 45 subpoena for documents.

So this is where I would -- I would love to see more cooperation. And this goes to -- there was a separate issue where, on her passport, it's like it's the exact same thing. I don't believe I can compel her, under Rule 45 document subpoena, to submit a declaration or affidavit swearing that she did not apply for a new passport, but you can ask her that at a deposition and she'll have to answer under oath or -- or

take the Fifth.

And so what's the -- you know, I just don't see any advantage, Mr. Nedelman, to not providing that information, but I'm also not going to enter an order that I'm not authorized to enter. So, you know, I'm trying to get you all to avoid future disputes and -- and streamline things. But that's all I can do, you know, is try.

And so I think Mr. Willian, to your -- to your question, I think all I can do at this point is order her to -- if -- if you give the -- if you give the -- any particular banks that you want her to send them to, I can order her to send the letter to those banks.

If the question to her, though, is we want bank records from any banks you have in foreign countries, then you have to accept, for the time being, her efforts to obtain those documents and she has to understand she's under an obligation to do so in good faith. And then we take it the next step at a deposition, you know, see whether she did or did not comply.

Is that -- I -- I hope that's clear. I don't know if you have --

MR. WILLIAN: Understood. Understood, your Honor.

THE COURT: All right.

MR. WILLIAN: All right. So that takes us to -- I mean, I -- Mr. Iacobelli has to provide an affidavit of compliance, which is, I think, different than what we're

talking about as far as an affidavit of identifying accounts. I assume that will follow Mr. Iacobelli's order on an affidavit of compliance for Mrs. Iacobelli?

THE COURT: Correct. And -- but, again, it's just -- it's an affidavit that he has undertaken the search that the Court has ordered him to take in good faith.

And -- and that's all I can order him to do. And then see what happens at a subsequent deposition.

MR. NEDELMAN: Your Honor, I assume that a declaration under 1746 would be sufficient in lieu of an affidavit?

THE COURT: I don't -- I'm not aware of what's -- any substantive difference?

MR. NEDELMAN: It's just a convenience in terms of obtaining the signatures, so -- and not forcing them to go appear before a notary. So if a declaration is sufficient in lieu of the affidavit, I would ask that that be permitted by the Court.

THE COURT: Is it sworn to under oath?

MR. NEDELMAN: It is -- it is -- it is not -- it is declared under penalty of perjury under the statute, yes, your Honor.

THE COURT: I -- I'm just going to use the same language I used --

MR. NEDELMAN: Fair enough, your Honor.

THE COURT: -- with Mr. Iacobelli.

MR. WILLIAN: All right. So we will obviously work with Mr. Nedelman on the production of documents, including the passport. I understand you can't -- if the documents don't exist, they don't exist. But we do believe that a more thorough research can be made. We'll take care of that, your Honor.

On the deposition, Mr. Nedelman referenced your March minute order, however, the party's briefed for you the topics -- we sent sample topics to Mr. Nedelman that we would ask Mrs. Iacobelli about. You issued on -- a very detailed ruling on those topics. And --

THE COURT: That was the June 1st -- that was the June 1st order that I issued, correct?

MR. WILLIAN: Correct, your Honor. So we -- we have your guidance. And I -- you know, I -- I generally understand sort of the rational that you work through there. No one objected to that order. So, again, we need -- we need an order compelling Ms. Iacobelli appearing for her deposition so we can get on with this.

MR. NEDELMAN: I don't think an order is necessary, your Honor. I gave Mr. Willian some suggested dates in an email to him earlier in the week or late last week.

MR. WILLIAN: Well, you had demanded that we provide specific questions before you would make her available. And

the Court's already ruled on these topics that we had submitted, so there's -- there's no -- I don't think there's any precondition to her deposition at this point, your Honor, so we would just, again, ask that you order that that deposition go ahead.

THE COURT: I -- I mean, I'm just going to order that it go ahead with the parties to work cooperatively and in good faith to schedule it. And I -- I imagine you want to see where these documents go before --

MR. WILLIAN: Yes.

THE COURT: -- you take her deposition. So you're not even in a position to schedule it, correct?

MR. WILLIAN: Well, I agree with the premise, your Honor, we need the documents first.

THE COURT: All right. So, I mean, I'm -- you know, I'm entering an order. And I -- you know, I guess I'll just say, if there's bad faith in -- in, you know, refusing to cooperate in the scheduling of the deposition, you know, that would be grounds for a sanction. So, you know, that's -- that's out there. I -- I -- I understand that there's not an ability right now to identify the date on which the deposition should take place because we're waiting for the documents. But once -- once we resolve the documents, you know, her deposition needs to be scheduled within a -- you know, a reasonable time thereafter based on everyone's availability. It's not that

hard.

MR. NEDELMAN: And we will certainly cooperate, your Honor.

THE COURT: All right. Any -- anything else that we need to cover with this motion?

MR. WILLIAN: According to my notes, that's all I have. I don't know if -- Jeff Lamb, if you can think of anything else, or, Michael, if you have anything else, but I think that covers everything.

MR. NEDELMAN: No, I think that takes cares of everything, your Honor. We appreciate your time.

THE COURT: All right. Thank you all very much, everybody. Take care.

MR. WILLIAN: Thank you.

MR. NEDELMAN: Thank you, all.

MR. WILLIAN: Thank you, Judge.

MR. LAMB: Thank you, your Honor.

THE CLERK: Court is in recess.

(PROCEEDINGS CONCLUDED AT 1:30 p.m.)

* * * * *

C E R T I F I C A T I O N

I certify that the foregoing is a correct transcription of the record of proceedings in the above-entitled matter.

**s/ April A. Kurtz, CSR-7347, RPR** **10/14/2022**
April A. Kurtz, CSR-7347, RPR Date
Official Court Reporter